Thomas A. Johnson, #119203
Kristy M. Horton, #271250
Law Office of Thomas A. Johnson
400 Capitol Mall, Suite 2560
Sacramento, California 95814
Telephone: (916) 422-4022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> vs.<br><br>FIRDOS SHEIKH,<br>   Defendant. | Case No.: 2:18-cr-00119-WBS<br><br>DEFENDANT'S NOTICE AND MOTION TO SUPPRESS EVIDENCE PURSUANT TO FRCrP 12(b) AND REQUEST FOR EVIDENTIARY HEARING<br><br>Date: May 20, 2019<br>Time: 9:00 a.m.<br>Judge: Hon. William B. Shubb |

TO THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES

ATTORNEY:

   PLEASE TAKE NOTICE that on May 20, 2019, or as soon thereafter, Defendant, Doctor Firdos Sheikh, will make a motion to suppress evidence. Defendant will also request for an evidentiary hearing on the matter.

i

# Table of Contents

Table of Authorities...................................................................................................iii

I.      Introduction.......................................................................................1

II.     Description of Evidence to be Suppressed....................................................2

III.    Statement of Facts....................................................................................3-5

IV.    Points and Authorities........................................................................... 6-15

      A. Defendant Has a Legitimate Expectation of Privacy to Challenge the
         Legality of the Search and Seizure......................................................6-7

      B. The Burden is Upon the Prosecution to Prove That the Search was
         Reasonable Since the HSI Agents Did Not Possess a Search
         Warrant.....................................................................................7

      C. No Exigent Circumstances Existed that Would Justify the Warrantless
         Entry of Dr. Sheikh's Property…………………………………........7-11

          1. The Fact that Agents Waited Five Days to Visit Dr. Sheikh's
            Property is Evidence that No Exigency Existed that Would Justify
            a Warrantless
            Search..................................................................................8-9

          2.  Analogous Case Law Supports the Motion to Suppress
            Evidence.................................................................................9-11

      D.  Dr. Sheikh's Consent for Law Enforcement to Enter Her Property and
         Search Was Not Voluntary………………………………....…11-12

      E. The Fruits of the Unlawful Search Must Be Suppressed and
         Forever Eliminated as Evidence in the Case and All Others that
         Follow…………………………………………………...12-14

      F.  Request for an Evidentiary Hearing………………………...…..14-15

V.     Conclusion.................................................................................................15

## **Table of Authorities**

**Cases**

*California v. Carney*, 471 U.S. 386, 390-391(1985)................................................6

*Flippo v. West Virginia*, 533 U.S. 17 (2002)........................................................6

*Horton v. California*, 496 U.S. 128 (1990)..........................................................8

*Kyllo v. U.S.*, 367 U.S. 643 (2001).....................................................................7

*Mapp v. Ohio*, 367 U.S. 643 (1961).....................................................................6

*Minnesota v. Carter*, 525 U.S. 83 (1998)............................................................6

*Mincey v. Arizona*, 437 U.S. 385, 392–393(1978)............................................7, 8

*Murray v. U.S.*, 487 U.S. 533 (1988)..................................................................6

*Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978).................................................6

*Schnickloth v. Bustamonte*, 412 U.S. 218 (1973)..............................................11

*Silverman v. U.S.*, 365 U.S. 505 (1961)..............................................................7

*Terry v. Ohio*, 392 U.S. 1 (1968).......................................................................15

*U.S. v. Alderman*, 394 U.S. 165, 171 (1969)......................................................6

*U.S. v. Cervantes*, 703 F.3d 1135 (9th Cir. 2014)..............................................8

*U.S. v. Camou*, 703 F.3d 940 (9th Cir. 2014)....................................................8

*U.S. v. Chan-Jimenez*, 125 F.3d 1324 (9th Cir. 1997)......................................11

*U.S. v. Davis*, 394 U.S. 165 (1969)....................................................................7

*U.S. v. Davis*, 290 F.2d 1239 (10th Cir. 2002).................................................10

*U.S. v. Impink*, 728 F.2d 1128 (9th Cir. 1984)...................................................9

*U.S. v. Licavoli*, 604F.2d 613 (9th Cir. 1984)....................................................9

*U.S. v. McConney*, 729 F.2d 1195 (9th Cir. 1979)...........................................14

*U.S. v. Patayan Soriano*, 361 F.3d 494 (9th Cir. 2004) ...................................11

*U.S. v. Patzer*, 277 F.3d 1080 (9th Cir. 2002) .................................................14

*U.S. v. Peden*, CAED Case No. 2:06-cr-0300-WBS, 2007 U.S. Dist. LEXIS 61354.........9

*U.S. v. Reyes-Bosque*, 596 F.3d 1017 (9th Cir. 2010)......................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*U.S. v. Santora,* 600 F.2d 1317 (9th Cir. 1979)....................................................14-15

*U.S. v. Shaibu,* 920 F.2d 1423 (9th Cir. 1990)........................................................11

*U.S. v. Walczak,* 822 F. 2d 1459 (9th Cir. 1989).....................................................14

*U.S. v. Wanless,* 783 F. 2d 852 (9th Cir. 1986).......................................................14

*U.S. v. Washington,* 490 F. 3d 765 (9th Cir.2007)...................................................14

*Weeks v. United States,* 232 U.S. 383 (1914).............................................................6

*Wyoming v. Houghton,* 526 U.S. 295 (1999)..............................................................6

*Wong Sun v. U.S.,* 371 U.S. 471 (1963)………..........................................................13

**Constitutional Amendments**

U. S. Const., Amend. XIV………………………………………………..……………..6
U. S. Const., Amend. IV………………………………………..……………………….6

**Federal Rules of Criminal Procedure**

FRCrP Rule 12(b)(3)(C)………………………………………..…………………..2, 15

THOMAS A. JOHNSON, #119203
KRISTY M. HORTON, #271250
Law Office of Thomas A. Johnson
400 Capitol Mall, Suite 2560
Sacramento, California 95814
Telephone: (916) 442-4022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FIRDOS SHEIKH,<br><br>　　　　　Defendant. | Case No.: 2:18-cr-00119-WBS<br><br>DEFENDANT'S NOTICE AND MOTION TO SUPPRESS EVIDENCE PURSUANT TO FRCrP 12(b) AND REQUEST FOR EVIDENTIARY HEARING<br><br>Date: May 20, 2019<br>Time: 9:00 a.m.<br>Judge: Hon. William B. Shubb |

**I – INTRODUCTION**

On July 1, 2013, Dr. Sheikh's Fourth Amendment right to be free from unreasonable searches and seizures was violated by the warrantless search of her residence. On June 26, 2013, agents from the Department of Homeland Security Investigations (hereinafter "HSI") in Sacramento, "received a lead from Opening Doors, a non-governmental organization, that there were two people working and living on a property in Elk, Grove, CA, who were forced to work for little or no pay and were not free to leave." Exhibit A at Bates 250. Without a warrant, HSI agents searched Dr. Sheikh's property. The warrantless search of Dr. Sheikh's residence was the "poisonous tree" that eventually led to her arrest in this matter.

Thereafter, on June 21, 2018, Dr. Sheikh was indicted. Dr. Sheikh is charged with two counts of trafficking with respect to forced labor in violation of 18 U.S.C. § 1590(a), two counts of harboring for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii)

1  and (a)(1)(B)(i), one count of obstruction of forced labor investigation in violation of 18

2  U.S.C. § 1590(b), and one count of false statements in violation of 18 U.S.C. § 1001.

3  Additionally, a criminal forfeiture has been filed and lis pendens have been placed on 9

4  of Dr. Sheikh's properties which the Indictment alleges are subject to criminal forfeiture.

5  Many of the properties which have been placed under a lis pendens are minimally tied to

6  the alleged offenses.  The workers were interviewed and stated what was done at each of

7  the 9 properties.  *See* Exhibit A.  For example, at the property at 9400 Sidesaddle Drive in

8  Wilton, CA, the workers stated they removed several bags of garbage from the house.  At

9  the property at 5916 Rosemary Circle in Sacramento, CA, the victims washed the carpets.

10  The victims initially stated they did not work at 9405 Oreo Ranch Circle in Elk Grove,

11  CA.

12      Pursuant to Federal Rules of Criminal Procedure, Rule 12(b)(3)(C), a motion to

13  suppress must be made before trial.  Defendant submits the following points and

14  authorities in support of the motion to suppress and requests an evidentiary hearing. The

15  Defendant requests that the Court suppress the warrantless search of her residence and all

16  evidence that flowed from the search of the residence that was the "fruit" of the

17  warrantless search.

18              **II – DESCRIPTION OF EVIDENCE TO BE SUPPRESSED**

19      Defendant seeks suppression of all tangible and intangible evidence, including

20  statements and observations obtained as a result of the deprivations of Dr. Sheikh's right

21  to privacy following the unlawful warrantless search of her residence.  That would

22  include any evidence that law enforcement came into possession of after the search of the

23  residence which includes the entire search of a residence.  It would include all statements

24  given by the defendant and all physical evidence seized at any time post search of the

25  residence on July 1, 2013.  A search warrant was later drafted and executed on July 8,

26  2013.  This subsequent search and the evidence obtained should also be excluded as it

27  was tainted by the first unlawful warrantless search.  Since the first search was

28

2

warrantless and unlawful, all the evidence obtained after the initial search should be suppressed.

### III - STATEMENT OF FACTS

The following information has been obtained from the redacted reports of investigation which have been attached to this motion and labeled Exhibit A.

On Wednesday, June 26, 2013, HSI Agents received a lead from Opening Doors, a non-governmental organization.  Agents Ann Marie Del Castillo and Group Supervisor Carol Webster were present during the interview of the reporting party identified as "G. M."  The report does not indicate that this telephone interview was recorded.

GM stated, "there were two males who were unlawfully present in the United States living in a trailer on the property and performing work for the owner full time and were only paid $200 a month."  Exhibit A at Bates 50.  GM identified the two workers as "A" and "P."  GM had begun working for Dr. Sheikh in April 2013 and had recently quit within the last week due to non-payment. GM used to work in West Sacramento with his wife and worked part-time for a Pakistani man who owned a used car dealership.  GM asked if he had any full-time work and he stated he did not, but he knew a woman in Elk Grove that needed a worker. Initially, GM worked for Sheikh on a gazebo project for 3 weeks.  After he was done, Dr. Sheikh offered him full-time work plus a place to live for him and his wife. Dr. Sheikh always kept her property locked but GM and his wife had keys to the apartment where they lived and the front gate.  GM stated that A and P were initially paid $400 a month but, at some point, that got lowered to $200, they did not have keys to the front gates, and were not free to leave.

GM stated that Dr. Sheikh was gone most of the time.  She was home on Mondays and the rest of the week she would leave between 9:00 a.m. to 11:00 a.m. and would not return until late at night, usually after midnight.  *Id.* at Bates 51.  GM provided Dr. Sheikh's number.

GM stated that he got into a dispute with Dr. Sheikh regarding monies owed around June 15, 2013.  GM decided he would not continue working for Sheikh and

moved out of her property on June 24, 2013.  GM told A that he was welcome to leave

with him but "A told him that he would finish out the month in hope that Sheikh would

pay him." On June 26, 2013, A called GM and asked if his offer still stood to help him

leave the Sheikh property.  GM provided Agents with A's number and stated that the

phone belonged to Sheikh and that Sheikh would check the phone sometimes.  A was

supposed to call GM later that day or the following day.

     At approximately 9:15 a.m., on Monday, July 1, 2013, HSI Agents Gene Kizenko,

Ann Marie Del Castillo, and Group Supervisor Carol Webster, along with two

Sacramento County Sheriff's Officers, went to Dr. Sheikh's residence located at 10354

Menlo Oaks Court, in Elk Grove, CA.  They had not sought a search warrant, nor did

they have an arrest warrant.  The driveway leading up to the residence was gated and

locked.  Agent Kizenko telephoned Dr. Sheikh and "notified her that agents from

Homeland Security Investigations and the Sacramento County Sheriff's Office were

outside her gate at Menlo Oaks Court and need to speak with her if she would come out

to the gate." <u>Exhibit A</u> at Bates 1.  Approximately 15 minutes later, Dr. Sheikh drove

down to the gate in her vehicle.

     Group Supervisor Webster identified herself and informed Dr. Sheikh they had

"received a report that there was someone on her property, a worker, being held against

their will."  Dr. Sheikh responded that no one was on the property except her parents, her

son and herself, and that no one was being held against their will.  Webster asked if

agents could "come in and take a look to make sure everything was ok and Sheikh

consented." *Id.* Webster asked whether anyone lived in the trail and if agents could look

inside the trailer and Sheikh said it was ok.  No one was found inside the trailer.  At

approximately 9:35 a.m., Webster read the <u>Miranda</u> warning to Dr. Sheikh.  *Id.* at Bates

2. According to the HSI report, Dr. Sheikh said she understood and was willing to answer

questions.  Dr. Sheikh provided a statement.

     At approximately 9:45 a.m., Agents Kizenko and Del Castillo exited the property

to interview "P" who was found hiding in the bushes outside the property.  The report

states, "Shortly after entering the property and not finding any workers present, SA
Kizenko telephoned [redacted] which had been provided by G as a means of contacting
one of the workers, A." *Id.* at Bates 62. The phone was not answered by A, but P. P was
interviewed by agents. He informed them that he came to the United States in 1996 and
overstayed his visa. In December of 2012, he began working for Dr. Sheikh. Prior to
working for Sheikh, P worked at a restaurant, but the restaurant closed in 2012 and P
helped the owner sell some of the restaurant items. P talked to a person identified in the
reports with intials "BS", a prospect buyer, and asked BS about work and BS introduced
him to Sheikh.

At approximately 10:15 a.m., the two Sheriff's deputies exited the residence and
two additional HSI Agents, Barge and Comer, arrived as back up.

Webster asked Dr. Sheikh if agents could search the apartment and if she would
sign a consent to search form. The report states the following:

> Sheikh stated that agents were welcome to look at her apartment but she
> wasn't going to sign any forms. Sheikh stated that she did not like the
> wording of the form that stated if agents found incriminating evidence it
> could be used against her. Sheikh also asked GS Webster why she wasn't
> presented with this form earlier when agents went into the trailer to look for
> any workers being held against their will. GS Webster explained that
> Sheikh gave permission for agents to go in the trailer to look for any
> workers being held against their will and based on the exigency GS
> Webster obtained a verbal consent from Sheikh, but that with the consent
> form, agents were requesting to go into the apartment and trailer and
> search. Sheikh stated that she never gave agents permission to go in the
> trailer. GS Webster reminded Sheikh of the previous events when Sheikh
> said agents could look in the trailer and Sheikh said that never happened.

Exhibit A at Bates 6. Agents continued to interrogate Dr. Sheikh until approximately
11:30 a.m. when Webster, Barge, and Comer exited the property.

On July 9, 2013, a search warrant was executed at Dr. Sheikh's property. In the
application for the search warrant, the affiant referenced the welfare check search and

included statements obtained from Dr. Sheikh at the welfare check, and the subsequent interviews of A and P.  *See* Bates 10,727 – 10,774.

## IV – POINTS AND AUTHORITIES

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, and the California Constitution, Article I, Section 13, guarantees the right of people to be free from unreasonable searches and seizures. The exclusionary rule prohibits the introduction of any evidence seized from the defendant in violation of his or her Fourth Amendment rights. Murray v. U.S., 487 U.S. 533 (1988); U.S. v. Alderman, 394 U.S. 165, 171 (1969); Mapp v. Ohio, 367 U.S. 643 (1961); Weeks v. United States, 232 U.S. 383 (1914).   The Fourth Amendment generally requires the police to secure a warrant before conducting a search.  Maryland v. Dawson, 527 U.S. 465, 466 (1999); California v. Carney, 471 U.S. 386, 390-391(1985).  Many courts have stated that the warrant requirement is subject only to a few "narrow and well-delineated exceptions." *See e.g.*, Flippo v. West Virginia, 528 U.S. 11, 13 (1999).  The courts generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300 (1999).

A.   **Defendant Has a Legitimate Expectation of Privacy to Challenge the Legality of the Search and Seizure.**

In order to for a defendant to suppress evidence seized in violation of her Fourth Amendment rights, the defendant must have a reasonable expectation of privacy in the place searched or items seized.  Rakas v. Illinois, 439 U.S. 128, 133-134 (1978).  "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place [or thing] searched, and that his expectation is reasonable; *i. e.*, one that has 'a source outside of the Fourth

6

Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.' " Minnesota v. Carter, 525 U.S. 83, 88 (1998).  The United States Supreme Court has emphasized the importance of constitutional protection to be free from unreasonable searches and seizures in one's own home.  At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. Kyllo v. U.S., 533 U.S. 17, 31 (2001); Silverman v. U.S., 365 U.S. 505, 511 (1961).

**B.**    **The Burden is Upon the Prosecution to Prove That the Search was Reasonable Since the HSI Agents Did Not Possess a Search Warrant.**

"When a government agent enters a home without a warrant, 'the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.'" United States v. Davis, 290 F.3d 1239, 1242 (10th Cir. 2002) (quoting Welsh v. Wisconsin, 466 U.S. 740, 749, (1984). "[T]he government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012).

**C.**    **No Exigent Circumstances Existed that Would Justify the Warrantless Entry of Dr. Sheikh's Property.**

An exception to the search warrant requirement arises in the case of exigent or emergency circumstances in which police officers reasonably believe "that a person within is in need of immediate aid." Mincey v. Arizona, 437 U.S. 385, 392 (1978). "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–299 (1967).  "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Mincey v. Arizona, 437 U.S. 385, 392–393(1978).

Under the exigency exception, officers may make a warrantless search if: (1) they have probable cause to believe that the item or place to be searched contains evidence of a crime, and (2) they are facing exigent circumstances that require immediate police action. United States v. Camou, 773 F.3d 932, 940 (9th Cir. 2014).  The Ninth Circuit has defined exigent circumstances as "those circumstances that would cause a reasonable person to believe that entry [or search] ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.1984) (en banc), *overruled on other grounds by* Estate of Merchant v. Comm'r, 947 F.2d 1390, 1392–93 (9th Cir. 1991).

The Ninth Circuit has adopted a two-part test for determining whether the emergency exception applies, which asks "whether: (1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." United States v. Snipe, 515 F.3d 947, 951 (9th Cir. 2008).  To be reasonable, a search under this exception must be limited in scope so that it is "strictly circumscribed by the exigencies which justify its initiation." Mincey v. Arizona, 437 U.S. 385, 393 (1978) (internal quotation marks omitted); *see also* United States v. Reyes–Bosque, 596 F.3d 1017, 1029 (9th Cir.2010) ("In order to prove that the exigent circumstances doctrine justified a warrantless search, the government must [also] show that ... the search's scope and manner were reasonable to meet the need.").

### 1.   *The Fact that Agents Waited Five Days to Visit Dr. Sheikh's Property is Evidence that No Exigency Existed that Would Justify a Warrantless Search.*

When police "have ample opportunity to obtain a warrant, we do not look kindly on their failure to do so." United States v. Impink, 728 F.2d 1228, 1231 (9th Cir. 1984).

1    "[N]o amount of probable cause can justify a warrantless search or seizure absent

2    'exigent circumstances.'" <u>Horton v. California</u>, 496 U.S. 128, 137 n. 7 (1990).

3          In this instance, HSI Agents had ample opportunity to obtain a warrant. HSI

4    agents received a lead on Wednesday, June 26, 2013.  The reporting party, GM, was

5    interviewed and GM provided a telephone number for one of the workers, A.  Agents

6    failed to call to A to determine if he and the other worker were in need of protection from

7    imminent, serious harm.  Instead, HSI Agents did not visit Dr. Sheikh's residence to

8    conduct a welfare check until 5 days after they received the lead. The HSI report

9    indicates it was only *after* agents had entered the property, did Agent Kizenko attempt to

10   call A on the telephone number provided by GM.  <u>Exhibit A</u> at Bates 62.

11         The reports do not indicate HSI Agents had done anything further to substantiate

12   GM's claims during the five days before agents conducted a welfare check.  There was

13   nothing which precluded HSI Agents from calling A prior to entering Dr. Sheikh's

14   property without a warrant.  In that five-day time span, Agents could have called A or

15   conducted surveillance on the property to assess whether the workers were in imminent

16   danger.  GM had told the agents Dr. Sheikh's schedule which was that she was home on

17   Mondays and worked from about 9:00 a.m. to midnight the rest of the weekdays.  We do

18   not believe that it was a coincidence that agents chose to perform the welfare check on a

19   Monday when they knew Dr. Sheikh would be home.  Furthermore, Agents already had a

20   statement from GM which could have been used as the basis for probable cause in a

21   search warrant to enter Dr. Sheikh's home.

22

23         ***2.   Analogous Case Law Supports the Motion to Suppress Evidence.***

24         In <u>United States v. Peden</u>, CAED Case No. 2:06-cr-0300-WBS, 2007 U.S. Dist.

25   LEXIS 61354, the Court found that neither exigency or emergency exceptions to the

26   warrant requirement justified the officers' remaining in defendant's home and the

27   government failed to show any type of urgency.  In <u>Peden</u>, the officers had an

28   information the that defendant was illegally recording two girls and there were no

9

1  "exigent circumstances" that required the officers to search Peden's bedroom or his

2  computer. Because the officers quickly determined that the girls were no danger to

3  themselves, any exigent circumstances ceased to exist soon after their arrival.

4       Similar to <u>Peden</u>, the exigency exception to the warrant requirement is

5  inapplicable.  The facts of this case show that HSI Agents had ample opportunity to

6  obtain a warrant.  HSI Agents received a lead from Open Doors on June 26, 2013.  On

7  that same day, Agents interviewed GM.  Five days later, on July 1, 2013, HSI Agents

8  went to Dr. Sheikh's property to conduct a welfare check on the property.  Agents had a

9  telephone number for one of the workers but choose not to call until after agents had

10  entered the property.

11       Another analogous case where the court did not find an exigency exception is

12  <u>United States v. Davis</u>, 290 F.3d 1239 (10th Cir. 2002).  The Tenth Circuit affirmed the

13  district court's order granting a motion to suppress evidence that had been seized during a

14  warrantless search, rejecting the government's assertion that the officers had not violated

15  the defendant's Fourth Amendment rights when they entered his home without a search

16  warrant because of exigent circumstances. *Id.* at 1244. In <u>Davis</u>, the officers had received

17  a dispatcher's report of a possible domestic disturbance at a residence that was known to

18  the officers to be the home of Jason Davis and Desiree Coleman. *Id.* at 1240. The court

19  ruled:

20           There was no evidence introduced that indicated the officers believed Mr.
             Davis had a reputation for violence. Nor had he displayed a threatening or
21           aggressive manner when he initially contacted the officers. It is true he lied
             about Ms. Coleman's whereabouts, but any concern that lie might have
22           effected was allayed when she appeared without any signs of harm.
             Moreover, the only manifestation of resistance displayed by Mr. Davis was
23           his insistence upon keeping the officers outside.

24

25  The court therefore logically concluded the officers "[o]bviously ... could [have]

26  check[ed] her condition without entering the home." *Id.* at 1243.

27       Similar to the victim in <u>Davis</u>, agents could have checked on the conditions of the

28  workers without entering Dr. Sheikh's property by calling the telephone number provided

10

by GM on June 26, 2013.  Additionally, the agents did not have any evidence that Dr. Sheikh had a reputation for abusing workers or had a tendency for any type of physical violence.

**D.      Dr. Sheikh's Consent for Law Enforcement to Enter Her Property and Search Was Not Voluntary.**

In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). "That burden is heaviest when consent would be inferred to enter and search a home." United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990). Whether consent to search was voluntarily given or not is "to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227.

The Ninth Circuit has identified five factors that tend to show a lack of voluntariness: "(1) the person was in custody; (2) the officer had his weapon drawn; (3) the officer failed to administer Miranda warnings; (4) the officer did not inform the person of his right to refuse to consent; and (5) the person was told that a search warrant could be obtained." United States v. Chan-Jimenez, 125 F.3d 1324, 1327 (1997). The government need not "check off all five factors, but 'many of this court's decisions upholding consent as voluntary are supported by at least several of the factors.'" United States v. Patayan Soriano, 361 F.3d 494, 502 (9th Cir. 2004) (*quoting* Chan-Jimenez, 125 F.3d at 1327 n.3.).

On July 1, 2013, a total of three HSI Agents and two Sacramento Sheriff's Deputies went to Dr. Sheikh's property.  When they reached the location, the gate was locked.  Agent Kizenko telephoned Dr. Sheikh and "notified her that agents from Homeland Security Investigations and the Sacramento County Sheriff's Office were outside her gate at Menlo Oaks Court and need to speak with her if she would come out to the gate." Exhibit A at Bates 1.  Agent Kizenko was not direct and honest regarding specific reason for their presence but instead asked Dr. Sheikh to come the gate with a

command that the agents and sheriffs needed to speak to her without specifying the exact reason why.

Approximately 15 minutes later, Dr. Sheikh drove down to the gate in her vehicle. The report does not indicate whether the HSI Agents were in full uniform, whether the Sheriff's deputies were in full uniform, whether they drove in marked vehicles, the number of vehicles present, and whether they had guns and if their guns were visible. Group Supervisor Webster identified herself and informed Dr. Sheikh they had "received a report that there was someone on her property, a worker, being held against their will." Dr. Sheikh responded that no one was on the property except her parents, her son and herself, and that no one was being held against their will.  Since Dr. Sheikh informed them that no workers were at the property, agents had no reason to enter her property without a warrant.  Webster asked if agents "come in and take a look to make sure everything was ok and Sheikh consented." *Id.* At this point, Webster did not inform Dr. Sheikh that she could refuse consent, she did not inform her that they could obtain a search warrant, and she did not administer <u>Miranda</u> warnings.  The only factor that is clearly in favor of the government is that Dr. Sheikh was not in custody.

An assessment of the totality of the circumstances shows that the HSI agents were coercively attempting to obtain a consent search and illicit, inculpatory statements in violation of Dr. Sheikh's rights guaranteed by the Constitution. The agents had ample opportunity to obtain a warrant but purposely did not do so in order to search under the guise of a "welfare check" knowing that Dr. Sheikh is normally home on Mondays. When Kizenko called Dr. Sheikh, he was not honest and forthcoming about the purpose of their visit and lured her out to the gate with vague request that they needed to speak to her. Webster did not inform Dr. Sheikh that she could refuse consent, she did not inform her that they could obtain a search warrant, and she did not administer Miranda warnings. We do not know whether the four officers were in full uniform, how many vehicles went to the property, and whether their guns were visible.  Dr. Sheikh informed them that no workers were on her property so the request to search the property was unwarranted.

Despite having a consent to search form in their possession, Webster only asked for verbal consent.  This was yet again another coercive tactic by agents in order to gain entry onto the property and obtain statements in violation of Dr. Sheikh's constitutional rights.  When Webster subsequently presented Dr. Sheikh with a consent to search form, she refused to sign it. Once it became clear that Dr. Sheikh was the target, Dr. Sheikh exercised her rights:

> Sheikh stated that she did not like the wording of the form that stated if agents found incriminating evidence it could be used against her.  Sheikh also asked GS Webster why she wasn't presented with this form earlier when agents went into the trailer to look for any workers being held against their will. GS Webster explained that Sheikh gave permission for agents to go in the trailer to look for any workers being held against their will and based on the exigency GS Webster obtained a verbal consent from Sheikh, but that with the consent form, agents were requesting to go into the apartment and trailer and search.

Exhibit A at Bates 6.  However, there is no exigency to obtain a verbal consent when a law enforcement agent has in his or her possession a consent to search form.  Webster's explanation as to why Dr. Sheikh was not presented the consent form earlier clearly shows that agents were coercively making efforts to search without a warrant and obtain incriminating statements in violation of Dr. Sheikh's rights.  Once Dr. Sheikh read the consent form, it was made clear what rights she was giving up when freely and voluntarily giving her consent. This shows her previous consent was tainted by coercion. Had she been given this form from the start, Dr. Sheikh would not have allowed agents onto her property to search.  Therefore, the Court should find that Dr. Sheikh's consent was not voluntary.

**E.**      **The Fruits of the Unlawful Search Must be Suppressed and Eliminated as Evidence in the Case.**

The United States Supreme Court in the sentinel case of Wong Sun v. United States, 371 U.S. 471 (1963), held that evidence obtained as a direct result of an illegal

13

search may not be used against the defendant in a criminal proceeding.  Referring to the illegal search as a "poisonous tree" and the evidence that flowed from it as the tainted fruit of that tree, the court held that the fruit of the poisonous tree is not admissible evidence.  Furthermore, evidence obtained illegally may not even be used to establish probable cause for a subsequent search.  United States v. Wanless, 882 F. 2d 1459 (9th Cir. 1989).  "It is well established that, under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible, despite a person's voluntary consent, unless the evidence obtained was purged of the primary taint." United States v. Washington, 490 F.3d 765, 774 (9th Cir.2007) (internal quotation marks omitted). "It is the government's burden to show that evidence is not 'fruit of the poisonous tree.'" United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir.2002).

In this case, the entire investigation flowed directly from the illegal, warrantless search of Dr. Sheikh's property and to all of the subsequent searches and statements from witnesses. The search warrant that was executed at Dr. Sheikh's property on July 9, 2013 was based upon probable cause that included evidence and statements obtained at the first unlawful warrantless search on July 1, 2013.  Thus, the primary taint of the illegal search cannot be purged even if the Court finds consent.  All of the evidence in this case must be suppressed to protect the integrity of the Fourth Amendment of the United States Constitution.

**F.**     **Request for an Evidentiary Hearing**

An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Licavoli, 604 F.2d 613, 621 (9th Cir.1979).  Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. United States v.

Santora, 600 F.2d 1317, 1320 (9th Cir. 1979), *modified on other grounds,* 609 F.2d 433 (1979).

With respect to the search of Dr. Sheikh's property, there are several contested issues of material facts: 1) whether Dr. Sheikh's consent for agents to conduct a welfare check was voluntary; 2) whether there was an exigency to excuse the warrantless search; 3) and whether Dr. Sheikh was properly Mirandized.  Dr. Sheikh challenges the claim that there were exigent circumstances that bypassed the warrant requirement and argues her consent to search was involuntary.  While Agent Webster stated there were exigent circumstances, nothing in the HSI reports supports such a conclusion. Therefore, in the event that the Court does not find the reports themselves are sufficient to gran the motion to suppress, an evidentiary hearing is needed to enable the Court to determine the contested material facts at issue.

## V - CONCLUSION

Ever since its' inception, "the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct."  Terry v. Ohio, 392 U.S. 1, 12 (1968).  Law enforcement cannot use a welfare check as justification for a warrantless entry when the report was made on June 26, 2013, and the welfare check was not conducted for an additional 5 days later on July 1, 2013.  During those five days, there was sufficient time for the HSI Agents write a search warrant.  Violating a person's Fourth Amendment right to be free from unreasonable searches and seizures cannot be negated simply to make it convenient for law enforcement to apprehend suspects more easily.

Based upon the facts of this case, precedent case law, the prosecution cannot provide a reasonable justification for the warrantless search of Dr. Sheikh's property and the Court should grant the motion to suppress.  Therefore, for all of the aforementioned reasons, Dr. Sheikh respectfully requests the Court to grant a motion to suppress evidence pursuant to Rule 12(b)(3)(C).

Dated:   April 8, 2019

Respectfully Submitted,

/s/ Thomas A. Johnson
Thomas A. Johnson
Attorney for Dr. Firdos Sheikh

/s/ Kristy M. Horton
Kristy M. Horton
Attorney for Dr. Firdos Sheikh