Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
14742 Beach Blvd., Suite 410
La Mirada, California 90638
(213) 335-3935 | YMA@LawAlm.com

*Attorney for Defendant*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-CR-119-WBS-1 |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |
| v. | Hearing Date: TBD<br>Time:        TBD |
| FIRDOS SHEIKH, | Trial Date: TBD |
| Defendant. | Judge: Hon. William B. Shubb<br>Courtroom:   Five (14th Floor) |

Defendant Firdos Sheikh, M.D. ("Dr. Sheikh" or "Defendant"), by and through her counsel of record, Yasin M. Almadani, hereby files its Reply in Support of Motion to Dismiss the Indictment.

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.


Dated: April 13, 2020

Respectfully submitted,

ALMADANI LAW


     */s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.
*Attorney for Defendant*

## **TABLE OF CONTENTS**

*I.* *INTRODUCTION* ........................................................................................................... 1

*II.* *Synopsis of important legal standards concerning brady* ........................... 1

*III.* *Relevant Facts Omitted in Government's Sanitized Factual Recitation* ..................... 3

*IV.* *the government's UNTENABLE positions and Misrepresentations CONCERNING Brady DisclosureS* ........................................................................................................... 6

   A. *Brady* **Material the Government Had Not Disclosed Even as of February 25, 2020** ........................ 6

     1. Perjurious Immigration Certifications Disclosed on March 11, 2020 ..................... 6

     2. Failure to Disclose Potentially Perjurious Conduct by Agent Webster in the Sekhon Case ........................... 9

     3. Agents' Pre-Warrant Knowledge of Cheap Eateries Close to Dr. Sheikh's Ranch Inadequately Disclosed on March 2, 2020 ........................... 9

     4. Government's Misleading Description of the T-Visa Benefits Provided to the Alleged Victims.................. 11

     5. Information Concerning Alfredo's Local Contact Disclosed on March 4, 2020 ......................... 11

     6. Failure to Disclose the Impeachable Close Relationship Between HSI and Opening Doors ......................... 12

   B. *Brady* **Material Disclosed Late on February 25, 2020, in Violation of the Court's** *Brady* **Disclosure Order** ........................................................................................................... 12

*V.* *The Government's Arguments Fail* ........................................................................................................... 17

   A. **The Government's Erroneous Position on Prejudice** ......................................................... 17

   B. **Reckless Government Conduct and Flagrant Misbehavior** ......................................................... 18

   C. **Speedy Trial Violation** ........................................................................................................... 19

   D. **Outrageous Government Conduct** ........................................................................................................... 20

*VI.* *Prayers for relief* ........................................................................................................... 20

*VII.* *Conclusion* ........................................................................................................... 22

*Defendant's Reply in Support of*
*to Motion to Dismiss Indictment*

*Case No. 2:18-CR-119-WBS-1*

# TABLE OF AUTHORITIES

## CASES

*Brady v. Maryland*,
   373 U.S. 83 (9th Cir. 1963) ……………………………………………………… *passim*

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ..................................................................................... 4

*United States v. Alderdyce*,
   787 F.2d 1365 (9th Cir. 1986) ……………………………………………….. 4

*United States v. Alvarez*,
   86 F.3d 901 (9th Cir. 1996) ......................................................................... 4

*United States v. Barton*,
   995 F.2d 931 (9th Cir. 1993) ……………………………………………… 4

*United States v. Chapman*,
   524 F.3d 1073 (9th Cir. 2007) …………………………………………… 5, 20, 21

*United States v. Bagley*,
   475 U.S. 667 (1985) ...................................................................................... 4

*United States v. Blanco*,
   392 F.3d 382 (9th Cir. 2004) ....................................................................... 20

*United States v. Kojayan*,
   8 F.3d 1315 (9th Cir. 1993) ..…………………………………………… 3, 5, 20, 21

*United States v. Mendoza*,
   530 F.3d 758 (9th Cir. 2008) ....................................................................... 21

*United States v. Restrepo*,
   930 F.2d 705 (9th Cir. 1991) ....................................................................... 22

*Defendant's Reply in Support of*
*to Motion to Dismiss Indictment*

*Case No. 2:18-CR-119-WBS-1*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

In its opposition, the government concedes, as it must, that dismissal is a sanction available to this

4 Court under the broad supervisory powers recognized by the Ninth Circuit in *Chapman* and *Kojayan*.

5 The government does not argue that this Court lacks the power to dismiss the case.  Instead, it argues that

6 its actions here do not merit dismissal.  To support its arguments, the government takes positions that are

7 factually misleading and legally unsupported.  It minimizes its misconduct and fails to take responsibility

8 for the prejudice it has caused.

9

The government takes the position that it can withhold material that is *arguably* exculpatory when

10 the law requires erring on the side of disclosure.  It conflates the issue of *materiality* (i.e., whether

11 evidence is exculpatory and/or impeaching) with the issue of *prejudice* (i.e., the harm caused by the

12 failure to disclose).  It focuses only on Dr. Firdos Sheikh's ability to use the *Brady* material at trial when

13 discovery obligations under *Brady* are also applicable to pre-trial suppression proceedings where Dr.

14 Sheikh has already suffered significant prejudice.  The government incorrectly states that prejudice

15 resulting from tactical advantages gained by non-disclosure is not sanctionable.  Under *Chapman*,

16 dismissal is an appropriate sanction where the non-disclosure results in a tactical advantage.

17

## II.   SYNOPSIS OF IMPORTANT LEGAL STANDARDS CONCERNING *BRADY*

18

**Dismissal Is an Appropriate Remedy to Establish Standards of Conduct Before the Court.**

19

In *United States v. Kojayan*, the Ninth Circuit vacated the judgment of conviction upon finding a

20 *Brady* violation and remanded the case to the district court to consider dismissal with prejudice, stating,

21 "the judiciary—especially the court before which the primary misbehavior took place—may exercise its

22 supervisory power to make it clear that the misconduct was serious, that the government's unwillingness

23 to own up to it was more serious still and that steps must be taken to avoid a recurrence of this chain of

24 events."  8 F.3d 1315, 1325 (9th Cir. 1993).

25

***Brady* Requires Early Disclosure.**  The *Brady/Giglio* doctrine establishes a self-executing

26 Constitutional duty whereby exculpatory/impeachment material must be disclosed early and regardless

27 of whether the defendant makes a request for it.  *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995);

28

1

*United States v. Bagley*, 475 U.S. 667, 676 (1985).

**Failure to Disclose Early Is a *Brady* Violation.** "If the prosecutor delays disclosing information to which he or she has access, or if the prosecutor is aware of the existence of potentially exculpatory evidence, but fails to take the most rudimentary steps to obtain access to, to preserve, or to promptly disclose such evidence, then he or she may be in violation of the duty established under *Brady v. Maryland*." *United States v. Alderdyce*, 787 F.2d 1365, 1370 (9th Cir. 1986).

**Prosecutors Must Err on the Side of Disclosure.** Because the government's failure to turn over exculpatory information in its possession is unlikely to be discovered and thus largely unreviewable, it is particularly important for the prosecutor to ensure that a careful and proper *Brady* review is done. *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996). It is not the role of the prosecutor to decide that facially exculpatory evidence need not be turned over because the prosecutor thinks the information is false. *Id.* "To the extent the prosecutor is uncertain about the materiality of a piece of evidence, 'the prudent prosecutor will resolve doubtful questions in favor of disclosure.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

***Brady/Giglio* Obligations Apply to Pre-Trial Proceedings.** In *United States v. Barton*, the Ninth Circuit held that "*Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant." 995 F.2d 931, 935 (9th Cir. 1993).

**Strategic Advantage Gained by Non-Disclosure Provides Grounds for Dismissal.** In *Chapman*, the district court dismissed the indictment after finding a *Brady* violation *even though the case could have been re-tried with the benefit of the disclosed material*. The district court noted the unfairness of having the defense strategy previewed in the first trial only to have the government clean up its case in the second. *Chapman*, 524 F.3d at 1087. The Ninth Circuit affirmed. *Id.*

**Government's Unwillingness to "Own Up" to Its Errors Must Be Considered.** In determining the proper remedy, courts must consider the government's willingness to "own up to" its errors. *Kojayan*, 8 F.3d at 1318; *Chapman*, 524 F.3d at 1087.

## III.   RELEVANT FACTS OMITTED IN GOVERNMENT'S SANITIZED FACTUAL RECITATION

In its statement of facts (Gov Brf. at 2-4), the government provides a sanitized account of what has occurred, unfairly skipping over its own mistakes and the most relevant events concerning the issues raised in Dr. Sheikh's motion.

The government tells this Court that it had produced pre-indictment discovery and produced 11,000 pages of discovery in July 2018 after indicting the case.  What the government skips and what is clear today is that there was *Brady* material missing in those productions; some of the most significant impeachment material had been intentionally plucked out by the government.  Defense counsel suspected this in July 2019 and made a specific appeal to this Court to order a complete *Brady* disclosure.   In response, the government misrepresented the state of *Brady* disclosure not once, but twice:

> MR. NOLAN:[1]  **The government wants to be clear we're certainly not hiding the ball in any shape or form and that all discovery has been provided** first to Mr. Clyde Blackman even prior to indictment; and then after Mr. Blackman was terminated, to Mr. Johnson after indictment. And my understanding is that Mr. Johnson has transferred all the discovery to new counsel.

(Ex. AAA-1:  R/T 7/29/19 at 13 (emphasis added)).

> MR. NOLAN:  **The government has already provided all of the material in this case.  It's been basically open discovery.**

(Ex. AAA-1:  R/T 7/29/19 at 26 (emphasis added)).

The Court then attempted to help the government to avoid the problems that have come to light since the July 2019 hearing and ordered a full disclosure by the end of August 2019:

> THE COURT:  Okay.  But there's a difference between what might be *Brady* material and open discovery.  There can be something outside the file that might be *Brady* material that would not necessarily be covered by so-called "open discovery," so I want to make sure you don't get caught in some sort of a procedural trap.  **Make sure you do the necessary inquiries to find out if there's any *Brady* material, either within or outside of the discovery that you've provided and, if so, make sure you provide that <u>by the end of August</u>.**

(R/T 7/29/19 at 26 (emphasis added); DE 63).  The government's brief omits these facts.

---

[1] Mr. Nolan is same DOJ prosecutor who has authored the government's opposition.  (*See* Gov. Brf. at 24).

*Defendant's Reply in Support of*                                          *Case No. 2:18-CR-119-WBS-1*
*to Motion to Dismiss Indictment*

1     On August 8, 2019, the Defense sent a letter to the prosecutors expressing concerning about the

2     heavily redacted discovery and requested a full *Brady* review to include, *inter alia*, impeachment

3     materials related to immigration benefits. (Ex. BBB-1).  The government's brief omits this fact.

4     On August 29, 2019, the government represented to Defense in a letter that it had complied with

5     the Court's *Brady* disclosure order.  (See Ex. BBB-3).  That was untrue and it is a relevant fact also

6     missing from the government's brief.

7     Patting itself on the back, the government tells this Court that, on September 23, 2019, it produced

8     some rough notes as "Jencks material" to Special Agent Carol Webster's anticipated testimony at the

9     suppression hearing on September 30 and December 17-18, 2019.  What the government omits, however,

10    is that the so-called production was nothing more than cherry-picked notes helpful only to the

11    government.  Worse, the government omits the fact that, on September 23, 2019, prosecutors sent an

12    email representing that they had reviewed agent notes again and found nothing noteworthy to produce

13    except the above-referenced notes that were coincidentally favorable to the government.  (*See* Ex. BBB-

14    4).  No *Brady* material was produced that day in the cherry-picked notes even though this was presumably

15    the government's third pass on the material—the first being for its initial production in July 2018, the

16    second being its review in alleged compliance with the Court's *Brady* disclosure order of July 2019, and

17    the third being the review referenced in the September 23, 2019 email above.  The government's brief

18    omits these facts.

19    On September 30 and December 18, 2019, the prosecutors again represented to undersigned

20    counsel that all *Brady* material had been produced and there was nothing left.  (Almadani Decl. at ¶ 5-6).

21    The government does not contest that it made these representations.  Nevertheless, the fuller set of notes

22    (not produced until late February 2020) contained a number of exculpatory/impeaching facts bearing

23    upon agent credibility that Dr. Sheikh was unable to use to cross-examine Agent Webster at the

24    September and December 2019 suppression proceedings.

25    The fuller set of agent notes was disclosed essentially on the eve of the *Franks* hearing after all

26    briefing had been completed, and only after the government first tried to have the *Franks* hearing

27

28

*Defendant's Reply in Support of*                                    *Case No. 2:18-CR-119-WBS-1*
*to Motion to Dismiss Indictment*

cancelled (see DE 85 at 20).[2]  The government then admitted its *Brady* violation at the February 25, 2020 hearing, but only after cross-examination by the Court:

> THE COURT:  But if you now acknowledge that this is *Brady* material - -
>
> MR. NOLAN:  Yes.
>
> THE COURT:  You do?
>
> MR. NOLAN:  Yes.
>
> THE COURT:  You didn't disclose the *Brady* material when you were ordered to do so?
>
> MR. NOLAN:  We missed it at that point.

(R/T 2/25/20 at 13).

The Court then explained a number of important *Brady* issues to the government that appear to have fallen on deaf ears:

> THE COURT:  **Well, you see, you have to err on the side of disclosing too much if you are going to do it the way you do it,** because the consequences of not disclosing material that you should have disclosed are much greater than the consequences of disclosing material that you did not have to disclose.

(R/T 2/25/20 at 14) (emphasis added).

> THE COURT:  No.  That's not the way *Brady* is supposed to work.  Mr. Almadani has stated it correctly.  You don't need to have an order from the Court in order to be required to disclose *Brady*.  I don't often even make an order, because sometimes I simply say: The Government knows its obligations, and the Court expects them to comply with those obligations. **Now, you don't' have to wait to hear from Mr. Almadani to know what constitutes *Brady* material.  That's your job.**

(R/T/ 2/25/20 at 15) (emphasis added).

When the government tried to argue that there had been no prejudice, the Court disagreed, explaining that there had been prejudice based even on the violation noted just that day:

> THE COURT:  **There's some prejudice already.  The prejudice has been not only to defense counsel, but to the Court.**  I come out here this morning ready to hear arguments, ready to hear testimony, if necessary, and ready to decide at the end of those arguments and testimony the *Franks* motion.
>
> Now, we have to put it over, and I have to go through that again.  Mr. Almadani has to put additional time, which, I assume, he bills to his client

---

[2] "DE" denotes docket entry followed by the docket control number.

*Defendant's Reply in Support of
to Motion to Dismiss Indictment*                                    *Case No. 2:18-CR-119-WBS-1*

on this case now, because he wasn't able to go over these materials earlier in connection with the motion. **There's already some prejudice.**

**So I think you need to look seriously, if there's a *Brady* violation, what is the sanction, and there's case law on that, I'm sure.**

(R/T 2/25/20 at 21) (emphasis added).

The Court concluded with some serious warnings to the government:

THE COURT: They've already been ordered to turn over *Brady* material. If they haven't, that's the violation. They don't get to keep coming back and saying: How much *Brady* do we give you now? How much *Brady* do we give you later? When do we give it to you? They don't get to do that. **They are representing to the Court that they have given you all *Brady* material. If that representation is false, we'll deal with it.**

(R/T 2/25/20 at 33) (emphasis added).

THE COURT: As you point out, Dr. Sheikh has a right to have this case brought to trial, and brought to trial quickly.

**Now, if I hear again that there's material that I find to be *Brady* material that hasn't been turned over after this, I guarantee you the sanctions are going to be as severe as the law allows.**

(Ex. AAA: R/T 2/25/20 at 27) (emphasis added).

These are all relevant facts missing from the government's brief. But most egregiously, the government omits the fact that the Defense has had to disclose more of its strategy to obtain additional *Brady* material from the government even after the above-noted February 25, 2020 hearing where and the Court gave its final warning; and there are *Brady* materials still outstanding.

## IV.   THE GOVERNMENT'S UNTENABLE POSITIONS AND MISREPRESENTATIONS CONCERNING *BRADY* DISCLOSURES

The caselaw is clear: **If it is arguably *Brady*, then it should be disclosed**. *Supra*, p. 2. The government fails to follow this basic principle and misrepresents to this Court that certain *Brady* items were disclosed when they was not.

### A.   *Brady* Material the Government Had Not Disclosed Even as of February 25, 2020

#### 1.   *Perjurious Immigration Certifications Disclosed on* <u>*March 11, 2020*</u>

Agent Webster was the lead supervisory agent on the case and the charges predominantly flow from her work on the case. She was also the government's star witness at the suppression hearing in

*Defendant's Reply in Support of*
*to Motion to Dismiss Indictment*

*Case No. 2:18-CR-119-WBS-1*

September and December 2019.  Yet her I-914B certifications, which contain objectively false statements made under penalty of perjury, were purposely withheld by the prosecutors.

These I-914B certifications were submitted by Agent Webster in support of the alleged victims' T-Visa applications and confer significant immigration benefits on those victims (Prakash and Alfredo). In her motion, Dr. Sheikh methodically explains that, based on what Agent Webster knew at the time, the Defense would demonstrate in cross-examination that Webster gave false statements under penalty of perjury and helped the alleged victims commit immigration fraud in order to advance this case.  (Def. Mot. at 16-20 (detailing the cross-examination and argument)).  This argument goes to the heart of every charge in the indictment.  No matter what the government's position on the issue, the Defense was entitled have the certifications for Agent Webster's cross-examination at the suppression hearing.

The government responds that there was no *Brady* violation because the information contained in the I-914B certifications is consistent with the ROIs previously disclosed.  (Gov. Brf. at 14).  The position is disingenuous and untrue.  It is disingenuous because the impeachment value of: (i) a false statement, (ii) by the lead case agent, (iii) certified under penalty of perjury, (iv) provided in support of significant immigration benefits to the alleged victims who are also the government's key witnesses, (v) in order to help those alleged victims/witnesses commit what appears to be, by all objective standards, immigration fraud, is infinitely different from the impeachment value of an ROI.  Any trial lawyer understands that false statements in the sworn certifications could be used independently to impeach Agent Webster while an ROI could only be used if she were to contradict the ROI on the stand.  Furthermore, the credibility impact of a false sworn statement is among the most damaging impeachment materials available.  Indeed, the Defense's cross-examination strategy and argument at the September and December 2019 suppression proceedings would have been much stronger had the government disclosed these certifications.

The government's position is untrue because the certifications—in which the agent needed to demonstrate that Prakash and Alfredo were victims of *"severe"* human trafficking—take the already unlikely and inconsistent stories in the ROIs to another level by sanitizing all the inconsistent statements and exaggerating an already false narrative.  **The government is banking on the Court to ignore the details, but the Defense begs for the Court's attention to detail here.**  Indeed, the careful comparison

*Defendant's Reply in Support of*                                                    *Case No. 2:18-CR-119-WBS-1*
*to Motion to Dismiss Indictment*

provided in Dr. Sheikh's motion on pages 16-20, examining the exhibits vis-à-vis the certifications, reveals the truth and the disingenuousness of the government's position.

The government also takes the position that it is immaterial that Agent Webster lied in her certification about Prakash being found "on" Dr. Sheikh's property when he was actually found outside the property. The materiality is self-evident because the certification describes Dr. Sheikh's ranch as a locked-down compound from which Prakash and Alfredo "were not able to freely leave" when the Court has seen for itself that this is not true. Had Agent Webster been honest about Prakash being found outside the property, it would have undercut her false description of the locked-down compound and she may have lost a star witness to deportation.

More disturbing is that the prosecutors knew about these troubling certifications, as evidenced in their August 29, 2019 letter (Ex. BBB-3, ¶1-2), and yet intentionally plucked them from the discovery while representing to the Court and Defense that there was nothing more to produce. That is not just recklessness, it is willfulness.

The government argues that there has been no prejudice because Dr. Sheikh will have the opportunity to cross examine Agent Webster at the *Franks* hearing or at trial. The government ignores the fact that Dr. Sheikh already lost the opportunity to cross-examine Agent Webster at the suppression hearing where Webster's credibility was on the line against numerous defense witnesses. Moreover, the government strategically forced Dr. Sheikh to reveal her cross-examination strategy by withholding this *Brady* material. This is unfair because it takes away the significant advantage of cross-examination surprise. An effective cross-examination at the suppression hearing would have created a record of testimony that could have been used at subsequent hearings and trial to further attack the government's case. That ship has now sailed, and the clock cannot be turned back. The prejudice is significant and incurable.

Despite this, the government appears to be entirely unapologetic about violating the Court's *Brady* disclosure deadline and numerous warnings and admonitions. It is still not in compliance with the Court's *Brady* disclosure order as it has not disclosed additional I-914B certifications for other alleged victims who have been given T-Visas in this case. There appear to be an additional five such individuals and

there should exist T-Visa certifications for at least some of those individuals. The Defense can show that any sworn statements certifying "severe" human trafficking against Dr. Sheikh would have to be objectively false. The Defense is entitled to these certifications to impeach the agents and the government's case theory. Withholding this information disregards the Court *Brady* disclosure order and constitutes a continuing *Brady* violation.

### 2. Failure to Disclose Potentially Perjurious Conduct by Agent Webster in the Sekhon Case

In her motion, Dr. Sheikh submits that the government should have disclosed that, in *United States v. Sekhon*, et al. Case No. 2:06-CR-0058-JAM-EFB, Magistrate Judge Brennen has found that the allegations of perjury against Agent Webster in that case are sufficiently supported to proceed with discovery and hearings. The allegations pertain to Agent Webster having suborned immigration fraud for a government witness in that case. (Def. Mot. at 21-21). This information was obviously known to the government but never disclosed to the Defense or the Court. Defense Counsel learned of it only coincidentally. (Almadani Decl. ¶ 2).

The government claims that the allegations are "unsubstantiated" and so no disclosure was not necessary. (Gov. Brf. at 14-15). This is not entirely true. The allegations are substantiated by the sworn declaration of at least one witness (Document 627-2 in the *Sekhon* case) who is not a defendant and who does not stand to gain anything from the outcome of the case. Moreover, the allegations against Agent Webster have been found by Judge Brennan to be at least sufficiently supported to merit proceedings in that § 2255 case. The charges in this case are so significantly based on Agent Webster work that a perjury finding in *Sekhon* will surely undermine the integrity of the proceedings in this case. These are important facts that should have been disclosed, if not to the Defense, then at least to the Court prior to the suppression hearing where Agent Webster testified.

### 3. Agents' Pre-Warrant Knowledge of Cheap Eateries Close to Dr. Sheikh's Ranch Inadequately Disclosed on <u>March 2, 2020</u>

A salient allegation in the government's case theory—found in both the agents' sworn search warrant affidavit and their sworn T-Visa certifications—is that Prakash and Alfredo were being starved and had no means to leave to purchase food. It is undisputed that these alleged victims were being paid

9

hundreds of dollars a month and they had no significant living expenses other than food.  Therefore, the agents' *pre-warrant* knowledge of cheap eateries close to the ranch is highly material and exculpatory both to contradict the alleged victims' stories and to show that the agents knowingly made false statements under penalty of perjury.  However, the government disclosed nothing about this until March 2, 2020, and, after forcing the Defense to reveal its cross-examination strategy first, disclosed only limited information on this important issue.

The government argues that this is not *Brady* material because the Dr. Sheikh already knew about the existence of cheap eateries in the area.  This is absurd because Dr. Sheikh's knowledge is not at issue. (Gov. Brf. at 13-14).  What is at issue is the *agents'* knowledge of the nearby cheap eateries *prior to* the search warrant being sworn and executed.

The government also argues that the information was disclosed in ROI 29 and 31.  The government does not attach the ROIs, however, and the Court must question that.  It is the government's duty to be forthcoming with the Court, and to not mislead the Court.  Referencing these reports without attached them is misleading.  They are heavily redacted reports that were written years later in March 2016 referencing interviews that also took place years later in December 2015 and January 2016; they are written by Agent Rachel Reesch ("Agent Reesch") who was not on the case on July 8-9, 2013, when the search warrant affidavit was sworn and executed.  These ROIs do nothing to inform the Defense about the knowledge of the agents prior to the search warrant being sworn and executed, and are not useful for a cross-examination on material omissions in the search warrant.  The government knows this and yet misrepresents the nature of these reports to escape *Brady* liability.  It is not the Defense's job to submit the government's evidence, but the Defense will submit ROI 29 (Ex. UUU) as an example to demonstrate the government's sophistry.  The government engages in this sophistry throughout its brief and the Defense will inform the Court wherever an ROI has been misrepresented.

To date, the government has not disclosed the details concerning the agents' pre-warrant knowledge of cheap eateries in the area even though the government has that information.  Withholding this information disregards the Court's *Brady* disclosure order and constitutes a continuing *Brady* violation.

4.     ***Government's Misleading Description of the T-Visa Benefits Provided to the Alleged Victims***

In her motion, Dr. Sheikh submitted that the government has misled the Defense about the T-Visa benefits conferred upon the government's alleged victims/witnesses.  The government represented that the alleged victims/witnesses were receiving a temporary four-year visa (Ex. BBB-3) when it turns out that the government may be offering them a chance at permanent residency if they continue assist on this case.  The difference between a temporary four-year visa and a a at chance permanent residency is a big difference.  To date, the government has not confirmed whether the alleged victims/witnesses will be eligible for permanent residency if they continue to assist the government in this case.

The government argues that it provided "the legal definition" of a T-Visa.  What the government omits is that it provided an *incomplete* description of the T-Visa program and continues to hide the ball as to how the program is being applied to the alleged victims in this case.  Dr. Sheikh is entitled to know the full scope of benefits her accusers are expecting by helping the government in this case.  Withholding this information disregards the Court's *Brady* disclosure order and constitutes a continuing *Brady* violation.

5.     ***Information Concerning Alfredo's Local Contact Disclosed on <u>March 4, 2020</u>***

On March 4, 2020, the government disclosed for the first time a phone number that had been purposely redacted, showing that, as early as July 1, 2013, agents knew that Alfredo actually had a friend <u>in the area</u> and a <u>local</u> phone number for that friend.  Alfredo was actually stealing and selling Dr. Sheikh's personal property to that friend while she was at work.  This directly contradicts statements in the search warrant affidavit sworn on July 8, 2013, telling the magistrate that Alfredo had no phone and had lost all his numbers.  Again, it is the agents' pre-warrant knowledge of this information that is relevant to the impeachment at issue.

The government certainly understands this basic impeachment principle yet it misinforms the Court that the information was disclosed in ROIs 58 and 59.  (Gov. Brf. at 15).  It was not.  ROIs 58 and 59 are from March 2018 referencing interviews conducted in January and February 2018.  The interviews and ROIs post-date the warrant by years; moreover, the ROIs are authored by an agent who was not even

*Defendant's Reply in Support of*
*to Motion to Dismiss Indictment*

*Case No. 2:18-CR-119-WBS-1*

on the case when the search warrant was sworn and executed.

### 6.   Failure to Disclose the Impeachable Close Relationship Between HSI and Opening Doors

The Opening Doors organization is referenced in most of the case reports and played an integral part in assisting HSI and the victims/witnesses in this case.  The Defense has reason to believe that there are significant benefits and money exchanged between Opening Doors and HSI.  In her motion, Dr. Sheikh argues that she is entitled to information about this relationship.  An examination of the evidence shows that, at Dr. Sheikh's peril, HSI and Opening Doors together pushed through T-Visa applications for Prakash, Alfredo, and at least five other witnesses by rubber stamping obviously exaggerated stories of these individuals that significantly lacked credibility when compared with the full breadth of evidence known to the government.  (Def. Mot. at 23-24).

The government resists disclosure on the basis that the Defense is "speculating."  This is an unfair response because from a *Brady* perspective, the prosecutors are trusted to guard the henhouse, and the Defense always operates in the dark.  Moreover, the Defense is not speculating here.  On March 9, 2020, undersigned counsel received information to believe that such a relationship exists.  (*See* Almadani Decl. at ¶ 4).  However, the Defense does not know that nature or extent of the relationship and the benefits exchanged.  The government, on the other hand, is well aware of these facts.  The Defense is entitled to this information on the issue of bias and improper motives, especially concerning this case, which is razor thin.  Withholding this information disregards the Court *Brady* disclosure order and constitutes a continuing *Brady* violation.

### B.   *Brady* Material Disclosed Late on February 25, 2020, in Violation of the Court's *Brady* Disclosure Order

At the February 25, 2020 hearing, the government admitted that it had failed to timely disclose agent notes containing one item covered under *Brady*.  The Defense responded that there were many *Brady* items that had been missing and were produced only on the eve of the *Franks* hearing in violation of the Court's August 30, 2019 disclosure deadline.  As a result, the Court continued the *Franks* hearing, noting prejudice, and ordered briefing to consider the extent of the *Brady* violation.

Dr. Sheikh highlighted eight *Brady* items in the agent notes that negated probable cause for the

*Defendant's Reply in Support of*
*to Motion to Dismiss Indictment*                                    *Case No. 2:18-CR-119-WBS-1*

warrant, but were missing from the previously produced discovery.  In analyzing whether the government had previously produced this information, it is important to note that, as pertaining to the *Franks* hearing, the issue here is the *agents' pre-warrant knowledge* (prior to July 8, 2013) of the following eight items.

*First*, on July 2, 2013, Alfredo informed agents that he told Sheikh that he was going to leave a week prior to actually leaving and she said it was fine.  (Def. Mot. at 11).  This fact was omitted from the warrant.  The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.  Upon cross-examination by the Court, the government admitted that it had not timely disclosed this *Brady* item.  *Supra*, p. 6.

*Second*, on July 2, 2013, Alfredo informed agents that he had a brother in Texas who was a legal permanent resident, belying Alfredo's story that he had nowhere to go and no one to turn to.  (Def. Mot. at 11).  This fact was omitted from the warrant.  The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.

The government tells the Court that it previously disclosed the information in ROI 46.  (Gov. Brf. 7).  This is untrue.  ROI 46 was authored by Agent Reesch in June 2017, concerning an interview conducted in April 2017.  It cannot be used to impeach statements in the warrant affidavit authored on July 8, 2013, which is the *Brady* issue at hand.

The government also makes an elaborate argument why it is immaterial that Alfredo has a brother in Texas.  While the government may be entitled to its position, it is not entitled to withhold *Brady* material on the basis that the issue may be "arguable."  As this Court has admonished previously, the government must err on the side of disclosure, because Dr. Sheikh has a constitutional right to make arguments in her defense using exculpatory material in the government's possession.

*Third*, on July 2, 2013, Alfredo informed agents that Dr. Sheikh never raised her hand on anyone, belying the government's claim of forced labor and serious harm.  (Def. Mot. at 11-12).  This fact was omitted from the warrant.  The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.

The government tells the Court that it previously disclosed the information in ROI 31.  (Gov. Brf. 9).  This is untrue.  ROI 31 was authored by Agent Reesch in March 2016, concerning an interview

13

conducted in January 2016.  It cannot be used to impeach statements in the warrant affidavit authored on July 8, 2013, which is the *Brady* issue at hand.

The government also argues that it "has never alleged that the defendant used force or physical restraint as the prohibited means to compel the labor of her victims." (Gov. Brf. at 8).  The government misleads the Court again.  For example, in paragraph 3 of the warrant affidavit, the agent states that "SHEIKH knowingly obtained the labor and services of the individuals by one or more of the following means: . . . by means of force, threats of force, physical restraint, by means of serious harm and threats of serious harm." (Ex. W).  In paragraph 16(l), the agent writes, "On one occasion, SHEIKH threatened to cut off [Alfredo's] hands because he was stealing so much." (Ex. W).  Moreover, the indictment charges Dr. Sheikh with, *inter alia*, obtaining labor "by means of (a) serious har and threats of serious harm." (DE 1).  These are fairly broad allegations and charges that certainly encompass physical force.  The government's argument is disingenuous and the fact that the alleged victims admitted that Dr. Sheikh never raised a hand on anyone is favorable to her.  The agents' pre-warrant knowledge of this favorable fact should have been disclosed previously.

*Fourth*, on June 26, 2013, Gildardo informed agents that Dr. Sheikh was a woman <u>over the age of 50</u> who lived alone, while Prakash and Alfredo (the alleged victims) were 40-year-old men, which begs the question how these two 40-year-old men were being forced into labor by this female neurologist over ten years their senior living alone who almost never home. (Def. Mot. at 12).  This fact was omitted from the warrant.  The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.

The government argues that this is not *Brady* material because Dr. Sheikh is aware of her age.  But Dr. Sheikh's knowledge is not at issue.  It is the agents' pre-warrant knowledge of her age that is at issue.  The government also argues that it has never alleged physical force, which is not true, as discussed above.  Finally, the government states that the Defense should forgo the agents' written notes because the exculpatory fact can be "inferred."  Any trial lawyer knows that impeachment based on a witness' writing is far stronger than impeachment based on speculation of what the witness may have known.  The witness could easily answer that he/she is not very good at guessing age, the government would then object on

14

the basis of foundation and speculation, and that would be the end of that line of cross-examination. The government should not be allowed to play this game. It does not have the right to withhold *Brady* material on the basis that the favorable fact in the government's possession can somehow be "inferred."

*Fifth*, on June 26, 2013, Gildardo informed agents that Dr. Sheikh was not present at the ranch six days out of the week from 9:00 a.m. to 3:00 a.m. (Def. mot. at 12). This means that prior to authoring the affidavit, the agents know that Dr. Sheikh was gone from her ranch six (6) days a week, 18 hours a day. As a 50-year-old female doctor living alone with these work hours, it would be nearly impossible to run a forced labor operation. This fact was omitted from the warrant. The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.

The government argues that it disclosed the information when it disclosed that Dr. Sheikh "would usually leave between 9:00 a.m. and 11:00 a.m. and return after midnight." (Gov. Brf. at 10). Dr. Sheikh submits that the expansive hours of 9:00 a.m. to 3:00 a.m. have a different factual appeal than what was disclosed. Moreover, the minimization of the hours in the agents' reports in comparison to the notes could itself be used to impeach the agent. This information favorable to Dr. Sheikh that should have been disclosed previously.

*Sixth*, on June 26, 2013, Gildardo informed agents that Alfredo and Prakash worked from 7:00 a.m. to 3:30 p.m., which appear to be reasonable work hours that undercut the alleged victims' and government's story of forced labor 10-14 hours a day, seven (7) days a week. (Def. Mot. at 12-13). This fact was omitted from the warrant. The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.

The government argues that the Defense is "misreading" the notes, and that the notes do not actually reference Alfredo and Prakash's hours but rather Gildardo's work hours. (Gov. Brf. at 10). The Defense disagrees. It is not the Defense "misreading" the notes; it is the government misleading Court. The Court can decide for itself (Ex. EEE at USA0011540):

The notes appear to quite clearly state, "Alfredo & Prakash work everyday 7 - 330." If the government wants to take an untenable position on what the notes say, it is free to do that, but the government is not allowed to usurp the role of the factfinder and withhold *Brady* material.  Dr. Sheikh has a constitutional right to facially exculpatory information so that she can make her argument.

The government also misrepresents that this information was disclosed in ROIs 16, 32, and 37. Again, the issue is the agents' pre-warrant knowledge of this exculpatory fact, which was omitted from the warrant.  All three reports referenced by the government post-date the warrant and document interviews that occurred after the warrant was sworn and executed.  They cannot be used to impeach statements in the warrant affidavit authored on July 8, 2013, which is the *Brady* issue at hand.

*Seventh*, on July 1, 2013, Prakash informed agents that, immediately prior to working for Dr. Sheikh, he was voluntarily working for another man on similar terms but for lesser pay, and he actually sought a referral to Dr. Sheikh.  (Def. Mot. at 13).  This contradicts Prakash's story of forced labor and the government's case theory, Prakash was willing to work on lesser terms than Dr. Sheikh's alleged forced labor terms.  This fact was omitted from the warrant.  The agent's pre-warrant knowledge of it was disclosed on the eve of the *Franks* hearing, in violation of the Court's *Brady* disclosure order.

The government tells this Court that it disclosed the information previously but all of the documents it references either post-date the warrant affidavit or establish knowledge on the part of

1    someone other than the warrant affiant and/or the agents who were working on the case at the time the

2    warrant was sworn and executed.  The only ROI referencing the correct time period and agents is ROI

3    10, but this ROI does not actually disclose the terms of employment with Brewer, which is the key fact—

4    that, at that time, Prakash was willing to work for lesser terms.  This supports the conclusion that Prakash

5    was not being forced but rather willingly wanted work with Dr. Sheikh.  This is material favorable to Dr.

6    Sheikh that should have been disclosed previously.

7        *Eighth*, on July 1, 2013, Prakash informed agents that he had a friend living nearby in Fruitridge,

8    which negates his claim that he had nowhere to go and no one to contact.  (Def. Mot. at 13).  This fact

9    was omitted from the warrant.  The agent's pre-warrant knowledge of it was disclosed on the eve of the

10   *Franks* hearing, in violation of the Court's *Brady* disclosure order.

11       The government argues that this fact was in Dr. Sheikh's knowledge or contained in Prakash's

12   notebook.  However, in terms of the warrant, neither Dr. Sheikh's nor Prakash's knowledge is at issue.

13   It is the agents' pre-warrant knowledge that is at issue.  That was not disclosed.  Each of the ROIs

14   referenced by the government—ROIs 28, 29, and 31—all post-date the warrant and document interviews

15   that post-date the warrant.  They cannot be used to impeach statements in the warrant affidavit authored

16   on July 8, 2013, which is the *Brady* issue at hand.

17       The government's repeated lack of candor makes litigating this case very challenging and it

18   disturbs the integrity of the entire process.

19   **V.    THE GOVERNMENT'S ARGUMENTS FAIL**

20       **A.    The Government's Erroneous Position on Prejudice**

21       The government argues that there is no legal authority to support the claim that the denial of

22   effective cross-examination constitutes prejudice.  The government misunderstands Ninth Circuit law.

23   In *Chapman*, the district court found a *Brady* violation and dismissed the case, noting the unfairness of

24   having the defense strategy previewed in the first trial only to have the government clean up its case in

25   the second.  *Chapman*, 524 F.3d at 1087.  The Ninth Circuit affirmed.  *Id*.

26       Here, the government has been able to preview the Defense strategy by withholding *Brady*

27   material and requiring the Defense to reveal its strategy before incrementally turning over the material.

28

*Defendant's Reply in Support of*                                    *Case No. 2:18-CR-119-WBS-1*
*to Motion to Dismiss Indictment*

1    The government has done this in brazen violation of the Court's order that required a complete production

2    nine months ago.  The prejudice results from *the fact* that the government unfairly previews a defendant's

3    strategy to gain an unfair tactical advantage.  In *Chapman*, the government took the defendant through a

4    trial to gain the advantage.  Here, the government has ignored a Court order and required the Defense to

5    first reveal its line of cross-examination before incrementally making constitutionally required

6    disclosures.  In both instances, the prejudice is significant.

7        **B.**    **Reckless Government Conduct and Flagrant Misbehavior**

8        The Ninth Circuit holds that a "*reckless* disregard for the prosecution's constitutional [*Brady*]

9    obligations" constitutes "flagrant misbehavior."  *United States v. Chapman*, 524 F.3d 1073, 1085 (9th

10   Cir. 2008) (emphasis added); *United States v. Kojayan*, 8 F.3d 1315, 1325 (9th Cir. 1993); *see also United*

11   *States v. Blanco*, 392 F.3d 382, 395 (9th Cir. 2004).  In such a circumstance, the district court has inherent

12   supervisory power to dismiss the indictment upon a showing of substantial prejudice where no lesser

13   remedial action is available.  *Id*.  The Court is empowered to dismiss the indictment not only to address

14   the prejudice to the defendant but also to prevent the government from engaging in similar conduct in the

15   future.  *Id*.

16       The flagrancy of the government's conduct here is quite evident from the numerous and

17   continuing failure to disclose *Brady* material.  Meanwhile, everyone else connected to the case has

18   continued to suffer prejudice in the form of delays, costs, and unfair tactical advantages for the

19   government.  Judicial integrity has also been undermined in the Court's order being ignored and the Court

20   being misled at multiple junctures.

21       The government says that the prejudice has been resolved by the postponement of the *Franks*

22   hearing.  The postponement has actually further prejudiced both the Court and the Defense, as noted by

23   the Court at the February 2020 hearing.  Moreover, the government has been able to unfairly secure the

24   Defense's cross-examination strategy and will now be able to use it to prepare its witnesses.

25       Most disappointingly, the government has shown no willingness to own up to its errors.  Rather,

26   it has attempted to mislead the Court numerous times while continuing to withhold Brady *material*.  In

27   *Kojayan*, the Ninth Circuit provided clear guidance that when the government's misconduct rises to the

28   

*Defendant's Reply in Support of*                      *Case No. 2:18-CR-119-WBS-1*
*to Motion to Dismiss Indictment*

1  level seen in this case and when it is clear that the government has not owned up to its mistakes, the Court

2  should dismiss the case in order to restore judicial integrity and prevent such conduct in the future.

3  *Kojayan*, 8 F.3d at 1318; *Chapman*, 524 F.3d at 1087

4  **C.    Speedy Trial Violation**

5      Significant delays in a case resulting from the government's negligence violate the Sixth

6  Amendment and empower a district court to dismiss an indictment under its inherent supervisory powers.

7  *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).  Prejudice is presumed where the delay is

8  over one year and a dismissal may be proper even if the defendant had waived speedy trial time. *Id.*

9      The government appears to attribute the delays in this case to a few continuances and pre-trial

10  motions.  One of the continuances concerned a detention hearing and another concerned a motions

11  hearing, both of which were insignificant.  The other two were continuances of status conferences.  The

12  government, however, glosses over the fact that, had the case been tried, Dr. Sheikh would have gone to

13  trial with a plethora of *Brady* material undisclosed.  The government also ignores the fact that it has been

14  almost two years since Dr. Sheikh was indicted and almost nine months since the Court's *Brady*

15  disclosure order, and there is *Brady* material still outstanding.  Instead of owning up to its errors, what

16  the government seems to be arguing is that it is Dr. Sheikh's fault for not going to trial earlier regardless

17  of a proper *Brady* disclosure.

18      The government also tells this Court that Dr. Sheikh filed three pre-trial motions in April 2019—

19  one for grand jury disclosure and two on suppression—which were all filed at the same time and denied.

20  The government blames delay also on these motions.  What the government omits, again, is that these

21  motions were briefed and decided on incomplete information due to the government's failure to disclose

22  *Brady* material.  This prejudices Dr. Sheikh, wedging her between a rock and a hard place.  Dr. Sheikh

23  would like to bring this case to a close.  However, she also has a right to fully raise her pre-trial issues

24  with complete information.  But because the government chose to ignore its *Brady* obligations along with

25  the Court's disclosure order, Dr. Sheikh must now choose between delaying her trial further to re-litigate

26  issues with the more complete information she now has or forgoing important pre-trial challenges to

27  move sooner to trial.  No defendant deserves to be put in this position.  Therefore, for the reasons stated

28

19

1  in Dr. Sheikh's motion, the Court should find a constitutional speedy trial violation and grant Dr. Sheikh's

2  motion on this basis, too.

### D.   Outrageous Government Conduct

4        The dismissal of an indictment because of outrageous government conduct may be predicated on

5  alternative grounds: a violation of due process or the court's supervisory powers.  *United States v.*

6  *Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (citing *United States v. Luttrell*, 889 F.2d 806, 811 (9th Cir.

7  1989)).  This defense applies to conduct "which is so grossly shocking and so outrageous as to violate

8  the universal sense of justice."  *Id*.

9        Here, for the reasons stated in her motion, Dr. Sheikh seeks dismissal both under a violation of

10  due process and under the Court's inherent supervisory powers, and the Court may base its dismissal on

11  one or both grounds.

## VI.   PRAYERS FOR RELIEF

13        The government has acted willfully (or at least recklessly) with respect to its *Brady* obligations.

14  Dismissing this one case—a case that is unsupported to begin with—would ensure that, in the next

15  hundred that come before this Court, the government will comply with its *Brady* obligations, not make

16  misrepresentations to the Court and the Defense, and take this Court's *Brady* disclosure orders more

17  seriously.  Nothing short of dismissal will address the prejudice or accomplish these goals.

18        While Dr. Sheikh maintains that dismissal is the only proper remedy, in the alternative, she

19  requests that the Court sanction the government by suppressing all statements and evidence gathered on

20  July 1, 2013 (the welfare check) and July 9, 2013 (the search warrant execution), as well as all fruits of

21  the poisonous tree.  The statements and evidence from July 1, 2013, should be suppressed because Dr.

22  Sheikh lost her opportunity to fully cross-examine Agent Webster as a result of the government's

23  suppression of *Brady* materials.  The statements and evidence from July 9, 2013, should be suppressed

24  because Dr. Sheikh should not be put through the expense and burden of re-briefing the *Franks* issues

25  because the government chose to not take the Court's disclosure order as seriously as it should have

26  unreasonably causing the proceedings to be delayed.  Moreover, the government's practice of requiring

27  the Dr. Sheikh to reveal her defense strategy before making late, incremental *Brady* disclosures has

28

substantially compromised Dr. Sheikh's ability to conduct an effective cross-examination and given the government and unfair tactical advantage.  The prejudice resulting from the government's failure is so significant that only fair resolution is to suppress all statements and evidence gathered at the July 9, 2019, search, which would have been the subject of the *Franks* motion.

Moreover, there are *Brady* items that remain outstanding despite the Court's orders and admonitions for a complete disclosure nine months ago.  Therefore, if the case is not dismissed, the government should be ordered to immediately disclose the following materials:

All immigration certifications (such as I-914B certifications) submitted by the government for all alleged witnesses/victims who have received immigration benefits as a result of this case;

Information concerning all benefits provided to and expected by the alleged victims/witnesses, including, but not limited to, the full scope of immigration benefits the victims/witnesses are expecting from assisting the government in this case;

The dates and details of information known to government agents concerning food places and cheap eateries within approximately 3 miles of Dr. Sheikh's ranch on or before the warrant affidavit was sworn and executed; and

The nature of the relationship and exchange of benefits between HSI and Opening Doors from July 2013 (when the investigation began with Opening Doors' assistance) to June 2018 (when the case was indicted).

However, due to the significant prejudice already suffered and because the government is still not in compliance with the Court's *Brady* disclosure order, the only just remedy is dismissal.

/  /  /

/  /  /

/  /  /

*Defendant's Reply in Support of*                                                    *Case No. 2:18-CR-119-WBS-1*
*to Motion to Dismiss Indictment*

## VII.   CONCLUSION

For the foregoing reasons, Dr. Sheikh respectfully requests dismissal with prejudice.


Dated: April 13, 2020                          Respectfully submitted,

                                               ALMADANI LAW


                                               */s/ Yasin M. Almadani*
                                               Yasin M. Almadani, Esq.
                                               *Attorney for Defendant*

*Defendant's Reply in Support of*
*to Motion to Dismiss Indictment*                          *Case No. 2:18-CR-119-WBS-1*