UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiffs,

   v.

FIRDOS SHEIKH,

        Defendant.

No. 2:18-cr-00119-WBS

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS INDICTMENT

----oo0oo----

On June 21, 2018, defendant was indicted and charged with two counts of forced labor under 18 U.S.C. § 1590(a), two counts of harboring for financial gain under 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i), one count of obstruction of a forced labor investigation under 18 U.S.C. § 1590(b), and one count of false statements under 18 U.S.C. § 1001.  (Docket No.1) The charges arise out of allegations that defendant harbored two

1

1  aliens ("Alfredo" and "Prakash")[1] and forced them to work on her

2  property between 2008 and 2013.  Defendant now moves to dismiss

3  the indictment.  (Docket No. 95.)

4          The parties in this case have been before the court

5  several times, including a multi-day evidentiary hearing on a

6  motion to suppress, at which the court heard the testimony of

7  several witnesses.  During that hearing, the court raised the

8  issue of whether there was probable cause under Franks v.

9  Delaware, 438 U.S. 154 (1978), for the warrant obtained to search

10 defendant's property on July 9, 2013.  The court set a Franks

11 hearing and received briefing from both parties on that issue.

12 Since the hearing on the motion to suppress, including in her

13 briefing on the Franks motion, defendant has repeatedly claimed

14 that the government has either not produced certain exculpatory

15 or impeaching information, or has produced it late, in violation

16 of Brady v. Maryland, 373 U.S. 83 (1963), notwithstanding the

17 court's repeated admonitions to the government to provide all

18 Brady material to the defendant.  Defendant now moves to dismiss

19 the indictment based on these alleged Brady violations and also

20 based on the delay caused by such violations. The court held a

21 hearing on the motion on May 26, 2020.

22 I.   Brady Standard

23

24      [1]   The defendant employed another individual, "Gildardo,"
    during at least some of the same time as Alfredo and Prakash.
25  While the government has not asserted any charges against
    defendant based on any conduct in connection with Gildardo,
26  Gildardo made several statements to government investigators
27  which are relevant to this motion and the allegations against
    defendant.

28

1    "To establish a <u>Brady</u> violation, a defendant must show

2    that: (1) the evidence at issue is favorable to the accused,

3    either because it is exculpatory or because it is impeaching; (2)

4    the evidence was suppressed by the government, regardless of

5    whether the suppression was willful or inadvertent; and (3) the

6    evidence is material to the guilt or innocence of the defendant."

7    <u>United States v. Sedaghaty</u>, 728 F.3d 885, 899 (9th Cir. 2013)

8    (citing <u>Brady</u>, 373 U.S. at 87).  <u>Brady</u> imposes an obligation on

9    the government to provide favorable material evidence not only

10   before trial, but also before pre-trial <u>Franks</u> and suppression

11   hearings.  <u>See, e.g.</u>, <u>United States v. Barton</u>, 995 F.2d 931, 934-

12   35 (9th Cir. 1993) (<u>Brady</u> applies to <u>Franks</u> hearings); <u>United</u>

13   <u>States v. Gamez-Orduno</u>, 235 F.3d 453, 461 (9th Cir. 2000) (<u>Brady</u>

14   applies to the suppression of "material evidence helpful to the

15   accused, whether at trial or on a motion to suppress").

16   Evidence is material "if there is a reasonable

17   probability that, had the evidence been disclosed to the defense,

18   the result of the proceeding would have been different."  <u>United</u>

19   <u>States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>see also</u> <u>Gamez-</u>

20   <u>Orduno</u>, 235 F.3d at 461.  <u>Brady</u> "encompasses evidence known only

21   to police investigators and not to the prosecutor," and therefore

22   "the individual prosecutor has a duty to learn of any favorable

23   evidence known to the others acting on the government's behalf in

24   [the] case, including the police."  <u>Strickler v. Greene</u>, 527 U.S.

25   263, 280-81 (1999) (citation and internal punctuation omitted).[2]

26   ───────────────

27        [2]    The Supreme Court has explained that "the term '<u>Brady</u>
     violation' is sometimes used to refer to any breach of the broad
28   obligation to disclose exculpatory or impeaching evidence,"

3

1    A.   Brady Material

2        Here, the key inquiry is whether the evidence allegedly

3    withheld by the government would be helpful to defendant at the

4    Franks hearing.[3]  Thus, the question is whether the withheld

5    evidence would help defendant show that (1) the government

6    intentionally or recklessly made false or misleading statements

7    or omissions in its warrant application or (2) these false or

8    misleading statements or omissions were necessary to finding

9    probable cause.  See United States v. Perkins, 850 F.3d 1109,

10   1116 (9th Cir. 2017) (citations omitted).  If defendant proves

11   both factors, the search warrant must be voided and the fruits of

12   the July 9, 2013 search must be excluded.  Id.

13       Probable cause exists where there is a fair probability

14   that a search will result in evidence of a crime being

15   discovered.  Illinois v. Gates, 462 U.S. 213, 238 (1983).

16   Because the Franks inquiry looks to what the affiant knew at the

17   time of the warrant application, any information regarding what

18   the agent knew at that time, specifically information that would

19   call into doubt the representations regarding forced labor[4] in

20   though "strictly speaking, there is never a real 'Brady

21   violation' unless the nondisclosure was so serious that there is
     a reasonable probability that the suppressed evidence would have

22   produced a different verdict" or outcome in the proceedings.  See
     Strickler, 527 U.S. at 281.

23

24       [3]  Although the court discusses this evidence in the
     context of defendant's Franks motion, it may also be useful for

25   the defendant at trial or in support of her other pretrial
     motions.

26
         [4]  The forced labor statute, 18 U.S.C. § 1589, punishes,
27   among other things, knowingly obtaining the labor of a person "by
     means of force, threats of force, physical restraint, or threats

28

the affidavit, is potentially <u>Brady</u> material.[5]

Here, the government's affidavit in support of the warrant application portrays a starkly different picture than that shown at the hearing on the motion to suppress and as portrayed by the evidence withheld by the government.  (<u>See</u> Docket No. 43-1.)  In the affidavit, the government agent represents that, among other things, (1) defendant held individuals in a condition of forced labor and involuntary servitude by, among other things, means of force, threats of force, physical restraint, threats of physical restraint, means of serious harm, and threats of serious harm (<u>id.</u> ¶ 3); (2) people who engage in forced labor frequently control their workers' freedom by installing chains and locks on doors and gates so the workers are not able to leave freely, and defendant's property was "fenced and had a large gate and two pedestrian gates that were locked with chains and padlocks" (<u>id.</u> ¶¶ 7, 11); (3) the victims were afraid to leave (<u>id.</u> ¶ 10); (4)

---

of physical restraint to that person"; "by means of serious harm or threats of serious harm to that person"; or "by means of the abuse or threatened abuse of law or legal process."  The warrant application also references 18 U.S.C. § 1584, which punishes anyone who "knowingly and willfully holds [any person] to involuntary servitude or sells into any condition of involuntary servitude," although the indictment contains no charge under § 1584.

[5]    The warrant application only sought a warrant based on allegations of forced labor and involuntary servitude in violation of 18 U.S.C. § 1584 and 1589.  As a result, on the <u>Franks</u> motion, it appears that the government may not claim that probable cause existed for the harboring, obstruction, or false statement crimes that were also charged in the indictment but were not mentioned in the warrant application.

1    the victims were malnourished and hungry (id. ¶¶ 14-16); (5) the

2    victims had to work 10-12 hours a day, seven days a week, even

3    when sick or when it was very hot (id. ¶ 15); (6) defendant

4    called one victim a foreign word for slave (id. ¶ 15); (7) if

5    employees wanted to leave the property, they had to ask her for

6    the key to unlock the gate, which was closed and locked (id. ¶¶

7    16-17); (8) the same victim "considered leaving but didn't have

8    the means of contacting anyone outside the property and he

9    wouldn't know who to call even if had [sic] the ability to do so"

10   (id. ¶ 16); (9) at least one witness "didn't feel he could leave

11   at will" because of the locked gate and the fact that the

12   defendant took away the key (id.); and (10) defendant "threatened

13   to cut off" one of the victim's hands "because he was stealing so

14   much" (id.).[6]

15        Overall, allegations of physical force, restraint, and

16   harm and threats of physical force, restraint, and harm play a

17   key role, if not the main role, in the warrant application.

18   These allegations are refuted in substantial part by the

19   following evidence that should have been disclosed to the

20   defendant before the scheduled Franks hearing:

21   _____

22        [6]   The court recognizes that other allegations in the
     warrant affidavit discuss potential immigration and financial
23   harm, which could potentially support violation of the forced
     labor statute, 18 U.S.C. § 1589, even if physical force, physical
24   restraint, or physical harm, or threats of physical force,
     physical restraint, or physical harm were not used.  See United
25   States v. Dann, 652 F.3d 1160, 1171-72 (9th Cir. 2011).  The
     court expresses no opinion as to whether there was in fact
26   probable cause under Franks without the warrant application's
     allegations of physical force, restraint, or harm, or threats of
27   physical force, restrain, or harm.

28

6

1          (1)  On July 2, 2013, Alfredo informed agents that he

2    told defendant he was going to leave a week prior to actually

3    leaving and she said it was "ok".  (Mot. Ex. DDD at 11528 (Docket

4    No. 95-17).)  This statement tends to negate the government's

5    claim that the victims were being held at defendant's property

6    against their will.  The government concedes that this is <u>Brady</u>

7    material that should have been disclosed earlier.

8          (2)  On June 26, 2013, another worker at defendant's

9    home, Gildardo, told agents that defendant was not present at the

10   ranch six days a week from 9 a.m. to 3 a.m.  (Mot. Ex. EEE at

11   11545 (Docket No. 95-18).)  This statement undercuts the

12   representation that the victims could not leave -- if the

13   defendant was at the property only six hours a day, there would

14   be ample opportunity to escape.  Such statement is material

15   notwithstanding other evidence previously disclosed that the

16   defendant would come home late, after midnight or between 11:00

17   p.m. and 1:00 a.m., as this time frame provides an even greater

18   opportunity for the victims to escape.

19         (3)  On June 26, 2013, Gildardo informed agents that

20   Alfredo and Prakash would work from 7:30 a.m. to 3:30 p.m.  (Mot.

21   Ex. EEE at 11540 (Docket No. 95-18).)  This statement undercuts

22   the government's claims that defendant forced the victims to work

23   10, 12, or even 14 hours a day.

24         (4)  The fact that notwithstanding its locked gate, the

25   ranch was easy to physically escape given the low height and

26   modest structure of the fence, which counters the warrant

27   application's portrayal of the property as a locked-down compound

28   from which escape was difficult;

1          (5)  The fact that there was a strip mall with

2    inexpensive restaurants and a convenience store within a mile of

3    the property and other places within three miles, which undercuts

4    the warrant application's insinuation that the victims had no

5    place to go and were being starved.[7]

6          (6)  On July 1, 2013, Prakash informed agents that he

7    had a friend living nearby in the Fruitridge area of Sacramento,

8    (Mot. Ex. FFF at 11549 (Docket No. 95-19), and that Alfredo had a

9    friend with a local phone number (Mot. Ex. PPP (Docket No. 95-

10   29)).  These disclosures both undermine the warrant application's

11   claims that the victims had no one to contact and no place to go.

12        All of this information was known to government agents,

13   or they should have known it, at the time of the warrant

14   application.  All of this information, or the agents' knowledge

15   of this information, was not properly disclosed to defendant

16   prior to the scheduled <u>Franks</u> hearing.  And all of this evidence

17   would be helpful to the defendant at the <u>Franks</u> hearing because

18   it tends to show that the government agent intentionally or

19   recklessly made false or misleading statements or omissions in

20   its warrant application.[8]  <u>See</u> <u>Perkins</u>, 850 F.3d at 1116.

21        [7]     The court notes that there is no dispute that the
22   victims were paid hundreds of dollars for their work, so there
     can be no inference that they would be unable to buy food at that
23   store or those restaurants. (<u>See</u> Docket No. 43-1 at ¶¶ 15-16.)

24        [8]     The fact that the defendant already knew some of this
     information, such as the fact that the victims could easily climb
25   over the fence or that there were cheap eateries within a mile of
     defendant's property, does not completely negate its materiality
26   under <u>Brady</u> because on a <u>Franks</u> motion, the issue is what the
27   government knew or should have known at the time of the warrant
     application.  <u>See</u> <u>Perkins</u>, 850 F.3d at 1116.
28

1   Accordingly, this evidence is material under Brady.  Simply put,
2   the government should have disclosed this information to the
3   defendant, and the court strongly rejects the government's
4   arguments to the contrary.

5        B.   Prejudice/Remedy

6        The court now turns to the prejudice to the defendant
7   from the late disclosures and the appropriate remedy.  The court
8   may dismiss an indictment based on Brady violations where
9   prejudice to the defendants results and the prosecutor's conduct
10  was flagrant.  United States v. Struckman, 611 F.3d 560, 574-77
11  (9th Cir. 2010); United States v. Chapman, 524 F.3d 1073, 1085
12  (9th Cir. 2008); see also United States v. Kojayan, 8 F.3d 1315
13  (9th Cir. 1993).  However, dismissal is a drastic remedy that
14  should not be used if lesser remedies sufficiently cure any
15  prejudice to the defendant.  See, e.g., Struckman, 611 F.3d at
16  577; United States v. Garrison, 888 F.3d 1057, 1965 (9th Cir.
17  2018) ("Because dismissing an indictment is a drastic step, it is
18  disfavored.") (citing Struckman, 611 F.3d at 577) (internal
19  punctuation omitted).  The appropriate remedy for a Brady
20  violation "will usually be a new trial."  Chapman, 524 F.3d at
21  1086.  "[A]ccidental or merely negligent government conduct is
22  insufficient to establish flagrant misbehavior.  Id. at 1085.

23       The Ninth Circuit has explained that Brady "does not
24  necessarily require that the prosecution turn over exculpatory
25  material before trial," so long as disclosure is "made at a time
26  when disclosure would be of value to the accused."  United States
27  v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988).  In Gordon, the
28  government disclosed certain documents to the defendants during

1    trial at the close of the government's case in chief after having

2    represented before trial that all <u>Brady</u> material had been

3    produced.  The trial court gave the defendants the option of

4    recalling certain witnesses to reexamine them about those

5    documents, though the defendants instead simply introduced the

6    previously withheld documents as defense exhibits.  The Ninth

7    Circuit explained that because the defendants "had substantial

8    opportunity to use the documents and to cure any prejudice caused

9    by the delayed disclosure," "even assuming the documents were

10   exculpatory and material, there was no due process violation

11   under <u>Brady</u>."  <u>Id.</u>; <u>see also</u> <u>United States v. Aichele</u>, 941 F.2d

12   761, 764 (9th Cir. 1991) (government disclosure regarding certain

13   witness made during 3-week break in trial gave the defendant

14   "ample opportunity to prepare" his in-court examination of that

15   witness).

16       The Ninth Circuit further explored whether disclosure

17   was at a time when it would be of value to the accused in <u>United</u>

18   <u>States v. Gamez-Orduno</u>, 235 F.3d at 461-62.  In <u>Gamez-Orduno</u>, the

19   government failed to disclose a certain report that tended to

20   disprove the government's theory on a motion to suppress.  The

21   trial court held, and the Ninth Circuit agreed, that by

22   withholding the report, while making factual representations

23   inconsistent with it, the government violated the defendants' due

24   process rights.  However, the Ninth Circuit agreed that the trial

25   court's two-month continuance, as a result of this belated

26   disclosure, gave the defendants "ample time to prepare anew for

27   the suppression hearing" such that "the government's actions

28   could not have affected the outcome of the hearing, and

1   appellants' due process rights were adequately protected."  Id.
2   (citations omitted).

3          Chapman and Kojayan, which defendant has relied on
4   extensively in his briefing and on oral argument, are
5   distinguishable from this case.  Notably, both cases involved
6   disclosures made during or after trial, when the prejudice to the
7   parties (and the court) caused by delay or retrial is greater.
8   Indeed, defendant cites only one case where a Brady violation
9   before trial led to dismissal -- an unpublished decision, not
10  available on Westlaw or Lexis, from the D.C. Superior Court.
11  (See Mot. 28 (citing United States v. Green, Crim. No. 2004 FEL
12  6457, Memorandum and Order (Nov. 14, 2008).)  Here, the court has
13  not set a trial date and the court's recollection is that
14  defendant has never requested one.

15         The facts of Chapman and Kojayan are also more
16  egregious than those here.  In Chapman, defendants repeatedly
17  objected during trial that the government had failed to disclose
18  information about multiple witnesses' convictions.  Three weeks
19  into trial, after asserting it had produced all such information,
20  the government admitted that it had no record of disclosing it
21  and then produced 650 pages of documents consisting of rap
22  sheets, plea agreements, cooperation agreements, and other
23  information related to several government witnesses, including
24  several who had already testified and had been released.  524
25  F.3d at 1078-79.  The Ninth Circuit affirmed the dismissal of the
26  indictment.  In doing so, the court noted that the prosecutor
27  repeatedly represented to the court that he had fully complied
28  with Brady and "when he knew full well that he could not verify

11

these claims" due to the failure to keep a log indicating what materials were disclosed, and it was "[o]nly when the court insisted on proof of disclosure did the AUSA acknowledge that no record of compliance even existed."[9]  Id. at 1085.

Kojayan also involved the prosecutor's knowing or reckless false statements at trial.  In Kojayan, 8 F.3d 1315, a federal prosecutor falsely told a jury in rebuttal that he could not have called a co-conspirator as a witness because that witness would invoke his Fifth Amendment right to remain silent, when (1) the government had entered into a cooperation agreement with the witness that obligated him to testify and (2) prior to trial, the government had refused to disclose to the defense its agreements with that witness.  Id. at 1317-18.  The court noted the prosecutor's failure to correct the misstatement despite multiple opportunities to do so, and his explicit impugning of defense counsel, as well as the fact that the government failed to acknowledge there was in fact a cooperation agreement until oral argument on appeal.  Id. at 1318-23.  As a result, the court reversed the defendant's convictions.[10]

--------

[9]  Notably, defense counsel has focused on the prejudice to him of having to reveal his cross-examination strategy, the increased legal expenses incurred by the defendant due to continued proceedings and additional motions practice, and delay. These are not factors typically discussed by courts in the context of Brady motions, and inherently arise any time proceedings are continued or a case is retried, which are the normal remedies for Brady violations.

[10]  Notwithstanding the prosecution's misbehavior, the Kojayan court did not remand with instructions to dismiss the indictment, but left it to the district court to determine whether to retry the defendants or to dismiss.  Id. at 1325.

1          Here, the material that was withheld was disclosed well

2    in advance of trial, the government attorneys do not appear to

3    have intentionally or recklessly made any false or misleading

4    statements to the court, and the material that was disclosed was

5    not as obviously Brady material as a witness's criminal record or

6    cooperation agreement.  Further, the court has postponed the

7    Franks hearing and has expressed its willingness to reopen

8    proceedings on the pretrial motions it has already decided,

9    addressing much of the prejudice caused by the late disclosure.

10          Under these circumstances, the government's belated

11    disclosures were made at a time when the materials are still of

12    value to the accused, see Gordon, 844 F.2d at 1403, and the

13    drastic remedy of dismissal of the indictment is inappropriate.[11]

14    Accordingly, the court will deny the motion to dismiss based on

15    Brady.

16    III. Sixth Amendment Speedy Trial Right

17          The court will also deny defendant's motion to dismiss

18    the indictment under her Sixth Amendment right to a speedy trial.

19    In determining whether a defendant's constitutional speedy trial

20    rights have been violated, the court looks at (1) the length of

21    the delay; (2) the reason for the delay; (3) the defendant's

22    assertion of the right to a speedy trial, and (4) the prejudice

23    to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972);

24

25         [11]   Similarly, the court declines defendant's alternative
remedy of suppressing all statements and evidence gathered on

26    July 1, 2013 (resulting from the welfare check) and July 9, 2013
(resulting from the search of defendant's property), given the

27    lesser remedies provided by the court.

28

1  United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008).

2  These factors are related and must be considered together, as

3  none of them are either necessary or sufficient individually to

4  prove a violation of the Sixth Amendment's speedy trial right.

5  Mendoza, 530 F.3d at 762 (citing Barker, 407 U.S. at 533).[12]

6       Here, while almost two years have passed since

7  defendant was indicted, defendant is responsible for much of the

8  delay based on her four requests to continue, two substitutions

9  of counsel, and filing of several pre-trial motions.  At the same

10  time, the government caused some of the delay through its late

11  disclosure of Brady material, which required the postponement of

12  the Franks hearing and at least in part led to the delay caused

13  by the motion to dismiss.  However, the record "does not disclose

14  any 'deliberate attempt to delay the trial in order to hamper the

15  defense'."  See United States v Drake, 543 F.3d 1080, 1085-86

16  (9th Cir. 2008) (quoting Barker, 407 U.S. at 531).

17       Looking at the other Barker factors, defendant did not

18  assert her speedy trial right until the instant motion.  See

19  Mendoza, 530 F.3d at 764 (defendant's failure to assert right to

20  speedy trial until after making numerous requests for

21  continuances, delaying trial by over a year, was factor weighing

22  against finding a speedy trial violation).  Defendant also has

23  not shown prejudice beyond that experienced by most criminal

24  _____

25       [12]  Notably, defendant does not claim a violation of the
    Speedy Trial Act, 18 U.S.C. §§ 3161-3174.  The Ninth Circuit has

26  explained that "it will be an unusual case in which the time
    limits of the Speedy Trial Act have been met but the sixth

27  amendment right to speedy trial has been violated."  United
    States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982).

28

1  defendants being prosecuted.  <u>Id.</u> at 764-65 (if government shows

2  reasonable diligence in bringing a defendant to trial, defendant

3  must show specific prejudice to his defense caused by delay);

4  <u>Drake</u>, 543 F.3d at 1086 (noting that while the defendant had

5  suffered anxiety and concern, there was no showing that the delay

6  impaired his defense, as "[n]o witnesses died or disappeared;

7  nothing in the record demonstrates that evidence shown to be

8  helpful to the defense was lost").  Under these circumstances,

9  the delay caused by the government's belated disclosure of <u>Brady</u>

10  material did not violate defendant's Sixth Amendment right to a

11  speedy trial.

12          IT IS THEREFORE ORDERED that defendant's motion to

13  dismiss the indictment (Docket No. 95) be, and the same hereby

14  is, DENIED.

15          Counsel shall work with the Clerk to set up a schedule

16  for briefing and the hearing of defendant's <u>Franks</u> motion.

17  Dated:  June 3, 2020

    WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28