Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
14742 Beach Blvd., Suite 410
La Mirada, California 90638
(213) 335-3935 | YMA@LawAlm.com

*Attorney for Defendant*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FIRDOS SHEIKH,<br><br>Defendant. | Case No. 2:18-CR-119-WBS-1<br><br>**DEFENDANT'S MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATION**<br><br>Hearing Date:  October 1, 2020<br>Hearing Time:  10:00 a.m.<br><br>Trial Date: TBD<br><br>Judge: Hon. William B. Shubb<br>Courtroom:   Five (14th Floor) |

At the hearing on September 15, 2020, the Court ordered the Parties to file cross motions requiring briefing on: (i) a precise calculation of speedy trial time that has elapsed; (ii) the challenges in bringing Dr. Sheikh to trial within the remaining speedy trial time; and (iii) how the individual factors in this case bear upon Dr. Sheikh's constitutional and statutory speedy trial rights, including a balancing of the ends-of-justice finding the government requests and resulting prejudice to Dr. Sheikh and the public in granting the government continuance. Defendant therefore files this motion to dismiss for speedy trial violation, which is based upon the attached memorandum of points and authorities, the files and records in this case, and further evidence and argument the Court may permit.

Dated: September 17, 2020

Respectfully submitted,

ALMADANI LAW


    */s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.
*Attorney for Defendant*

## TABLE OF CONTENTS

I.     Introduction .................................................................................................. 1

II.    The Speedy Trial Clock Has Already Expired ..................................... 1

   A.   The Indisputable Periods of Non-Excludable Time (74 to 77 Days in Total) Require Dismissal ...... 1

   B.   Additional Period of Non-Excludable Time ........................................ 5

III.   The Government's Negligence in Meeting Its Brady Obligations Also Violated Dr. Sheikh's Constitutional Speedy Trial Rights .................................................. 7

IV.    The Ends of Justice Are Not Served by Granting a Continuance ........................... 9

   A.   The Ends-of-Justice Continuance Was Intended to Be Rare and Requires Specific Findings ......... 9

   B.   The General Orders Are Insufficient for an Ends-of-Justice Continuance .................... 10

   C.   Dr. Sheikh's Case Is Beyond the Statutory Reach of the Ninth Circuit's Judicial Emergency Declaration .................................................................................. 10

   D.   The Continuance Should Not Be Granted Because a Dismissal in This Case Would Not Result in a Miscarriage of Justice ................................................................ 11

   E.   Dr. Sheikh Will Continue to Suffer Extreme Prejudice If This Case Is Continued ........ 14

V.     The Indictment Should Be Dismissed with Prejudice .................................... 15

VI.    Conclusion ................................................................................................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**CASES**

*In re Approval of the Judicial Emergency in the Eastern District of California,*

    956 F.3d 1175 (2020) ................................................................. 10

*United States v. Engstrom,*

    7 F.3d 1423 (9th Cir. 1993) ...................................................... 10

*United States v. Hardeman,*

    249 F.3d 826 (9th Cir. 2000) ............................................... 3,5,15

*United States v. Lloyd,*

    125 F.3d 1263 (9th Cir. 1997) ............................................ 6,7,15

*United States v. Medina,*

    524 F.3d 974 (9th Cir. 2008) ....................................................... 6

*United States v. Mendoza,*

    530 F.3d 758 (9th Cir. 2008) .................................................. 7,8,9

*United States v. Olsen,*

    No. 8:17-cr-00076, Doc. 67 (C.D. Cal. September 2, 2020) .......................................... 10,11

*United States v. Perez-Reveles,*

    715 F.2d 1348 (9th Cir. 1983) ................................................ 1,10

*United States v. Pollock,*

    726 F.2d 1456 (9th Cir. 1984) .................................................. 10

*United States v. Ramirez-Cortez,*

    213 F.3d 1149 (9th Cir. 2000) ................................................ 1,10

**STATUTES**

18 U.S.C. § 3161 ................................................................... *passim*

18 U.S.C. § 3162 ...................................................................... 15

18 U.S.C. § 3174 ................................................................... 10,11

*Defendant's Motion to Dismiss for Speedy Trial Violation*    *Case No. 2:18-CR-119-WBS-1*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Defendant Firdos Sheikh's ("Defendant" or "Dr. Sheikh") case presents multiple reasons for a speedy trial dismissal. *First*, the case must be dismissed under the Speedy Trial Act ("STA") (18 U.S.C. § 3161) because the speedy trial clock has already expired. The government allowed 77 to 125 days of speedy trial time to elapse. *Second*, the case must be dismissed also on constitutional grounds. The government's negligence in complying with its constitutional *Brady* obligations delayed the case into the pandemic in the first place, thereby depriving Dr. Sheikh of her Sixth Amendment right to a speedy trial. *Third*, the ends-of-justice continuance the government seeks—a moot point given the statutory and constitutional violations requiring dismissal—must be denied because granting the continuance would not serve the ends of justice but would result in a miscarriage of justice to both Dr. Sheikh and the public.

## II.   THE SPEEDY TRIAL CLOCK HAS ALREADY EXPIRED

Upon the Court's order, the Defense has re-reviewed the record thoroughly and found that there have been several periods of non-excludable STA time that were previously not addressed. The Defense corrects the record here.

### A.   The Indisputable Periods of Non-Excludable Time (74 to 77 Days in Total) Require Dismissal

The Ninth Circuit holds that an STA "'ends of justice' exclusion must be (1) specifically limited in time and (2) justified [on the record] with reference to the facts *as of the time the delay is ordered*." *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1154 (9th Cir. 2000) (internal citations and quotation marks omitted) (emphasis in original). Moreover, "monitoring of the limitations period is not the exclusive burden of the district judge. <u>The Government shares the responsibility for speedy trial enforcement.</u>" *United States v. Perez-Reveles*, 715 F.2d 1348, 1353 (9th Cir. 1983) (emphasis added). The government did not fulfill that responsibility in this case.

On April 19, 2019, the Court entered an ends of justice exclusion limited in time (from May 20, 2019, to June 24, 2019) and with reference to the facts as of the time the delay was ordered, as *Ramirez-*

*Cortez* requires. (DE 33.)[1] At this time, three motions were pending: (i) motion for disclosure of grand jury proceedings (DE 28), (ii) motion to suppress evidence seized in July 2013 from both the warrantless and warrant-based searches (as fruit of the poisonous tree) (DE 29), and (iii) motion to suppress statements (DE 30). On June 24, 2019, the Court held a hearing on these motions, denying the first, ordering supplemental briefing on the latter two, and setting a hearing on July 29, 2019. (DE 53.) On July 29, 2019, the Court ordered additional briefing and reset the hearing date to September 30, 2019. The speedy trial clock remained stopped from June 24, 2019, to September 30, 2019, under section 3161(h)(1)(D) because motions were pending.[2] The hearing went forward on September 30, 2019, but had to be continued mid-hearing because the Parties were still taking testimony at the end of the day. The Court and the Defense were available to come back on October 7, 2019, but the government took a 49-day continuance because one of the two government counsel were not available. The Defense submits that, under Ninth Circuit precedent, this long continuance based exclusively on the unavailability of one government lawyer (whose presence turned out to be unnecessary) violated Dr. Sheikh's speedy trial rights. This issue is briefed at the end of this section because other non-excludable periods caused the clock to expire regardless of this issue.

On December 18, 2019, the Court denied the motions to suppress evidence and statements. However, the agent's testimony led defense counsel to notice that there may be a *Franks* issue with the warrant (which had not been briefed) and counsel highlighted that issue for the Court. The government objected that the issue had not been briefed and was not properly before the Court. (R/T 12/18/2019 at 371.) The Court thus set a motions schedule on the *Franks* issue with Dr. Sheikh's motion to be filed on January 13, 2020. There was no motion pending at this time and the government did not ask for an STA ends of justice time exclusion. Therefore, between the dates of December 18, 2019 (when the Court ruled upon the first set of motions to suppress statements and evidence), and January 13, 2020 (when Dr. Sheikh

---

[1] "DE" denotes "docket entry" followed by a docket control number.

[2] While Dr. Sheikh filed an *ex parte* application to continue time through September 30, 2019, based upon pending motions and an ends-of-justice finding (DE 59), the proposed order was not entered. Rather, the Court reset the hearing by minute order. This has no effect on the calculation, however, because the Defense agrees that time should be excluded until September 30, 2019. But there was no ends of justice agreement or finding after that date for the relevant period when the speedy trial clock ran and expired.

*Defendant's Motion to Dismiss for Speedy Trial Violation*        *Case No. 2:18-CR-119-WBS-1*

1  filed her *Franks* motion), **twenty-six (26) days** of speedy trial time elapsed.

2         On February 25, 2020, when the *Franks* hearing was scheduled, the Court learned that there had

3  been a number of undisclosed *Brady* items bearing upon the *Franks* issue. The *Franks* motion was thus

4  taken off calendar and the Court stated, "I hate to do this again, but I'll let you file new briefs on the

5  *Franks* issue, and I'll ask that you put it all together in one place . . . We'll start from scratch on the

6  *Franks* motion." (R/T 2/25/2020 at 26.)[3] The Court ordered the Parties to file supplemental briefing on

7  the Defense's discovery requests to deal with that issue first; the *Brady* violations would be addressed

8  second; the *Franks* briefing schedule and hearing would be reset after that. The government confirmed:

9         MR. NOLAN: And then at that time, is it at that time we'll then set out a schedule for *Franks*?

10        THE COURT: Right. We're going to break it down the way I said.

11 (R/T 2/25/2020 at 34). The government did not request an STA ends of justice time exclusion and no

12 such exclusion with appropriate findings was entered.

13        While the *Franks* motion was no longer pending, Dr. Sheikh had renewed her motion for *Brady*

14 material. At this point the government was already 20 months late in its self-executing *Brady* obligation

15 with respect to a number of significant *Brady* items relating to both *Franks* and trial. The government

16 filed its response to the renewed discovery requests on March 2, 2020, agreeing to the discovery demands

17 (*see* DE 90), leaving no issue for the Court to decide, and the Court confirmed this on March 16, 2020,

18 ordering that the government's response had rendered the discovery motion <u>moot</u>. (DE 94.) Under

19 prevailing Ninth Circuit precedent, the speedy trial clock runs during the pendency of a discovery motion

20 when there is nothing left for the district court to decide. *United States v. Hardeman*, 249 F.3d 826, 828

21 (9th Cir. 2000) (holding that even during the pendency of a discovery motion, the speedy trial clock runs

22 when there is nothing left for the district court to decide). Therefore, the speedy trial clock ticked for at

23 least another **eight (8) days** between March 2, 2020 and March 10, 2020, because the government's

24 response to the discovery motion left no discovery dispute for the Court to decide.

25        It is questionable whether the clock restarted on March 10, 2020, when the Defense requested a

26 *Brady*-based dismissal as part of its reply brief, but the request was not entertained by the Court, as there

27

28
_____

[3] "R/T" denotes "record transcript" followed by the date of hearing and a page number.

*Defendant's Motion to Dismiss for Speedy Trial Violation*          *Case No. 2:18-CR-119-WBS-1*

was no properly noticed motion. Rather, on March 16, 2020, the Court ordered a fresh briefing schedule for the Parties to file new briefs on the *Brady* issue (DE 94). Regardless of whether the clock ticked between March 10 and 16, 2020, it certainly started ticking again on March 16, 2020, when the Court ordered a fresh briefing schedule on the *Brady* issues. There was no motion pending between the dates of March 16, 2020, and March 24, 2020, and <u>counsel for the government did not request a time exclusion between those dates</u>; the clock thus continued to tick for at least an additional **eight (8) days**, and was stopped only by the filing of Dr. Sheikh's motion to dismiss under *Brady*, on March 24, 2020. (*See* DE 95.) The Court ruled on that particular motion (DE 95) on June 3, 2020. (DE 104). <u>The government did not request a time exclusion and so the STA clock resumed ticking on June 3, 2020</u>. At this point, at least **forty-two (42) days** of speedy trial time (26 + 8 + 8) had already elapsed. That left 28 days on the clock. But with no motion or ends of justice exclusion on the record, the clock continued to tick until July 8, 2020, when Dr. Sheikh filed her *Franks* motion (DE 110), which means that **thirty-five (35) additional days** elapsed during this time, making it **a total of 77 days** that had elapsed.

Two points must be addressed here. First, on June 22, 2020, the Court entered an order setting a new briefing schedule and hearing date for the *Franks* motion. In that order, the Court stated, "Speedy trial time shall be excluded from the date of this Order to August 11, 2020, pursuant to 18 U.S.C. § 3161(h)(1)(D)." However, section 3161(h)(1)(D) did not permit that entire period of exclusion; it permits exclusion of time only for "delay resulting from any pretrial motion, <u>from the filing of the motion</u> through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id*. (emphasis added). The government did not request, and the parties never agreed to a time exclusion under any other STA provision. Therefore, pursuant to section 3161(h)(1)(D), the Court's order stopped the clock July 8, 2020, when Dr. Sheikh's motion was filed, but not before that.

Second, the government may argue that the time period between June 19 and June 22, 2020 (3 days) was tolled because on June 19, 2020, Dr. Sheikh filed an application to reset the *Franks* briefing schedule and hearing date, which the Court granted on June 22, 2020. While that argument would not save the government from the speedy trial violation, it must be rejected. That is because, on June 3, 2020, the Court had ordered the Parties to work with the Clerk to set up a briefing and hearing schedule on the

*Defendant's Motion to Dismiss for Speedy Trial Violation*          *Case No. 2:18-CR-119-WBS-1*

*Franks* motion. (DE 104). The government provided dates of availability but refused to file a stipulation setting a *Franks* hearing date, despite the Court's clear order to do so. Dr. Sheikh thus filed an application simply to get dates on calendar to which both parties had agreed. However, because the Court's previous order was clear that a *Franks* hearing would be set, there was no actual controversy for the Court to resolve; Dr. Sheikh's application was merely a vehicle to get dates on calendar. Therefore, the application should not be considered a motion for purposes of speedy trial time. *See United States v. Hardeman*, 249 F.3d at 828 (holding that even during the pendency of a discovery motion, the speedy trial clock runs when there is nothing left for the district court to decide). Even if the Court does exclude these three days, the government is still out of time.

### B.   Additional Period of Non-Excludable Time

For completeness of the record, Dr. Sheikh now returns to the **<u>49-day delay</u>** that occurred during the pendency of the suppression hearing, from September 30, 2019, to November 25, 2019. This unjustified delay also violated Dr. Sheikh's constitutional and statutory speedy trial rights.

The record shows that the 49-day delay in the middle of the proceeding was caused by the unavailability of one government lawyer, Mr. Nolan (whose presence, as it turned out, was not even required), and who insisted on the lengthy delay even after the Court stated, "The Government is always available." The basis for the long delay was captured in two statements: (i) "this being a recusal case and coming from D.C., it's not as easy as asking an AUSA," and (ii) "*I* have cases indicted all over the country. So *my* schedule is a little bit difficult." (R/T 9/30/2019 at 99-100) (emphases added). There was no discussion about Mr. Reese's schedule, who was the other prosecutor there with Mr. Nolan, or anyone else in his office who could have handled the case. The government ultimately agreed to proceed on November 25, 2019, after which the hearing was reset another time to December 17, 2019. However, the time period Dr. Sheikh complains of here is the period from October 7, 2019, to November 25, 2019—the 49-day period that Dr. Sheikh was required to wait in the middle of an evidentiary hearing at Mr. Nolan's insistence.

In the Ninth Circuit, the general rule that speedy trial time is tolled during the pendency of a motion is not without exception. *See United States v. Medina*, 524 F.3d 974, 979 (9th Cir. 2008)

(identifying two exceptions to the general rule). The Ninth Circuit's holding in *United States v. Lloyd*, 125 F.3d 1263, 1271 (9th Cir. 1997), which addresses delays for continuity of government counsel, is instructive. In *Lloyd*, the Ninth Circuit held that:

> While continuity of counsel for the prosecution may be generally desirable, whether it is a sufficient basis to warrant a delay in any individual case will depend upon a number of factors, including, (1) the size of the prosecutor's office, (2) whether there is another qualified prosecutor available, (3) how much special knowledge the first prosecutor has developed about the case, (4) how difficult the case is, and (5) how different it is from other cases generally handled by the particular United States Attorney's office.

125 F.3d at 1271. The Ninth Circuit reversed the conviction and dismissed the indictment in that case on the basis of an STA violation, because the government had not provided the district court a sufficient basis for "any of the relevant factors, and most of the necessary information [did] not appear on the record. Thus, the district court had no basis for determining whether the government's interest in continuity of counsel was sufficient to necessitate a continuance." *Id*.

The situation here is worse than the scenario in *Lloyd*. Here, the record shows that, not only did the government not provide a sufficient basis for the 49-day delay, the delay itself was completely unnecessary. None of the *Lloyd* factors were addressed by the government, which is problematic in and of itself. Nothing in the record indicates that the Court, Dr. Sheikh, defense counsel, or Mr. Reese (who is also an indicting prosecutor) could not have been available to resume the hearing on October 7, 2019. In fact, upon resumption of the hearing in December 2019, it turned out that Mr. Nolan's presence was not necessary, which was a major factor to consider under *Lloyd*. Mr. Nolan conducted some minimal re-direct of the agent and some minimal cross of two of the Defense's less significant witnesses. In a 412-page transcript, Mr. Nolan substantive participation after the 49-day continuance was less than 14 pages—he was mostly an observer. Mr. Nolan's part could have easily been handled by Mr. Reese, who conducted the cross examination of Dr. Sheikh and her son (the Defense's two primary witnesses) and delivered the government's argument at the conclusion of the hearing. Moreover, contrary to Mr. Nolan's representation to the Court, the U.S. Attorney's Office ("USAO") could have actually made an appearance. As it turned out, the reason for the "recusal" Mr. Nolan identified was long over and the USAO did enter the case just a few months later. The USAO appears to have taken the lead since then,

along with Mr. Reese, and Mr. Nolan's participation has been minimal. On this record, the 49-day delay for Mr. Nolan's sake is completely unjustified and violated Dr. Sheikh's speedy trial rights. *See Lloyd*, 125 F.3d at 1271.

Adding this 49-day violation to the 77 days calculated above would mean that <u>125 days of speedy trial time have elapsed</u>. What is worse is that the government's unjustifiable continuance delayed the case into the pandemic, also implicating more general Sixth Amendment protections. Indeed, had the hearing resumed on October 7, 2019, it would have been over by October 8, 2019, and the *Franks* motion could have been brought in early November 2019 (or in April 2019 if the *Brady* violations had not occurred), leaving plenty of time to conduct the trial prior to the pandemic.[4] This unnecessary delay also provides yet another reason to find that granting the government's ends of justice continuance would result in a miscarriage of justice. *See infra* § IV.

## III.   THE GOVERNMENT'S NEGLIGENCE IN MEETING ITS *BRADY* OBLIGATIONS ALSO VIOLATED DR. SHEIKH'S CONSTITUTIONAL SPEEDY TRIAL RIGHTS

The Sixth Amendment also compels dismissal. In *United States v. Mendoza*, the Ninth Circuit underscored, "The Sixth Amendment guarantees that criminal defendants 'shall enjoy the right to a speedy and public trial . . . .'" 530 F.3d 758, 762 (9th Cir. 2008) (citing U.S. Const. amend. VI).   To determine whether a defendant's Sixth Amendment speedy trial right has been violated, courts balance the following four factors: (i) length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of her right, and (iv) prejudice to the defendant. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant's speedy trial right has been violated.   Rather the factors are related and must be considered together with such other circumstances as may be relevant.   Further, the balancing of these factors, and other relevant circumstances, must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."   *Mendoza*, 530 F.3d at 762 (internal citations and quotation marks omitted). A case must be dismissed if government <u>negligence</u> violates a defendant's speedy trial rights. *Mendoza*, 530 F.3d at 762 (emphasis added).

---

[4] The government was in violation of *Brady* this entire time, which deprived Dr. Sheikh's counsel of the ability to properly identify and brief the *Franks* issue in April 2019 along with the other suppression issues. This argument is discussed in detail in the next section.

*Defendant's Motion to Dismiss for Speedy Trial Violation*          *Case No. 2:18-CR-119-WBS-1*

***Length and Reasons for Delay.***  This case was investigated in July 2013 and indicted in June 2018. The government's *Brady* obligation was triggered at that time, especially with respect to *Brady* material relating to pre-trial motions such as *Franks*, which Defendant has a right to receive at the outset so that pre-trial motions can speedily be brought and the case can speedily move to trial. Here, due to government negligence, the *Brady* material bearing upon *Franks* was not disclosed for a period of almost two years after indictment, which renders the dilatory disclosure presumptively prejudicial. *Mendoza*, 530 F.3d at 762 (holding that a delay of more than one year is generally presumptively prejudicial).

***Prejudice.***  This late disclosure deprived defense counsel of the benefit of the full breadth of significant *Brady* material relating to the *Franks* issue. Indeed, the government was so derelict in meeting its constitutional *Brady* obligation that it required a Court order in July 2019, over a year into the case, and months of subsequent *Brady* discovery litigation. After that, the Court found that numerous undisclosed items were material and significant to the *Franks* issue. (DE 104.) Those items should have been disclosed at the outset of the case. In April 2019, defense counsel did challenge the evidence seized pursuant to the warrant based on a fruit-of-the-poisonous-tree theory, but counsel was deprived of the benefit of the undisclosed *Brady* material relating to the *Franks* issue. And, it was not until testimony started coming out at the December 2019 suppression hearing that defense counsel began to truly appreciate the *Franks* issue. As defense counsel explained to the Court on December 18, 2019, when asked why the *Franks* issue was not raised earlier, "Once the testimony started coming out and yesterday, I went home and started going through all the testimony and reports, [I] felt like there were lots of things in the warrant that I really did need to point out to the Court." (R/T 12/18/2019 at 371.) But had the government timely made the *Brady* disclosures—which should have been at or near the inception of the case because it bore upon *Franks* issues—defense counsel would have had a significantly more complete record impeaching the warrant affidavit and would surely have briefed the issue in April 2019 along with the other suppression issues that were briefed at the time. Undersigned counsel again highlighted this exact problem at the February 25, 2020 hearing when the *Brady* violations were first discovered. (R/T 2/25/2020 at 22 ("If we had these notes earlier, we could have potentially brought the *Franks* motion quite a bit earlier.").) There can be no dispute that Dr. Sheikh should have had the *Brady* materials at or

1   near the beginning of the case and not having the materials deprived her counsel of the ability to

2   adequately assess the breadth of suppression issues, especially relating to *Franks*, causing significant

3   delays in the case. Indeed, the materials disclosed were so contradictory to the warrant affidavit that no

4   competent defense attorney would have missed the *Franks* issue with the materials in hand. All

5   suppression issues, including *Franks*, could have been briefed earlier and resolved together in December

6   2019, and the case could have been set for trial long before the pandemic-based closure, without the need

7   for months of unnecessary *Brady* litigation. That did not happen because the government was at least

8   negligent in meeting its *Brady* obligations.

9       The prejudice of these delays and the delay the government now seeks is amplified by the

10   possibility of memories being dimmed and loss of witnesses and evidence. It goes without saying that a

11   person of Dr. Sheikh's accomplishments, stature, and position within the community has suffered and

12   continues to suffer incredible anxiety, embarrassment, and ridicule, and her family suffers along with her

13   because of this case. *See infra* pp. 14-15.

14       ***Defendant's Assertion of Speedy Trial Right***.  Dr. Sheikh has vigorously asserted her speedy trial

15   rights, and any continuance previously agreed to was predicated upon the Defense's belief that the

16   government had met its *Brady* obligations (which turned out to be untrue) and that the government was

17   dealing with Dr. Sheikh in good faith (which also turned out to be untrue). Moreover, because the length

18   of delay, reason for delay, and ensuing prejudice are so grave and significant, no STA waiver can justify

19   maintaining this case. *See Mendoza*, 530 F.3d at 764 (case dismissed despite numerous requests for

20   continuances by the defendant because the other factors were significant). Therefore, the case should be

21   dismissed under both the STA and the Sixth Amendment of the United States Constitution.

22   **IV.   THE ENDS OF JUSTICE ARE NOT SERVED BY GRANTING A CONTINUANCE**

23       The STA and constitutional violations described above render the government's ends-of-justice

24   request a moot point. Nevertheless, there are additional reasons to deny the request.

25       **A.   The Ends-of-Justice Continuance Was Intended to Be Rare and Requires Specific Findings**

26

27       "The discretion granted to the trial court to invoke the ends of justice exception is narrow.

28   Realizing that broad discretion would undermine the mandatory time limits of the Act, Congress intended

9

that the ends of justice continuance be rarely used." *United States v. Perez-Reveles*, 715 F.2d at 1351 (internal citations and quotations marks omitted). In making an ends-of-justice finding, the Court must engage in a balancing test and make findings specific to the case to determine whether the "ends of justice served by [granting the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The STA further states that: "No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C).

### B. The General Orders Are Insufficient for an Ends-of-Justice Continuance

The government's reliance on the District's General Orders is insufficient. An "ends of justice" exclusion must be justified with reference to specific factual circumstances in the particular case as of the time the delay is ordered. *United States v. Ramirez-Cortez*, 213 F.3d at 1154 (concluding that an ends of justice continuance was not sufficiently justified where the judge made no inquiry into the actual need for a continuance in the particular case, instead checked off boxes on pre-printed forms without making findings on the statutory factors, and the record showed that the judge "was granting blanket continuances"); *United States v. Pollock*, 726 F.2d 1456, 1461 (9th Cir. 1984) (stating that the "ends of justice" exclusion "was to be based on specific underlying factual circumstances" and "cannot be invoked without specific findings in the record"); *United States v. Engstrom*, 7 F.3d 1423, 1426 (9th Cir. 1993) ("No exclusion is allowed 'unless the court sets forth in the record of the case, either orally or in writing, its reasons.'"). By their very nature, the General Orders do not justify delays as of the time they are ordered in any particular case and are thus contrary to the Sixth Amendment and the "ends of justice." *See United States v. Olsen*, No. 8:17-cr-00076, Doc. 67 (C.D. Cal. September 2, 2020).

### C. Dr. Sheikh's Case Is Beyond the Statutory Reach of the Ninth Circuit's Judicial Emergency Declaration

In Dr. Sheikh's case, the government also cannot rely on the Ninth Circuit's approval of judicial emergency entered pursuant to 18 U.S.C. § 3174. *In re Approval of the Judicial Emergency in the Eastern District of California*, 956 F.3d 1175 (2020). This is because Dr. Sheikh's case does not fall within the ambit of section 3174, which states, "upon application by the chief judge of a district, grant a suspension

10

of the time limits in section 3161(c) in such district for a period of time not to exceed one year <u>for the trial of cases for which indictments or informations are filed *during such one-year period*</u>." 18 U.S.C. § 3174(b) (emphasis added). Because the indictment in this case was filed prior to the commencement of the one-year judicial emergency period, this case falls outside the reach of section 3174. Furthermore, even if this case fell within the reach of the statute (which it does not), the statute is clear that "such time limits from indictment to trial shall not be increased to exceed one hundred and eighty [180] days." *Id*. Finally, because the purpose of the statute is "to alleviate calendar congestion resulting from the lack of resources," 18 U.S.C. § 3174(a), it is not clear whether the Ninth Circuit even had statutory authority in the first place to declare an emergency under section 3174 on the basis of a pandemic. The pandemic is not causing court congestion—it may in the future after courts open back up, but it currently is not.

### D.     The Continuance Should Not Be Granted Because a Dismissal in This Case Would Not Result in a Miscarriage of Justice

Based on the foregoing, in order to grant the government's request for a continuance and exclude time, the Court must make findings specific to this case that the ends of justice served by granting the continuance affirmatively *outweigh* Dr. Sheikh's and the public's interest in a speedy trial. Here, neither a continuance nor a trial would serve the best interest of the public or Dr. Sheikh. The ends of justice compel dismissal.

Among the factors the Court must consider is "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding <u>impossible</u>, or result in a <u>miscarriage of justice</u>." 18 U.S.C. § 3161(h)(7)(B)(i). The remaining three factors—complex case, preindictment delay, and continuity of counsel—are not at issue. This is not a complex case and counsel have previously expressed that they are willing and ready to try the case.

**Impossibility.** Conducting trial in this case may be dangerous but it is *not* impossible—after all, there is business being conducted throughout the country. *See United States v. Olsen*, No. 8:17-cr-00076, Doc. 67 (C.D. Cal. September 2, 2020). In this case, the government points to the safety risks to its witnesses but is also agreeable to go to trial, which means that the government's witnesses can appear. Defense counsel and Dr. Sheikh are also ready to go to trial. However, Dr. Sheikh's greatest concern, which the government shares, is that going to trial would put the trial participants, including numerous

---

11

jurors chosen from the public, at risk for serious infection potentially leading to mortality. The present wildfires have added to that risk by adversely affecting air quality. The inhalation of the poor-quality air for extended periods can create and/or exacerbate respiratory issues thereby amplifying the threat of mortality from the novel coronavirus, a virus that attacks the lungs. At *voir dire* and trial, the virus may easily be transmitted given the number of people that would be required to congregate in a limited space with virus particles being aerosolized even with face coverings for a trial that is expected to last two to three weeks. Therefore, while not impossible, conducting a trial is dangerous. And as such, the Court must determine, taking into account the specific circumstances in this case, whether not granting a continuance and dismissing the case would result in a miscarriage of justice. It would not. In fact, granting the continuance would cause the miscarriage of justice.

**Miscarriage of Justice.**  Dr. Sheikh maintains her innocence vigorously—she has good reason to, as the Court has observed at past hearings—and she desperately wants to go to trial without delay. But as a physician, it is difficult for her accept the idea of putting so many people at risk. In determining the ends of justice and whether not granting a continuance would cause a miscarriage of justice, the Court should take this into account—that Dr. Sheikh is trying to do the right thing, the selfless thing. Moreover, it cannot be ignored that, at the *Franks* hearing, Dr. Sheikh presented strong evidence to show that she is not a human trafficker and that the government's alleged victims (Prakash and Alfredo) are clearly lying and exaggerating their stories against Dr. Sheikh to obtain T-Visas and other benefits, which amounts to immigration fraud on the part of these alleged victims. After the *Franks* hearing, the Court commented:

> When we finally do get back to trying cases, the experience in other districts has been no matter how many judges you have, no matter how many courtrooms you have, you try one at a time. You basically use the whole courthouse to try a case. You use one courtroom for the jury to deliberate, you use another courtroom for them to come in, in the morning. You spread them throughout the courtroom. Even when we get back to jury trials, it's going to be very, very limited. . . .

> [W]hat you have to consider here is who this defendant is, the financial and reputational injury that she's already suffered as a result of this prosecution, the strength of your evidence on the major charge that you started out thinking you were going to be able to prove, obtaining labor by force or threats of force, how strong that is, and whether you really want to go on a 1001 case or a harboring case, whether that's your priority here. Now, I'm going to stop there.

> Don't get involved in any discussion. I wouldn't have this discussion with

1   you if it wasn't for the peculiar situation that we find ourselves in, but I just
2   thought it had to be said. So we'll leave it at that.

(R/T 8/13/20 at 388-89.)

The Court was very gracious to note some salient issues but not put any pressure on any party. However, the Court's observations are highly relevant to the issue of whether a dismissal here would result in a miscarriage of justice; they must be factored into the ends of justice analysis. With no time remaining on the speedy trial clock, the government is asking the Court to put Dr. Sheikh's life on hold for an incredibly long period of time in order to bring her to trial, while she and her family continue to endure the cost, stigma, and emotional damage of incredibly weak criminal charges.

The continuance is neither in the best interest of Dr. Sheikh nor in the best interest of the public. Any objective observer can see, as this Court has, that it is not just Dr. Sheikh who is suffering prejudice while this unsupported "human trafficking" case continues to linger. The public, the Court, and even the government itself are suffering prejudice. In assessing whether a dismissal would cause a miscarriage of justice, the Court must examine the value of the continuance to the people in this District who pay the price of the resources this case continues to consume. Court records demonstrate that, as of March 31, 2020, this District had over 1,800 defendants with pending felony charges. (*See* Ex. 1.) When the Court opens back up, there will be a backlog of cases ready for trial. A significant number of those cases would involve defendants charged with dangerous crimes and/or in custody. Since the STA does not allow for court congestion to serve as a basis for a continuance, many of these cases would need to be prioritized for trial lest dangerous individuals be released back into the District or individuals who are innocent be detained for prolonged periods of time. Dr. Sheikh is not willing to waive any more time, so her case would be dismissed either now or then, unless the government is prepared to allow the clock to expire on defendants who may be a true danger to the public or prolong the detention of potentially innocent defendants whose liberty is unduly being compromised—such a result would not serve the best interest of the people in this District. The reality is that the pandemic has changed the landscape for everyone and, in this case, there is simply no basis to find that granting a continuance as opposed to dismissing this case serves the ends of justice or is in the interest of the public.

---

*Defendant's Motion to Dismiss for Speedy Trial Violation*          *Case No. 2:18-CR-119-WBS-1*

### E.      Dr. Sheikh Will Continue to Suffer Extreme Prejudice If This Case Is Continued

This case has caused Dr. Sheikh to suffer depression, anxiety, embarrassment, and even stress-induced physical effects like body rashes and hives. Her diabetes has gone from moderate to severe. Since the inception of the case, which was widely publicized in the Sacramento area, Dr. Sheikh has regularly received phone calls from blocked numbers, telling her that she is a criminal. She is constantly slandered on social media and many friends and colleagues have distanced themselves from her due to the federal human trafficking charges. The case has also drained her financially, and the ranch that she worked so hard to build has fallen into complete disrepair due to the mental and financial stress. Once a self-made woman, she is now forced to ask friends and family for money to pay her legal bills.

Dr. Sheikh's two adult children have also been deeply affected, having people in the community label their mother a criminal. The children have lost friends and opportunities as people have distanced themselves due to this case. Both children were forced to take a break from their higher education as a result of the stress, especially because they know first-hand that Prakash and Alfredo are lying, and their mother is innocent. It has been difficult for them to see their mother unjustifiably dragged through the criminal process for years.

Furthermore, the government put *lis pendens* on numerous properties Dr. Sheikh owns (in addition to the ranch) on the basis of Prakash and Alfredo's bald allegations that they mowed a lawn here and there. The Court has seen evidence that Dr. Sheikh was not even around Prakash and Alfredo six days a week, sixteen to eighteen hours a day, and Prakash and Alfredo did not have a car to drive around to any of these other properties. Nevertheless, on the basis of the paltry allegations, the government obtained numerous, unsubstantiated *lis pendens* that are as abusive as the charges against her. Dr. Sheikh is unable to sell or refinance the properties and is behind on many mortgage payments.

Dr. Sheikh is an accomplished neurologist who worked tremendously hard her entire life to achieve the American dream. The devastation of this case on her life cannot be overstated. A dismissal will not have a negative effect on the government, but it will go a long way in beginning the restoration of Dr. Sheikh's life from a prosecution she never deserved.

*Defendant's Motion to Dismiss for Speedy Trial Violation*          *Case No. 2:18-CR-119-WBS-1*

## V.     THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE

Dr. Sheikh has demonstrated that anywhere from 77 to 125 days of speedy trial time have elapsed. In such a case, the indictment "shall be dismissed," and the district court must consider whether to dismiss the case with or without prejudice taking into account the factors described in 18 U.S.C. § 3162(a)(2). *See, e.g., Lloyd*, 125 F.3d at 1271; *Hardeman*, 249 F.3d at 829. Section 3162(a)(2) provides: "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

*Seriousness of the Offense.*  While human trafficking is a serious offense, here the government has no genuine human trafficking case, as the Court itself has surmised. The harboring and false statements/obstruction charges, especially the way they have been charged here, are not all that serious, and also have significant evidentiary shortcomings.[5] Indeed, were these charges considered serious, almost every person in this District would be at risk for prosecution, which is an absurd proposition. This factor compels dismissal with prejudice.

*Circumstances That Led to Dismissal.*  The circumstances that have led to dismissal involve years of delay in producing significant *Brady* material that bore upon both pre-trial motions and trial, and a 49-day mid-hearing delay on the insistence of a government attorney whose presence was actually not necessary for the remainder of the hearing. The government bears significant fault and so this factor also compels dismissal with prejudice.

*Impact of Re-Prosecution on the Administration of Justice.*  In this case more than any other, it goes without saying that re-prosecution would offend justice in every way. Dr. Sheikh has been punished enough for no good reason. *See supra* pp. 1-2. It is not just to allow Prakash and Alfredo to continue

---

[5] The pre-trial motions focused on the weaknesses in the human trafficking charges because those have been the gravamen of the government's case since its inception and were relevant to the motions. Indeed, it cannot be lost that the case was brought by the "Human Trafficking Section" of the Civil Rights Division, and that section would not have brought a simple harboring or false statements case. Nevertheless, the Defense submits that trial would demonstrate that even the harboring and false statements/obstruction charges are not well-supported by the evidence. It will not benefit the public, the government, the Court, or Dr. Sheikh a single *iota* to litigate these charges. Going to trial simply because the government does not like to lose is in the interest of only ego, not justice.

taking advantage of the system at the expense of Dr. Sheikh. Her life has been destroyed for years and the Court cannot allow the injustice to persist. District courts are gatekeepers given discretion to dismiss with prejudice precisely these types of unusual cases that slip through the cracks. The prosecutor's office normally does wonderful work, but we are all human; mistakes happen every now and then. This case was a mistake and even the government lawyers would benefit by moving on to prosecutions that actually merit their valuable time. All three factors compel a dismissal with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, Dr. Sheikh requests that the Court dismiss the case with prejudice.

Dated: September 17, 2020                    Respectfully submitted,

ALMADANI LAW


*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.
*Attorney for Defendant*

---

16

Exhibit 1

**Table D-1.**
**U.S. District Courts–Criminal Defendants Commenced, Terminated, and Pending (Including Transfers), During the 12-Month Period Ending March 31, 2020**

| | Not Terminated as of March 31, 2019 [1] | | | | Commenced | | | | | | | Terminated | | | | | | | Not Terminated as of March 31, 2020 [1] | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Original Proceedings | | | | | | | Original Proceedings | | | | | | | | | |
| Circuit and District | Total | Felony | Class A Misdemeanor | Petty Offense | Total Commenced | Total | Felony | Class A Misdemeanor | Petty Offense | Reopens [2] | Transfers | Total Terminated | Total | Felony | Class A Misdemeanor | Petty Offense | Reopens [2] | Transfers | Total | Felony | Class A Misdemeanor | Petty Offense |
| **Total** | **110,115** | **95,514** | **13,572** | **1,029** | **93,213** | **92,828** | **87,322** | **5,348** | **158** | **222** | **163** | **88,730** | **88,412** | **82,181** | **4,944** | **1,287** | **170** | **148** | **114,174** | **99,450** | **13,652** | **1,072** |
| **DC** | **1,087** | **1,067** | **20** | **-** | **489** | **488** | **479** | **8** | **1** | **-** | **1** | **393** | **392** | **385** | **4** | **3** | **-** | **1** | **1,144** | **1,118** | **26** | **-** |
| **1st** | **4,103** | **4,091** | **11** | **1** | **2,456** | **2,437** | **2,407** | **21** | **9** | **13** | **6** | **2,480** | **2,463** | **2,429** | **27** | **7** | **12** | **5** | **4,074** | **4,060** | **11** | **3** |
| ME | 272 | 269 | 3 | - | 243 | 242 | 236 | 6 | - | 1 | - | 209 | 209 | 208 | 1 | - | - | - | 312 | 304 | 8 | - |
| MA | 827 | 825 | 2 | - | 718 | 711 | 709 | 2 | - | 3 | 4 | 551 | 545 | 540 | 5 | - | 4 | 2 | 994 | 993 | 1 | - |
| NH | 241 | 239 | 2 | - | 280 | 278 | 275 | 3 | - | - | 2 | 252 | 251 | 243 | 8 | - | - | 1 | 278 | 278 | - | - |
| RI | 178 | 178 | - | - | 140 | 140 | 138 | 2 | - | - | - | 139 | 139 | 137 | 2 | - | - | - | 175 | 175 | - | - |
| PR | 2,585 | 2,580 | 4 | 1 | 1,075 | 1,066 | 1,049 | 8 | 9 | 9 | - | 1,329 | 1,319 | 1,301 | 11 | 7 | 8 | 2 | 2,315 | 2,310 | 2 | 3 |
| **2nd** | **10,930** | **10,248** | **639** | **43** | **3,740** | **3,717** | **3,600** | **116** | **1** | **11** | **12** | **3,663** | **3,653** | **3,519** | **80** | **54** | **5** | **5** | **11,039** | **10,359** | **636** | **44** |
| CT | 809 | 798 | 11 | - | 409 | 406 | 402 | 4 | - | 1 | 2 | 442 | 442 | 438 | 4 | - | - | - | 778 | 765 | 13 | - |
| NY,N | 801 | 717 | 80 | 4 | 440 | 436 | 357 | 78 | 1 | 2 | 2 | 467 | 463 | 385 | 24 | 54 | 1 | 3 | 800 | 717 | 78 | 5 |
| NY,E | 2,998 | 2,907 | 88 | 3 | 735 | 726 | 721 | 5 | - | 6 | 3 | 631 | 631 | 623 | 8 | - | - | - | 3,089 | 2,997 | 89 | 3 |
| NY,S | 5,241 | 4,809 | 396 | 36 | 1,483 | 1,477 | 1,466 | 11 | - | 1 | 5 | 1,465 | 1,460 | 1,436 | 24 | - | 4 | 1 | 5,281 | 4,855 | 390 | 36 |
| NY,W | 830 | 768 | 62 | - | 474 | 473 | 461 | 12 | - | 1 | - | 481 | 480 | 465 | 15 | - | - | 1 | 813 | 751 | 62 | - |
| VT | 251 | 249 | 2 | - | 199 | 199 | 193 | 6 | - | - | - | 177 | 177 | 172 | 5 | - | - | - | 278 | 274 | 4 | - |
| **3rd** | **5,699** | **5,435** | **220** | **44** | **3,173** | **3,140** | **2,967** | **170** | **3** | **20** | **13** | **2,820** | **2,795** | **2,631** | **156** | **8** | **15** | **10** | **6,107** | **5,826** | **238** | **43** |
| DE | 199 | 170 | 28 | 1 | 128 | 127 | 127 | - | - | 1 | - | 149 | 147 | 147 | - | - | - | 2 | 179 | 150 | 28 | 1 |
| NJ | 1,096 | 963 | 131 | 2 | 1,142 | 1,129 | 982 | 146 | 1 | 6 | 7 | 809 | 803 | 676 | 126 | 1 | 4 | 2 | 1,429 | 1,275 | 152 | 2 |
| PA,E | 1,411 | 1,380 | 24 | 7 | 723 | 718 | 710 | 8 | - | 1 | 4 | 770 | 764 | 754 | 10 | - | 4 | 2 | 1,416 | 1,387 | 22 | 7 |
| PA,M | 1,147 | 1,121 | 21 | 5 | 414 | 411 | 408 | 3 | - | 3 | - | 516 | 511 | 503 | 8 | - | 3 | 2 | 1,056 | 1,033 | 18 | 5 |
| PA,W | 934 | 931 | 3 | - | 636 | 625 | 619 | 6 | - | 9 | 2 | 462 | 456 | 452 | 4 | - | 4 | 2 | 1,097 | 1,092 | 5 | - |
| VI | 912 | 870 | 13 | 29 | 130 | 130 | 121 | 7 | 2 | - | - | 114 | 114 | 99 | 8 | 7 | - | - | 930 | 889 | 13 | 28 |
| **4th** | **12,955** | **7,039** | **5,345** | **571** | **7,507** | **7,468** | **5,402** | **1,965** | **101** | **26** | **13** | **7,511** | **7,475** | **5,509** | **1,536** | **430** | **21** | **15** | **12,946** | **6,975** | **5,379** | **592** |
| MD | 4,523 | 1,211 | 3,265 | 47 | 1,577 | 1,574 | 708 | 866 | - | 2 | 1 | 1,554 | 1,549 | 735 | 678 | 136 | 2 | 3 | 4,537 | 1,198 | 3,292 | 47 |
| NC,E | 2,580 | 1,122 | 1,007 | 451 | 1,230 | 1,224 | 963 | 162 | 99 | 4 | 2 | 1,128 | 1,125 | 863 | 147 | 115 | 2 | 1 | 2,702 | 1,233 | 999 | 470 |
| NC,M | 545 | 535 | 6 | 4 | 544 | 542 | 538 | 3 | 1 | 1 | 1 | 595 | 595 | 589 | 6 | - | - | - | 499 | 492 | 2 | 5 |
| NC,W | 613 | 597 | 11 | 5 | 668 | 665 | 660 | 5 | - | 2 | 1 | 618 | 609 | 599 | 8 | 2 | 4 | 5 | 674 | 663 | 7 | 4 |
| SC | 1,354 | 1,324 | 23 | 7 | 790 | 783 | 781 | 2 | - | 5 | 2 | 956 | 947 | 941 | 6 | - | 8 | 1 | 1,216 | 1,188 | 21 | 7 |
| VA,E | 2,029 | 1,046 | 940 | 43 | 1,738 | 1,731 | 816 | 915 | - | 7 | - | 1,656 | 1,649 | 794 | 678 | 177 | 4 | 3 | 2,055 | 1,049 | 962 | 44 |
| VA,W | 541 | 437 | 90 | 14 | 354 | 348 | 346 | 2 | - | 4 | 2 | 320 | 319 | 317 | 2 | - | - | 1 | 575 | 469 | 92 | 14 |
| WV,N | 410 | 409 | 1 | - | 278 | 276 | 269 | 6 | 1 | 1 | 1 | 313 | 312 | 306 | 6 | - | 1 | - | 375 | 371 | 3 | 1 |
| WV,S | 360 | 358 | 2 | - | 328 | 325 | 321 | 4 | - | - | 3 | 371 | 370 | 365 | 5 | - | - | 1 | 313 | 312 | 1 | - |
| **5th** | **19,446** | **18,205** | **1,161** | **80** | **26,454** | **26,406** | **25,915** | **474** | **17** | **34** | **14** | **25,145** | **25,114** | **24,587** | **470** | **57** | **16** | **15** | **20,521** | **19,330** | **1,098** | **93** |
| LA,E | 441 | 435 | 6 | - | 336 | 332 | 315 | 17 | - | 4 | - | 338 | 334 | 308 | 26 | - | 4 | - | 435 | 429 | 6 | - |
| LA,M | 331 | 276 | 51 | 4 | 193 | 192 | 186 | 6 | - | 1 | - | 203 | 200 | 172 | 28 | - | 1 | 2 | 331 | 298 | 29 | 4 |
| LA,W | 441 | 377 | 64 | - | 397 | 394 | 359 | 35 | - | 2 | 1 | 404 | 403 | 362 | 40 | 1 | - | 1 | 432 | 370 | 62 | - |
| MS,N | 224 | 223 | - | 1 | 147 | 147 | 142 | 5 | - | - | - | 217 | 215 | 212 | 3 | - | - | 2 | 154 | 151 | 2 | 1 |
| MS,S | 554 | 535 | 2 | 17 | 504 | 503 | 500 | 3 | - | 1 | - | 512 | 512 | 510 | 2 | - | - | - | 519 | 499 | 3 | 17 |
| TX,N | 1,962 | 1,920 | 37 | 5 | 1,873 | 1,866 | 1,845 | 21 | - | 1 | 6 | 1,626 | 1,622 | 1,597 | 23 | 2 | - | 4 | 2,211 | 2,164 | 42 | 5 |
| TX,E | 1,722 | 1,696 | 25 | 1 | 1,051 | 1,051 | 1,048 | 3 | - | - | - | 699 | 696 | 692 | 4 | - | - | 3 | 1,834 | 1,825 | 8 | 1 |
| TX,S | 7,981 | 7,783 | 168 | 30 | 11,451 | 11,442 | 11,357 | 69 | 16 | 6 | 3 | 10,501 | 10,497 | 10,481 | 14 | 2 | 1 | 3 | 9,032 | 8,761 | 227 | 44 |
| TX,W | 5,790 | 4,960 | 808 | 22 | 10,502 | 10,479 | 10,163 | 315 | 1 | 19 | 4 | 10,645 | 10,635 | 10,253 | 330 | 52 | 10 | - | 5,573 | 4,833 | 719 | 21 |
| **6th** | **8,212** | **7,528** | **650** | **34** | **6,252** | **6,221** | **5,880** | **339** | **2** | **15** | **16** | **5,965** | **5,936** | **5,600** | **320** | **16** | **11** | **18** | **8,547** | **7,848** | **661** | **38** |
| KY,E | 795 | 783 | 8 | 4 | 617 | 613 | 607 | 5 | 1 | 3 | 1 | 571 | 564 | 561 | 2 | 1 | 5 | 2 | 856 | 841 | 10 | 5 |
| KY,W | 1,025 | 582 | 432 | 11 | 601 | 595 | 342 | 253 | - | 2 | 4 | 646 | 645 | 411 | 224 | 10 | - | 1 | 969 | 505 | 452 | 12 |
| MI,E | 1,196 | 1,169 | 23 | 4 | 863 | 858 | 844 | 14 | - | 3 | 2 | 894 | 888 | 868 | 20 | - | 3 | 3 | 1,175 | 1,153 | 18 | 4 |
| MI,W | 289 | 283 | 6 | - | 376 | 374 | 362 | 12 | - | 1 | 1 | 417 | 415 | 402 | 13 | - | - | 2 | 244 | 237 | 7 | - |
| OH,N | 934 | 930 | 3 | 1 | 1,102 | 1,100 | 1,093 | 7 | - | 1 | 1 | 983 | 980 | 973 | 6 | 1 | - | 3 | 1,058 | 1,054 | 3 | 1 |
| OH,S | 1,144 | 1,063 | 75 | 6 | 714 | 710 | 685 | 25 | - | 3 | 1 | 743 | 742 | 705 | 33 | 4 | 1 | - | 1,121 | 1,048 | 65 | 8 |
| TN,E | 1,013 | 1,000 | 10 | 3 | 988 | 984 | 974 | 10 | - | 1 | 3 | 837 | 831 | 818 | 13 | - | - | 6 | 1,167 | 1,156 | 8 | 3 |
| TN,M | 536 | 535 | 1 | - | 361 | 360 | 359 | 1 | - | 1 | - | 302 | 299 | 297 | 2 | - | 2 | 1 | 597 | 596 | 1 | - |
| TN,W | 1,280 | 1,183 | 92 | 5 | 630 | 627 | 614 | 12 | 1 | - | 3 | 572 | 572 | 565 | 7 | - | - | - | 1,360 | 1,258 | 97 | 5 |
| **7th** | **4,994** | **4,923** | **66** | **5** | **3,061** | **3,038** | **2,990** | **46** | **2** | **11** | **12** | **2,743** | **2,725** | **2,651** | **70** | **4** | **9** | **9** | **5,313** | **5,260** | **48** | **5** |
| IL,N | 2,079 | 2,053 | 25 | 1 | 816 | 808 | 799 | 9 | - | 1 | 7 | 750 | 748 | 717 | 29 | 2 | 1 | 1 | 2,153 | 2,136 | 17 | - |
| IL,C | 417 | 393 | 24 | - | 340 | 339 | 318 | 20 | 1 | - | 1 | 276 | 274 | 250 | 24 | - | - | 2 | 460 | 446 | 13 | 1 |
| IL,S | 306 | 301 | 3 | 2 | 331 | 331 | 329 | 2 | - | - | - | 281 | 278 | 276 | 2 | - | - | 3 | 357 | 352 | 3 | 2 |
| IN,N | 627 | 622 | 5 | - | 412 | 410 | 404 | 6 | - | - | 2 | 424 | 423 | 417 | 6 | - | - | 1 | 624 | 620 | 4 | - |
| IN,S | 806 | 804 | - | 2 | 593 | 588 | 587 | 1 | - | 4 | 1 | 541 | 540 | 540 | - | - | 1 | - | 861 | 858 | 1 | 2 |
| WI,E | 497 | 492 | 5 | - | 376 | 372 | 369 | 3 | - | 3 | 1 | 292 | 288 | 284 | 4 | - | 2 | 2 | 581 | 574 | 7 | - |
| WI,W | 262 | 258 | 4 | - | 193 | 190 | 184 | 5 | 1 | 3 | - | 179 | 174 | 167 | 5 | 2 | 5 | - | 277 | 274 | 3 | - |
| **8th** | **7,206** | **7,075** | **113** | **18** | **6,269** | **6,242** | **6,015** | **227** | **-** | **20** | **7** | **5,792** | **5,770** | **5,536** | **224** | **10** | **6** | **16** | **7,603** | **7,436** | **151** | **16** |
| AR,E | 1,079 | 1,064 | 15 | - | 870 | 867 | 708 | 159 | - | 1 | 2 | 559 | 557 | 463 | 94 | - | - | 2 | 1,383 | 1,299 | 84 | - |
| AR,W | 412 | 383 | 27 | 2 | 332 | 331 | 326 | 5 | - | 1 | - | 295 | 291 | 282 | 9 | - | 1 | 3 | 444 | 422 | 20 | 2 |
| IA,N | 330 | 329 | 1 | - | 400 | 399 | 397 | 2 | - | 1 | - | 426 | 422 | 420 | 2 | - | 1 | 3 | 319 | 319 | - | - |
| IA,S | 440 | 439 | - | 1 | 560 | 558 | 558 | - | - | 1 | 1 | 500 | 500 | 495 | 4 | 1 | - | - | 502 | 502 | - | - |
| MN | 415 | 409 | 6 | - | 392 | 391 | 383 | 8 | - | - | 1 | 423 | 423 | 410 | 13 | - | - | - | 380 | 375 | 5 | - |
| MO,E | 1,516 | 1,483 | 33 | - | 1,356 | 1,348 | 1,330 | 18 | - | 8 | - | 1,332 | 1,326 | 1,291 | 33 | 2 | 2 | 4 | 1,467 | 1,458 | 9 | - |
| MO,W | 1,302 | 1,291 | 11 | - | 830 | 826 | 820 | 6 | - | 1 | 3 | 720 | 718 | 708 | 9 | 1 | - | 2 | 1,414 | 1,405 | 8 | 1 |
| NE | 606 | 595 | 9 | 2 | 564 | 561 | 540 | 21 | - | 3 | - | 573 | 570 | 549 | 18 | 3 | 1 | 2 | 587 | 568 | 17 | 2 |
| ND | 416 | 412 | 3 | 1 | 376 | 375 | 371 | 4 | - | 1 | - | 327 | 327 | 317 | 10 | - | - | - | 463 | 460 | 2 | 1 |
| SD | 690 | 670 | 8 | 12 | 589 | 586 | 582 | 4 | - | 3 | - | 637 | 636 | 601 | 32 | 3 | 1 | - | 644 | 628 | 6 | 10 |
| **9th** | **18,899** | **16,794** | **1,940** | **165** | **18,104** | **18,043** | **16,907** | **1,118** | **18** | **40** | **21** | **17,321** | **17,240** | **15,332** | **1,268** | **640** | **53** | **28** | **19,609** | **17,513** | **1,928** | **168** |
| AK | 334 | 305 | 23 | 6 | 198 | 196 | 186 | 9 | 1 | 2 | - | 180 | 163 | 158 | 4 | 1 | 3 | 14 | 345 | 314 | 25 | 6 |
| AZ | 3,069 | 3,034 | 27 | 8 | 5,876 | 5,862 | 5,463 | 399 | - | 10 | 4 | 5,841 | 5,828 | 5,297 | 448 | 83 | 13 | - | 3,049 | 3,015 | 26 | 8 |

| | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CA.N | 1,317 | 1,176 | 139 | 748 | 746 | 704 | 42 | - | - | 2 | 627 | 624 | 592 | 31 | - | 1 | 2 | 1,435 | 1,352 | - | 13 |
| CA.E | 2,456 | 1,858 | 600 | 571 | 564 | 530 | 25 | - | - | 1 | 588 | 583 | 556 | 25 | - | 1 | 2 | 2,442 | 1,766 | 1 | 85 |
| CA.C | 3,888 | 3,364 | 240 | 1,685 | 1,669 | 1,472 | 195 | 6 | 1 | 6 | 1,437 | 1,417 | 1,216 | 193 | 8 | 4 | 4 | 2,442 | 3,524 | 5 | 31 |
| CA.S | 2,864 | 2,819 | 45 | 5,833 | 5,828 | 5,775 | 39 | 10 | 14 | 7 | 5,272 | 5,199 | 4,669 | 94 | 436 | 17 | 4 | 3,095 | 3,449 | - | - |
| HI | 490 | 384 | 108 | 228 | 238 | 233 | 5 | 3 | - | - | 224 | 224 | 201 | 23 | - | 9 | - | 467 | 379 | - | 4 |
| ID | 459 | 441 | 18 | 413 | 411 | 406 | 5 | 2 | - | - | 397 | 386 | 380 | 5 | 1 | - | - | 473 | 201 | - | 4 |
| MT | 453 | 436 | 15 | 379 | 375 | 373 | 2 | - | - | - | 404 | 404 | 395 | 7 | 1 | - | - | 430 | 398 | - | 8 |
| NV | 1,149 | 1,127 | 22 | 385 | 381 | 369 | 12 | 4 | 1 | 3 | 479 | 479 | 469 | 7 | 1 | 1 | 3 | 1,098 | 1,060 | 2 | 2 |
| OR | 738 | 709 | - | 664 | 660 | 641 | 19 | - | - | - | 575 | 575 | 544 | 26 | 1 | 2 | - | 804 | 780 | - | 5 |
| WA.E | 456 | 460 | 4 | 375 | 375 | 352 | 23 | - | 1 | 1 | 438 | 438 | 410 | 8 | 2 | - | 2 | 444 | 420 | - | 2 |
| WA.W | 1,280 | 637 | 648 | 689 | 668 | 328 | 339 | 1 | - | - | 882 | 882 | 371 | 364 | 87 | 5 | 4 | 1,146 | 580 | 1 | 6 |
| GUAM | 87 | 83 | - | 51 | 51 | 47 | 3 | - | 1 | - | 53 | 53 | 51 | - | - | 3 | - | 87 | 82 | - | - |
| NMI | 35 | 35 | - | 20 | 20 | 19 | - | 1 | - | - | 14 | 14 | 13 | 1 | - | - | - | 41 | 41 | - | - |
| **10th** | **7,463** | **5,348** | **2,091** | **8,289** | **8,281** | **7,830** | **430** | **1** | **16** | **12** | **7,547** | **7,507** | **7,473** | **403** | **51** | **14** | **6** | **7,711** | **5,470** | **- ** | **35** |
| CO | 1,161 | 677 | 469 | 567 | 583 | 565 | 17 | 1 | - | 1 | 594 | 591 | 566 | 25 | - | 2 | - | 1,106 | 681 | 2 | 5 |
| KS | 1,304 | 722 | 575 | 593 | 584 | 498 | 79 | 7 | - | 1 | 612 | 600 | 496 | 72 | 57 | 4 | 1 | 1,286 | 718 | 1 | 6 |
| NM | 1,844 | 1,806 | 36 | 4,794 | 4,793 | 4,766 | 15 | 5 | - | 7 | 4,720 | 4,721 | 4,682 | 17 | 11 | - | - | 1,817 | 1,783 | - | 4 |
| OK.N | 298 | 254 | 10 | 345 | 345 | 340 | 2 | - | - | 2 | 298 | 298 | 296 | 2 | - | - | 2 | 281 | 265 | - | 1 |
| OK.E | 121 | 120 | 1 | 120 | 116 | 116 | - | 2 | - | 2 | 106 | 105 | 103 | 2 | - | - | - | 132 | 132 | - | 1 |
| OK.W | 1,222 | 461 | 761 | 732 | 726 | 464 | 264 | 1 | - | 4 | 630 | 630 | 362 | 238 | 1 | 5 | - | 1,338 | 538 | 3 | 2 |
| UT | 865 | 808 | 46 | 885 | 880 | 857 | 23 | - | 1 | 4 | 796 | 796 | 763 | 23 | 3 | 3 | - | 920 | 862 | 3 | 12 |
| WY | 700 | 430 | 249 | 243 | 242 | 215 | 27 | - | - | 1 | 191 | 191 | 165 | 24 | - | 1 | - | 752 | 478 | - | 4 |
| **11th** | **9,151** | **7,861** | **1,226** | **7,419** | **7,367** | **6,930** | **434** | **3** | **16** | **36** | **6,990** | **6,982** | **6,529** | **386** | **8** | **7** | **20** | **9,500** | **8,347** | **- ** | **35** |
| AL.N | 638 | 756 | 80 | 649 | 639 | 588 | 51 | - | 9 | - | 614 | 614 | 574 | 36 | - | 9 | 2 | 873 | 778 | - | 10 |
| AL.M | 444 | 374 | 69 | 224 | 221 | 205 | 16 | - | 3 | - | 232 | 232 | 219 | 11 | - | 3 | - | 427 | 361 | - | 1 |
| AL.S | 480 | 455 | 5 | 334 | 334 | 334 | - | - | - | 1 | 374 | 374 | 373 | - | 1 | 3 | - | 415 | 400 | - | 7 |
| FL.N | 630 | 366 | 260 | 576 | 574 | 409 | 165 | 1 | - | - | 463 | 463 | 361 | 110 | - | 1 | 1 | 737 | 421 | 1 | 3 |
| FL.M | 1,821 | 1,794 | 28 | 1,669 | 1,664 | 1,651 | 12 | 1 | 2 | 3 | 1,583 | 1,568 | 1,546 | 14 | - | 3 | 3 | 1,504 | 1,880 | 2 | 4 |
| FL.S | 1,766 | 1,742 | 13 | 2,052 | 2,052 | 2,027 | 9 | - | 2 | 16 | 2,062 | 2,062 | 1,982 | 12 | - | 6 | 7 | 1,780 | 1,772 | 3 | 29 |
| GA.N | 1,594 | 1,233 | 338 | 730 | 730 | 718 | 12 | - | - | 8 | 559 | 559 | 537 | 12 | 1 | 6 | 3 | 1,737 | 1,389 | 3 | 13 |
| GA.M | 730 | 557 | 171 | 595 | 560 | 477 | 113 | - | - | 2 | 532 | 532 | 416 | 111 | - | 1 | 4 | 806 | 626 | 1 | 10 |
| GA.S | 695 | 594 | 262 | 578 | 577 | 521 | 56 | - | - | 7 | 576 | 575 | 502 | 73 | - | 1 | - | 860 | 614 | - | 2 |

NOTE: This table includes defendants in all cases filed as felonies or Class A misdemeanors, but includes only those defendants in cases filed as petty offenses that were assigned to district judges rather than magistrate judges.
[1] Excludes defendants who had been fugitives more than 12 months before the end of the period indicated.
[2] Includes appeals from magistrate judges, reopens, remands, and retrials after mistrial.