McGREGOR SCOTT
United States Attorney
ERIC S. DREIBAND
Assistant Attorney General for Civil Rights
AUDREY B. HEMESATH
Assistant United States Attorney
WILLIAM E. NOLAN
DAVID REESE
Trial Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiffs,<br><br>      v.<br><br>FIRDOS SHEIKH,<br><br>            Defendant. | CASE NO. 2:18-CR-00119 WBS<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

This Court has previously denied defendant Firdos Sheikh's motion to dismiss the indictment for a Speedy Trial violation, and this Court should do so again, where Sheikh has not demonstrated a statutory or constitutional violation, the delay in bringing the case to trial has been due to Sheikh's own requests for continuances and pretrial motions, and a strong basis exists for a further continuance given the impossibility of convening a jury trial in the Eastern District of California for this 2-3 week case with out-of-town counsel and out-of-town witnesses.

I.      **BACKGROUND**

      On June 21, 2018, a grand jury in the Eastern District of California indicted the defendant on two counts of forced labor, in violation of 18 U.S.C. § 1590(a); two counts of alien harboring for financial

gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) & (a)(1)(B)(i); obstruction of a forced labor investigation, in violation of 18 U.S.C. § 1590(b); and false statements, in violation of 18 U.S.C. § 1001. CR 1.

### A.      Procedural History

Following her indictment in June 2018, Sheikh filed three unopposed motions to continue on July 30, 2018 (CR 15), January 15, 2019 (CR 18), and on April 18, 2019 (CR 31), and three pre-trial motions on April 8, 2019 (CR 28-30).  On July 18, 2019, the defendant substituted new counsel.  CR 58. On July 29, 2019, this Court reset the evidentiary hearing for the defendant's motions to September 30, 2019.  CR 63.  On September 30 and December 17-18, 2019, this Court held an evidentiary hearing in this matter pursuant to the defendant's motions to suppress evidence and statements arising from the July 1, 2013, welfare check at the defendant's residence.  CR 69, 77, 79.  This Court denied the defendant's motions.  CR 79.  During the evidentiary hearing on December 18, 2019, the defendant first raised a challenge pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), alleging that the affidavit submitted in support of the search warrant executed on July 9, 2013, misrepresented material facts and omitted material information.  R/T 362:5-372:21.  This Court directed the defendant and the government to submit briefs with respect to the defendant's *Franks* motion, and set an evidentiary hearing in this matter for February 25, 2020.  *Id* at 409:23-412:12.

On February 19, 2020, six days prior to the *Franks* hearing, the government disclosed the agent rough notes of the ROIs that corresponded to the witness interviews noted in the search warrant affidavit.  On February 24, 2020, Sheikh filed a motion for additional discovery from the government. CR 87.  On February 25, 2020, this Court continued the *Franks* hearing and ordered further briefing with respect to the defendant's discovery motion, *Brady* motion, and *Franks* motion, with the defendant's discovery motion to be addressed first.  CR 88.  The government responded to the defendant's discovery motion on March 2, 2020 (CR 90), and made additional disclosures consistent with its response.  On March 10, 2020, Sheikh replied to the government's response to her discovery motion, alleging outstanding discovery issues and challenging the sufficiency of the government's response.  CR 92 at 25-29.  In the same document, Sheikh moved to dismiss, alleging multiple *Brady* violations.  (CR 92 at 20-25).  On March 16, 2020, this Court ordered that the defendant's discovery

motion was moot, and directed briefing with respect to the defendant's *Brady* motion.  CR 94.  During this period of time, Sheikh did not withdraw her *Brady* motion filed on March 10, 2020.  On March 24, 2020, Sheikh re-filed her *Brady* motion (CR 95), to which the government responded on April 6, 2020 (CR 97), and which this Court denied on June 3, 2020.  CR 104.  Throughout this period of time, Sheikh did not withdraw her *Franks* motion.  On June 22, 2020, this Court set a briefing schedule for the defendant's *Franks* motion, set a hearing date of August 11, 2020, and ordered time excluded from that date until August 11, 2020.  CR 108.  On July 8, 2020, Sheikh submitted a second brief in support of her *Franks* motion, to which the government responded on July 21, 2020.  CR 111.  An evidentiary hearing was held on August 11-13 (CR 116-117, 119), and this Court denied the defendant's *Franks* motion on August 21, 2020.

On September 3, 2020, Sheikh filed a motion for a speedy trial and demanded a trial by October 16, 2020.  CR 129.  Following a hearing, consultation with the government, and a tour of courthouse options for conducting a trial, Sheikh changed her position and now says that a trial cannot safely be conducted.  CR 137.  Sheikh now moves that this case be dismissed.  CR 145.

### B.    The COVID-19 Pandemic

The United States has previously cited the court's General Orders relating to the COVID-19 pandemic.  On March 17, 2020, the Court entered General Order 611, which suspended all jury trials in the Eastern District of California scheduled to commence before May 1, 2020.  This General Order was entered to address public health concerns related to COVID-19.  On March 18, 2020, General Order 612 also issued.  Pursuant to that Order, all of the courthouses in the Eastern District of California were closed to the public.  The Order only allowed persons with official court business or a healthy building tenant with official business on behalf of a tenant agency into the courthouse.  The Order further provided, among other things, that in criminal cases before district court judges, the assigned district court judge may continue matters after May 1, 2020, excluding time under the Speedy Trial Act with reference to Order 611 with additional findings to support the exclusion in the judge's discretion.  Clarification to Order 612 subsequently defined "persons having official court business" and it explained how media may still gain telephonic access to a particular court proceeding on behalf of the public.  On April 17, 2020, this Court issued General Order 617, which suspends all jury trials in the

Eastern District of California scheduled to commence before June 15, 2020, and allows district judges to continue all criminal matters to a date after June 1.

On April 16, 2020, the Ninth Circuit adopted *In re Approval of the Judicial Emergency in the Eastern District of California*, 956 F.3d 1175 (2020), which concluded that the "emergency situation in the Eastern District of California has required the District and the Judicial Council of the Ninth Circuit to invoke the provisions of 18 U.S.C. § 3174(c) to extend the STA time periods for bringing defendants to trial."  Pursuant to General Order 611, this Court's declaration of judicial emergency under 18 U.S.C. § 3174, and the Ninth Circuit Judicial Council's Order of April 16, 2020 continuing this Court's judicial emergency, this Court has allowed district judges to continue all criminal matters to a date after May 2, 2021.

On May 13, 2020, this Court issued General Order 618, which suspends all jury trials in the Eastern District of California "until further notice."  A judge "may order case-by-case exceptions" at the discretion of that judge "or upon the request of counsel, after consultation with counsel and the Clerk of the Court to the extent such an order will impact court staff and operations."  General Order 618, ¶ 7 (E.D. Cal. May 13, 2020).

## II.   DISCUSSION

### A.   The Speedy Trial Clock Has Not Expired

Sheikh contends that between 74 and 77 days of non-excludable time have passed since the defendant's indictment in June 2018, and identifies the following periods of non-excludable time:

- A 26-day period between December 18, 2019 (when the first motions hearing concluded) and January 13, 2020 (when Sheikh filed her *Franks* motion) (CR 145 at 5-6);[1]

---

[1] While not dispositive for purposes of this motion, the government notes that the defendant appears to have overestimated by one day the length of at least one of the alleged non-excludable time periods.  "[I]f a pretrial motion is of the sort that requires a hearing, a district court must exclude the following periods of delay: (i) the period from the date the motion was filed to the conclusion of the hearing . . . ."  *United States v. Medina*, 524 F.3d 974, 979 (9th Cir. 2008) (citing *Henderson v. United States*, 476 U.S. 321, 329-30 (1986)); *United States v. Daychild*, 357 F.3d 1082, 1093 (9th Cir. 2004) ("[T]he day a party files a motion is excludable for speedy trial purposes.").  With respect to the first time period alleged by the defendant, December 18, 2019 is excludable, as it was the "conclusion of the hearing" on the defendant's suppression motions, and January 13, 2020 also is excludable, because the

- An 8-day period between March 2, 2020 (when the government responded to Sheikh's February 24, 2020 discovery motion) and March 10, 2020 (when Sheikh filed her *Brady* motion as part of her reply to the government's response to her discovery motion) (CR 145 at 6);

- An 8-day period between March 16, 2020 (when this Court set the briefing schedule for Sheikh's *Brady* motion) and March 24, 2020 (when Sheikh re-filed her *Brady* motion according to this Court's briefing schedule) (CR 145 at 7); and

- A 35-day period between June 3, 2020 (when this Court denied Sheikh's *Brady* motion) and July 8, 2020 (when Sheikh re-filed her *Franks* motion), notwithstanding this Court's order (CR 108) setting the *Franks* hearing for August 11, 2020, and excluding time between June 22, 2020 through August 11, 2020.  (CR 145 at 7).

As a threshold matter, it must be pointed out that Sheikh has identified 74 or 77 days of non-excludable time.  Therefore, if this Court determines that even one of the defendant's time periods is actually excludable, the speedy trial clock has not run, and Sheikh's motion must be denied.

### 1.   The Time Period Between December 18, 2019 (or January 13, 2020) and August 21, 2020 is Excludable

First, the entire time period in which Sheikh's *Franks* motion remained pending—from December 18, 2019 (or January 13, 2020, when Sheikh formally filed her *Franks* motion)[2] and August

---

defendant filed her *Franks* motion on that date, leaving 25 days of excludable time.

[2] The defendant's oral invocation of *Franks* during the December 18, 2019 hearing may reasonably be understood as an oral *Franks* motion by the defendant.  A motion made orally during a hearing is a motion.  Fed. R. Crim. P. 47(b).  Following the defendant's assertion of a *Franks* challenge during the hearing, this Court, in conference with the parties, set a separate briefing schedule and a hearing date specific to "the *Franks* issue." (R/T 408:17-412:12).  While the Ninth Circuit has not reached the question, every Circuit Court that has done so has held that oral motions may trigger exclusion under 18 U.S.C. 3161(h)(1)(D).  *See United States v. Hughes*, 840 F.3d 1368, 1378 (11th Cir. 2016) ("Nor does the oral nature of the motion affect the rule's applicability.  Indeed, we have specifically held that 'oral pretrial

21, 2020 (when the Court denied the motion)—is excludable under 18 U.S.C. § 3161(h)(1)(D).  The Speedy Trial Act provides that time automatically "shall be excluded" for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, [the] motion."  18 U.S.C. § 3161(h), (h)(1)(D); *United States v. Medina*, 524 F.3d 974, 978 (9th Cir. 2008).  "[I]n the ordinary case all pretrial delay that coincides with the pendency of a motion will occur as a result of that motion (because the district court will ordinarily hold off the trial date until it decides the motion)."  *United States v. Clymer*, 25 F.3d 824, 830 (9th Cir. 1994).  If a pretrial motion requires a hearing, a district court must exclude the period the date was filed to the conclusion of the hearing, as well as the period from the conclusion of the hearing until the court rules on the motion, but no more than 30 days.  *Medina*, 524 F.3d at 979 (citing *Henderson v. United States*, 476 U.S. at 329-30, 332 (1986)).  "In general, the district court must exclude these periods of delay whether or not the delay was reasonably necessary."  *Id.* at 979.

Here, the defendant cannot reasonably contend that her motion was "no longer pending" during this period.  Rather, this Court's orders make clear that the motion *remained to be decided prior to the trial date.  See, e.g.,* CR 88 (at February 25, 2020 hearing, "Court orders supplemental briefing re

---

motions made on the record' trigger pretrial-motion delay under the Act."); *United States v. Stubblefield*, 643 F.3d 291, 294-95 (D.C. Cir. 2011) (finding excludable time ran from government's oral motion); *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 368 (5th Cir. 2010) ("We see no reason why an oral motion would not trigger the excludable delay contemplated by § 3161(h)(1)(D). . . . when an oral pretrial motion is made on the record with both parties present, it is 'filed' just like a written motion for purposes of § 3161(h)(1)(D)."); *United States v. Mallett*, 751 F.3d 907, 913 (8th Cir. 2014) ("A motion can be 'express or implied, formal or informal," . . . we do not require a written motion formally filed with the court." (internal citation omitted)); *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) ("[E]ven an oral motion is sufficient to invoke the time exclusion provided by the Speedy Trial Act." (internal quotation omitted); *U.S. v. Noone*, 913 F.2d 20, 27 n.11 (1st Cir. 1990) (rejecting "formalistic contention that only a written motion can activate the exclusionary provisions of subparagraph (h)(1)(F)").  The government's brief does not address this question, given that the remainder of the time periods identified by the defendant are excludable, and the speedy trial clock has not run.

*Franks*, *Brady*, and Discovery as follows . . . . [t]he Court will set a further briefing schedule on the *Franks* and *Brady* issues [following briefing concerning discovery issues]); CR 104 at 15 ("Counsel shall work with the Clerk to set up a schedule for briefing and the hearing of defendant's *Franks* motion."). This Court's order of June 22, 2020, which found excludable time from the date of the order to the date of the *Franks* hearing, recognized that Sheikh's *Franks* motion remained pending. CR 108. Significantly, this Court, *in advance of* the parties' additional briefing, found that "defendant has met her initial burden to justify an evidentiary hearing," ordered further briefing, and set a date for an evidentiary hearing.[3] *Id.* That the Court reached this determination shows that the *Franks* motion remained before the Court.

The delay between the filing and deciding of Sheikh's *Franks* motion was not unreasonable, but more fundamentally, the Speedy Trial Act does not permit an attack on the "reasonableness" of this kind of excludable delay. Rather, the Ninth Circuit has made clear that "[w]hen delay results from the filing of a pretrial motion, § 3161(h)(1)(F) provides an exclusion for "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is reasonably necessary." *United States v. King*, 483 F.3d 969, 975 (9th Cir. 2007) (internal quotation and citation omitted); *United States v. Lewis*, 349 F.3d 1116, 1120 (9th Cir. 2003) ("The Supreme Court has made very clear that Section 3161(h)(1)(F) does not require that the delay be reasonable to be excluded."). "Where delay in commencing a trial results from the pendency of a motion (as when the district court holds off trial pending a hearing on the motion), the delay will automatically be excluded from the Speedy Trial Act calculation, no matter how unreasonable or unnecessary that delay might seem." *United States v. Vo*, 413 F.3d 1010, 1014 (9th Cir. 2005) (quoting *United States v. Clymer*, 25

---

[3] While the defendant does not contest that the speedy trial clock stopped running on July 8, 2020, when she filed her second *Franks* brief pursuant to the schedule set in this Court's June 22, 2020 order, she argues that this Court's order improperly excluded time for the 16 days between June 22, 2020 and July 8, 2020. While the government contends that time ought to be excluded from the oral *Franks* motion on December 18, 2019, it notes that, if time only is excluded pursuant to the Court's June 22, 2020 order (which added 16 days to the speedy trial clock), the speedy trial period has not lapsed.

F.3d 824, 830 (9th Cir. 1994)).  Regardless of whether Sheikh believes the delay between her *Franks* motion and its August 21, 2020 denial was "reasonable," the tolling provisions of the Speedy Trial Act apply, and the time period is excludable.

> **2.**     **The Time Periods Between March 2-10, 2020, and Between March 16-24, 2020 Also are Excludable Because Other Motions by the Defendant Were Pending at that Time**

While the time periods between March 2-10, 2020 and March 16-24, 2020 are excludable because of Sheikh's then-pending *Franks* motion, they also are excludable because of Sheikh's then-pending discovery and *Brady* motions.  On February 24, 2020, the defendant filed her motion for discovery (CR 87), to which the government replied on March 2, 2020 (CR 90).  On March 10, 2020, the defendant, in one document, both *replied* to the government's response, and *moved to dismiss* on *Brady* and speedy trial grounds.  (CR 92).  At a hearing on March 16, 2020, this Court ruled that Sheikh's discovery motion was moot, and set a briefing schedule for the defendant's *Brady* motion, which the defendant again filed on March 24, 2020.

> **a.**     **The Time Period Between March 2-10, 2020 is Excludable Because the Defendant's Discovery Motion Was Pending Until March 16, 2020, the Date of the Hearing**

The defendant, relying on *United States v. Hardeman*, 249 F.3d 826 (9th Cir. 2000), insists that the government's March 2, 2020 response to the defendant's discovery motion restarted the speedy trial clock until March 10, 2020, because it "[left] no issue for the Court to decide."  Sheikh both misapplies *Hardemann* and misconstrues the record.  In *Hardeman*, the Ninth Circuit found that a time period was not properly excluded when, at the conclusion of a pretrial status conference, there remained an unidentified discovery dispute between the parties that "may [have been] a nonissue," but "*no identifiable motion remained pending*."  *Id.* at 827 (emphasis added).  In order for the Speedy Trial Act's automatic exclusions to apply, "there should be some identifiable pending motion apparent from a review of the district court docket."  Here, there *was* an "identifiable pending motion":  Sheikh's

discovery motion (CR 87).  Moreover, Sheikh's March 10, 2020 reply makes clear that her discovery

motion remained in contention until the March 16, 2020 hearing.  In her reply, the defendant did not

concede that her motion was moot.  Instead, she highlighted "stipulated and outstanding discovery

issues," challenged the sufficiency of the government's response, and reiterated several discovery

demands.  *See* CR 92 at 25-29 (seeking, among other things, additional agent notes, operational plans,

and review of grand jury transcripts).  As there still was something for the Court to decide—that, is,

whether the government had fairly met Sheikh's discovery demands—the discovery motion remained

pending until the March 16, 2020 hearing.  (CR 94).

> **b.**      **The Time Period Between March 16-24, 2020 is Excludable Because
> the Defendant's *Brady* Motion Had Been Pending Since March 10,
> 2020**

As discussed above, on March 10, 2020, Sheikh, in her reply to the government's response to her

discovery motion, moved for dismissal under *Brady*.  (CR 92).  Sheikh does not dispute that this filing

stopped the speedy trial clock.  The defendant argues that the Court's setting of a briefing schedule for

her already-filed motion restarted the clock, but the Speedy Trial Act contains no such exception, and

the defendant cites no authority showing one.  *See* 18 U.S.C. § 3161(h)(1)(D); *United States v. Vo*, 413

F.3d 1010, 1015 (9th Cir. 2005) ("Except in the unusual case, such as [where a motion is postponed until

after trial], a pretrial motion triggers an automatic exclusion." (internal citation and quotation omitted)).

The clock stopped when Sheikh placed her *Brady* motion before the Court in her March 10 filing, and,

because Sheikh did not withdraw her motion, remained stopped until this Court denied it on June 3,

2020.  (CR 104).

All of the time identified by Sheikh is excludable because of Sheikh's then-pending *Franks*

motion, leaving ample time remaining on the speedy trial clock.  Even if that were not the case, the time

between March 2, 2020 and March 24, 2020 is excludable because of Sheikh's then-pending discovery

and *Brady* motions, leaving at least 9 days remaining on the speedy trial clock—far less time, but

UNITED STATES' OPP. TO DEF.'S MOT. TO DISMISS
UNITED STATES V. SHEIKH, 2:18-CR-00119 WBS

enough to avoid a violation of the Speedy Trial Act. Sheikh's motion should be denied.

**B.   The Time Period between October 7, 2019 and November 25, 2019 Was Properly Excluded, Because the Defendant's Pretrial Motions Were Still Pending**

In the alternative, Sheikh argues for the first time that a 49-day delay that occurred during the pendency of the suppression hearing, from October 7, 2019 to November 25, 2019, violated her statutory and constitutional speedy trial rights, because it was "unjustified." (CR 145 at 8). Specifically, Sheikh objects now (she did not at the time) that the delay was caused by the unavailability of lead counsel for the government. *Id.*

There is no dispute that the delay took place while the defendant's suppression motions were pending. Defendant's challenge is to the *reasonableness* of the delay. However, as discussed before, and as expressly held by the Ninth Circuit, the pertinent portion of the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(D), imposes no "reasonableness" requirement. "The Court has expressly declined to create an exception to this rule for situations where the delay was not 'reasonably necessary.'" *Medina*, 524 F.3d at 983.

Attempting to manufacture an exception where none applies, Sheikh relies on *United States v. Lloyd*, 125 F.3d 1263, 1271 (9th Cir. 1997), a case that addresses a *different* portion of the Speedy Trial Act, and addresses different circumstances than those presented here. In *Lloyd*, the district court, with no pretrial motion apparently pending, granted an "ends of justice" continuance under 18 U.S.C. § 3161(h)(8) in order to assure continuity of counsel for both the defendant and the government in the defendant's retrial. *Lloyd*, 125 F.3d at 1267-68. Here, no "ends of justice" continuance was necessary in the pretrial motion phase: the speedy trial clock already was automatically stopped pursuant to 18 U.S.C. § 3161(h)(1)(D). No findings were made because none were required.

In sum, all 70 days remain on the speedy trial clock (or at least 44 if the Court only counts from the time of the formal filing of the motion). The remainder of the time in this case was excludable due to either requests by the defendant based on defense counsel preparation or pre-trial motions filed by the

defendant.

## C. This Court Already Has Ruled that the Defendant's Constitutional Speedy Trial Rights Have Not Been Violated

Next, Sheikh resurrects an argument previously rejected by this Court, urging dismissal on Sixth Amendment grounds. As this Court noted in its order denying the defendant's prior motion to dismiss, "'it will be unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'" CR 104 at 14 n.12 (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)). This Court's recent rejection of the defendant's Sixth Amendment arguments is the law of the case, and Sheikh has made no showing in support of reconsideration. *See* CR 104 at 14; *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) ("Issues that a district court determines during pretrial motions become law of the case."); *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("The law of the case doctrine ordinarily precludes reconsideration of a previously decided issue.").

In any event, the facts of this case do not support a finding of a constitutional Speedy Trial violation. U.S. Const. Amend. VI. "To trigger speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed a line 'dividing ordinary from presumptively prejudicial delay.'" *United States v. Mallett*, 751 F.3d 907, 913 (8th Cir. 2014). The Court applies the four factors articulated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of delay; (2) the reason for delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the defendant suffered any prejudice.

First, more than two years have elapsed since Sheikh's indictment, and it will be several months or more before a 2021 trial. *United States v. Jeanetta*, 533 F.3d 651, 656 (8th Cir.2008) ("A delay approaching one year may meet the threshold for presumptively prejudicial delay."). This is the only factor that weighs in Sheikh's favor.

Second, the Court considers the reasons for the delay and evaluates whether the government or the defendant is more to blame. "[D]ifferent weights [are] assigned to different reasons" for the delay. *Barker*, 407 U.S. at 530.  The reasons for each period of delay are considered in the aggregate, with consideration given to the effect earlier delays may have had on later delays.  Here, the delay in setting a trial date has been due to the pendency of defense-obtained continuances by Sheikh's first counsel and defense-filed pretrial motions, and not any deliberate attempt to delay trial by the government.  *United States v. Drake*, 543 F.3d 1080 (9th Cir. 2008) ("the record here does not disclose any deliberate attempt to delay the trial in order to hamper the defense") (internal quotation omitted).

Third, the Court examines whether and how defendants asserted their right to a speedy trial and, in particular, the "frequency and force" with which the defendants objected to delay. *Barker*, 407 U.S. at 529, 532.  Courts tend to view assertions of speedy trial rights skeptically where defendants contribute to delay and/or raise the issue for the first time in a motion to dismiss. *See, e.g., id*. at 534-35 (concluding "Barker did not want a speedy trial ... While he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried.").  Here, Sheikh raised the question of a speedy trial for the first time in a motion to dismiss.  CR 95.  She recently briefly stated that she wanted an October 13, 2020 trial, but quickly retracted that position when the government joined in her request.  CR 129, 137.

Finally, under *Barker*, "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause."  *Reed v. Farley*, 512 U.S. 339, 353 (1994). The prejudice prong seeks to protect three interests: avoidance of oppressive pretrial incarceration, minimizing anxiety and concern, and limiting the possibility that the defense will be impaired. *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532).  The most serious form of prejudice is the last.  *Drake*, 543 F.3d at 1086 (finding no showing that the delay impaired the defense, where "no witness died or disappeared; nothing in the record demonstrates that evidence shown to be helpful to the defense was lost").  Sheikh is not in

custody.  Sheikh's "anxiety and concern [are] no more than any criminal defendant experiences before trial." *Id.*  These factors considered, the defendant has suffered no deprivation of her Sixth Amendment right to a speedy trial.

The government specifically disputes Sheikh's contention that, but for the government's alleged misconduct, this case would have proceeded to trial before March 17, 2020, when the Eastern District entered the first of a series of COVID-related General Orders suspending scheduled jury trials.  At most, the disclosure of the agent handwritten notes contributed to the postponement of the February 25, 2020 *Franks* hearing—three weeks before the issuance of the first General Order.  However, as this Court noted in its order denying Sheikh's first motion to dismiss, Sheikh "is responsible for much of the delay based on her four requests to continue, two substitutions of counsel, and filing of several pre-trial motions." CR 104 at 14.  Indeed, Sheikh is responsible for nearly all of the delay in the 21-month period between June 2018 and March 2020.

As noted above, the grand jury indicted Sheikh on June 21, 2018.  On July 30, 2018, the defendant filed her first motion to continue.  CR 15.  The government did not object to this continuance. This Court continued the status hearing originally scheduled for August 6, 2018, to December 3, 2018. CR 16.  On January 15, 2019, the defendant filed her second motion to continue.  CR 18.  The government did not object to this continuance.  The Court continued the status conference and motions hearing scheduled for March 4, 2019, to May 20, 2019.  CR 19.  On April 8, 2019, Sheikh filed three pre-trial motions.  CR 28-30.  On April 18, 2019, Sheikh filed her third motion to continue.  CR 31. The government did not object to this continuance.  This Court continued the status conference and motions hearing scheduled for May 20, 2019, to June 24, 2019.  CR 33.  At the June 24th hearing, this Court scheduled an evidentiary hearing for the defendant's motions to suppress for July 29, 2019.  CR 53.  On July 16, 2019, Sheikh filed a motion to substitute her retained counsel, CR 57, which this Court granted on July 18, 2019.  CR 58.  On July 18, 2019, the defendant filed her fourth motion to continue.  CR 59. On July 29, 2019, the Court continued the motions hearing to September 30, 2019.  CR 63.  The motions hearing took place over three days on September 30, December 17, and December 18, 2019.  CR 69, 77, 79.  These filings, taken together, accounts for 18 of the 21 months between June 2018 and March 2020.

Sheikh invites this Court to speculate that, had she received the agent handwritten notes in July 2018, when the bulk of the government's discovery was produced, she would have filed her *Franks* motion in April 2019, along with the rest of her pretrial motions, which then would have been decided no later than December 18, 2019. CR 145 at 11-12. However, Sheikh was in possession of materials—the numerous reports of investigation relied upon—that formed the initial basis of her *Franks* motion as early as July 2018. Nonetheless, Sheikh acknowledges that she did not "truly appreciate the *Franks* issue" until "the December 2019 suppression hearing." CR 145 at 11. Only at the December 2019 hearing, and in Sheikh's January 13, 2020 *Franks* motion, did Sheikh first allege inconsistences between these already-produced materials and the warrant. *See, e.g.*, R/T December 18, 2020 at 352:14-354:9, 359:13-22, 363:3-364:1; CR 84 at 7-11. It seems at least as likely as not that, even if the government had turned over all handwritten notes in July 2018, Sheikh would not have raised a *Franks* challenge until the December 18, 2019 hearing.

Regardless, it is unlikely that, even if the *Franks* issue had been decided in December 2019, this case would have proceeded to trial before March 17, 2020. No pretrial conference was set. No request for available trial dates had been made. As this Court noted in its order denying Sheikh's first motion to dismiss, the defendant "did not assert her speedy trial right" until March 24, 2020—after the start of the pandemic in California. *See* CR 104 at 14. Indeed, defense counsel has only within the past month attempted to review the evidence gathered during the July 9, 2013 search warrant, despite its having been made available to the defendant for over two years (and such availability communicated to the defendant in multiple discovery letters).

### D.   If Sheikh Does Not Want to Proceed to Trial, this Court Should Grant an Ends-of-Justice Continuance

Sheikh has changed her position on whether she wishes to proceed to trial at least five times within the last month. Initially, on August 26, 2020, Sheikh would not agree to facts that would support the exclusion of time, causing the United States to file a motion for an exclusion of time. CR 123. Two days later, on August 28, 2020, Sheikh stipulated to an exclusion of time until September 23, 2020, citing the need for defense counsel preparation. CR 124. The Court ordered the time exclusion. CR 128. Four days after that, Sheikh filed a motion seeking a Speedy Trial, requesting a start date of

October 13, 2020.  CR 129.  After further proceedings, ten days later, Sheikh modified her position, stating that "it appears she cannot" be "brought to trial in a safe manner," citing concerns related to COVID-19.  CR 137 pg. 2.  In her most recent pleading, Sheikh once again states that "[d]efense counsel and Dr. Sheikh are also ready to go to trial."  CR 145 pg. 14.  Sheikh adds that she "desperately wants to go to trial without delay."  CR 145 pg. 15.

It is clear on this record that what Sheikh seeks is dismissal on Speedy Trial grounds, without confronting the threshold question of whether she wishes to proceed to trial or not.  "Either [defense counsel] must agree that the continuance granted for her benefit be excluded from STA consideration, or she must object to the continuance.  To permit defense counsel to have both the continuance and the time included in the STA calculus is impermissible."  *United States v. Scantleberry-Frank*, 158 F.3d 612, 616 (1st Cir. 1998).  Here, Sheikh is objecting to the continuance sought by the government.  CR 137 pg. 3 ("Dr. Sheikh thus requests that the Court deny the government's request for a continuance.").  But, at the same time, Sheikh agrees with the core facts that would support a time exclusion: she cites the length of trial (two to three weeks), the safety risks to all of the participants, including the jurors, the Court, the attorneys, the witnesses, and other participants, the danger of convening in enclosed spaces, and the difficulty of assembling outdoors in light of the poor air quality due to wildfires.  CR 137 pg. 1-2.

The Court has discretion to grant an ends of justice continuance pursuant to section 3161(h)(7)(A).  Section 3161(h)(7)(A) is properly invoked in the wake of unforeseeable, emergency circumstances.  *See, e.g., Furlow v. United States*, 644 F.2d 764, 768 (9th Cir. 1981) (upholding a district court's use of an ends-of-justice continuance to exclude a month-long delay following the eruption of Mt. St. Helens); *United States v. Scott*, 245 Fed. App'x 391, 394 (5th Cir. 2007) (upholding a district court's use of an ends-of-justice continuance following Hurricane Katrina); *United States v. Sánchez-Senda*, No. 2:17-cr-00529, 2018 WL 1737615, at *1 (D. P.R. 2018) (excluding time under

Section 3161(h)(7) following Hurricane María); *United States v. García-Báez*, No. 16-cr-00691, 2019 WL 2553621, at *1 (D. P.R. 2019) (same); *United States v. Correa*, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (excluding time under Section 3161(h)(7) following the 9/11 terrorist attacks).

Regardless of who seeks the continuance, the Court must satisfy itself of each of section 3161(h)(7)'s requirements before granting the motion. After independently considering factors listed in section 3161(h)(7)(B), "among others," a judge must determine whether "the ends of justice served [by granting a continuance" outweigh "the best interest of the public and the defendant in the speedy trial." 18 U.S.C. § 3161(h)(7)(A). Because section 3161(h)(7)(A) requires this balancing to be case-specific, the Court cannot find that considerations surrounding COVID-19's impact on public safety and this Court's operations will, in every case, outweigh the best interest of the defendant and the public in a speedy trial. The parties agree on this point. CR 145 pg. 12-13.

### 1.   Impossibility

This Court must first consider whether its failure to grant an ends-of justice continuance "would be likely to make a continuation of [the] proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(B)(i). This factor weighs heavily in favor of granting a continuance in this case. As pointed out in argument just last week, the number of COVID-19 cases in California have risen by almost 100,000 additional cases in the brief, three-week timeframe that the government's motion to exclude time has been pending. *Compare* CR 123 pg. 4 (citing 673,095 cases in California as of August 26, 2020); *with* https://covid19.ca.gov/ (stating 784,324 cases as of September 22, 2020). Notwithstanding the mitigation efforts, the number of cases continues to rise statewide.

The particular challenges of gathering for a trial were well-described by the court in the Eastern District of New York:

> Some aspects of the pandemic risks have been managed through adopting and deploying the tools used by businesses and other governmental organizations: strict adoption of face coverings and social distancing, temperature screening, individual reporting requirements, hand sanitizing, enhanced cleaning schedules, examination and management of HVAC ventilation systems, appropriate deployment of audio and video technologies, etc. These efforts, costly in terms of

time, energy and money, have helped the Court administer a broad range of proceedings, and some can help facilitate a safe trial.

Jury trials, particularly in criminal cases, present singular obstacles: effective credibility evaluation (and perhaps the Confrontation Clause) requires that witnesses testify without traditional masks; and the sheer number of individuals, often from far-flung locations, involved at jury selection and trial, make the problem of conducting a trial with reasonable safeguards exquisitely difficult.

Trial requisites are, in some instances, contraindicated by current knowledge of the disease and the mechanisms by which it spreads, which has been developing and changing over the past months. Experts advise that two principal mechanisms for the transmission of the disease involve large droplets (which fall to the ground relatively quickly) and smaller aerosol particulates (which may float for hours) which are emitted by infected individuals, particularly when speaking. These risks can be substantially reduced by wearing face coverings and, to a lesser extent, plexiglass face shields. Current thinking suggests that the number of individuals involved in a gathering and the length of the interaction serve as multipliers of infection risk, while interpersonal distance between individuals and the use of personal protective equipment can help reduce that risk. Thus, safeguards appropriate for more common interactions — like a relatively quick retail transaction — may prove inadequate for a lengthy criminal trial. And testimony by witnesses without masks for hours at a time — the primary activity at a trial — presents unique challenges.

One such problem is space limitations. The Court has spent considerable time considering courtroom space utilization and allocations for social distancing during testimonial proceedings, and conferred with other judges concerning experience with other proceedings, such as grand jury selection. When compared to many indoor spaces, courtrooms could be considered large, if not gargantuan. But the space requirements dictated by social distancing prove brutally demanding. The Central Islip Courthouse features generously-sized facilities, including fairly large standard courtrooms and a grand ceremonial courtroom. However, several online social distancing calculators suggest that, discounting any space consumed by immovable fixtures, generalized estimates of safe occupancy range from 16 to 20 individuals for a standard courtroom and 23 to 30 individuals for the ceremonial courtroom. Thus, accommodating a short trial involving only a single defendant, a 12-person jury with few alternates, small legal teams and a minimal court staff presents few difficulties. However, with a longer trial like this one, involving, necessarily, more alternate jurors and larger legal teams, the situation becomes far more difficult.8

Creating even this level of safe occupancy requires rethinking of the use of space in the courtroom, with, for example, jurors seated in the gallery, and either moving the witness stand based upon HVAC airflow or having witnesses testifying from the juror box. Additional time must be factored into proceedings to allow for longer breaks to allow surface cleaning between witnesses. And all of these estimates necessarily involve providing legally-required public access through an alternative means, such as an overflow video courtroom or a public audio feed. None of this is meant to suggest that, in certain cases, a jury trial cannot be held. One can reasonably estimate, based on current work and information, that the district may be in a position to conduct jury proceedings in other cases quite soon, particularly in cases involving fewer participants and exhibits, shorter time frames and, most especially, a defendant without underlying health concerns. But, again, in this case, under these circumstances, the timeframe for commencing and completing a jury trial remains quite uncertain.

*United States v. Cohn*, No. 19-CR-097 (GRB), 2020 WL 5050945, at *3–5 (E.D.N.Y. Aug. 26, 2020)

(internal citations omitted).

This trial is estimated by Sheikh to last 2-3 weeks; a substantial length of time.  It will require the use of interpreters.  The often poor air quality will very likely make an outdoor trial not feasible in the coming weeks during wildfire season.  Jurors travel to Sacramento several hours by car or train in the geographically large Eastern District to participate in jury selection and trial.  There are likely to be many documentary, photographic, audio and video exhibits.  Essential witnesses in this trial will travel from as far away as Mexico to participate.  Just as in *Cohn*, there may be short, straightforward jury trials that are feasible in the Eastern District in the coming months, but the factual record supports a finding that it is not possible to conduct this trial under present circumstances, in particular given Sheikh's unwillingness to proceed in the face of the safety risks.

## 2.    Continuity of Counsel

Section 3161(h)(B)(iv) requires the Court to consider counsels' ability to prepare and present their case, even when the case is not so complex that it bears independent consideration under the "complexity" factor.  Under this factor, judges must ask whether denying an ends-of-justice continuance would (1) deny defendant reasonable time to obtain counsel, (2) "unreasonably deny" either party continuity of counsel, or (3) deny either parties' counsel "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv).

Sheikh states that this factor is not relevant in this case, but it is.  An additional factor that this Court must consider in this case is that Sheikh's counsel of choice is not local and that he has concerns related to travel.  Sheikh's counsel has indicated a willingness to travel to Sacramento once, for trial, but not more.  This limitation will affect the concerns the Court raised at argument, to include the possibility of a mistrial due to an infection mid-trial, or any delay in trial due to any number of the unfortunate events that occasionally occur: automobile accidents, other health issues, family situations that cause a juror or participant to become unavailable.  One member of the prosecution team from the Civil Rights

Division will also travel from out-of-town for trial, and would similarly be affected by any such unforeseen circumstances.[4]

### 3.    Other Factors

Finally, section 3161(h)(7)(B) instructs that courts must consider the enumerated factors, "among others."  The Ninth Circuit has held that the "among others" includes considering whether the parties "actually want[ed] and need[ed] a continuance, how long a delay [was] actually required, [and] what adjustments [could have been] made with respect to the trial calendars [to avoid a continuance]." *United States v. Lloyd*, 125 F.3d 1263,1269 (9th Cir. 1997).

In *United States v. Smith*, No. 2:19-CR-00213, 2020 WL 2541713, at *5–6 (E.D. Cal. May 19, 2020), the Court held that under present circumstances, the Court should consider in the "among others" category:  whether the defendant is detained pending trial; whether COVID-19 is present in the facility where the defendant is detained (and if so, whether the defendant belongs to a population that is particularly susceptible to the virus); whether the court can safely conduct a jury trial; whether the defendant has invoked his speedy trial rights since the case's inception; how long the defendant has been detained; whether the defendant is charged with a violent crime or has a history of violent crime; whether the defendant was denied bail solely because of the risk of nonappearance; and whether there is a specific reason to suspect recidivism if charges are dismissed.  *See also United States v. McKnight*, No. CR18-16 TSZ, 2020 WL 1872412, at *4 (W.D. Wash. Apr. 15, 2020) (excluding time where "a continuance of the trial in this matter is necessitated by the Court's inability to obtain an adequate spectrum of jurors and the effect of the current public health recommendations on the availability of witnesses, counsel, and Court staff to be present in the courtroom"); *United States v. Kemprud*, No.

---

[4] For example, in September 2020, following a trial convened in the Eastern District of Kentucky, involving other counsel from the Civil Rights Division, multiple members of the prosecution team as well as several court personnel have been diagnosed with COVID-19, despite rigorous precautions by the parties and court personnel.  *See United States v. Bixler*, Case No. 5:18-cr-00068 (E.D. Ky.).

2:19-CR-00218-MCE, 2020 WL 2836784, at *3–4 (E.D. Cal. June 1, 2020) (granting the government's motion to exclude time where defendant declined to stipulate where the government's expert witness for its case-in-chief would have to travel by airplane from Southern California, and his wife is currently undergoing chemotherapy; four government witnesses serve as health care providers in emergency or family medicine and have actively been treating sick patients; and five government witnesses are considered to be at high risk for serious illness from COVID-19 due to age or physical infirmity).

Sheikh is not in custody, has not invoked her speedy trial rights from the inception of the case, and strongly maintains that the Court cannot safely hold a jury trial. These factors, combined with the choice of counsel concern and the unique challenges to bringing this particular case to trial in the Eastern District at this time, all weigh in favor of a finding that the ends of justice served by a continuance outweigh the best interest of the public and defendant in a speedy trial, and that the failure to grant the continuance would result in a miscarriage of justice, given the emergence of COVID-19 in the Eastern District of California and beyond, and the necessary steps being taken to avoid further transmission of the virus. 18 U.S.C. § 3161(h)(7)(A). The Court should decline to find that there has been any violation of the Speedy Trial Act, and instead grant the United States' motion for a continuance on the facts of this case.

### E.    Any Dismissal Should Be Without Prejudice

The Court has broad discretion to determine whether any dismissal should be with or without prejudice. *United States v. Jordan*, 915 F.2d 563, 566 (9th Cir. 1990). The Act requires the court to consider three factors, "among others," in deciding whether dismissal should be with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2); *see also United States v. Clymer*, 25 F.3d 824, 831 (9th Cir.1994); *United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010). "The choice of whether to

dismiss with or without prejudice depends on a careful application of the statutorily enumerated factors to the particular case; there is no presumption in favor of either sanction." *Clymer*, 25 F.3d at 831.

The first factor, the seriousness of the offense, weighs in favor of any dismissal being without prejudice.  Sheikh is charged with two counts of forced labor, two counts of alien harboring for financial gain, obstruction of a forced labor investigation, and false statements.  18 U.S.C. § 1590(a) (statutory maximum 20 years per count); 18 U.S.C § 1324(a)(1)(A)(iii) (statutory maximum 10 years per count); 18 U.S.C. § 1590(b) (statutory maximum 10 years); 18 U.S.C. § 1001 (statutory maximum 5 years); *see, e.g., Lewis*, 611 F.3d at 1180 (finding offenses serious based in large part on the maximum penalties); *United States v. Mancia-Perez*, 331 F.3d 464, 468 (5th Cir. 2003) (offense was serious within the meaning of Section 3162(a)(2) where defendant faced a possible twenty year sentence).  Sheikh is alleged to have held two victims in coercive circumstances for a period of months for one victim and years for the other victim, threatening deportation, withholding earned wages, and prohibiting their departure from her property, where they resided with inadequate food and poor working conditions.  Sheikh is alleged to have threatened to cut off the hand of one of the victims and referred to him using a slur that means "slave."  Though she may seek to dispute the factual allegations at trial, there should be no dispute that the offenses charged are serious.

The second factor, the facts and circumstances of the case leading to any potential dismissal, also weigh in favor of dismissal without prejudice.  The delays in proceeding to trial were almost entirely based on pretrial motions filed by the defendant.  The Court considers any actual prejudice to Sheikh in weighing this second factor.  *Clymer*, 25 F.3d at 832 (weighing actual prejudice to the defendant in the analysis of the second statutory factor).  The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of her ability to prepare for trial.  *United States v. Taylor*, 487 U.S. 326, 340 (1988).  Any non-excludable delay here was not so long as to damage Sheikh's ability to prepare for trial.  *Cf. Clymer*, 25 F.3d at 832 (where defendant suffered actual prejudice to his ability to

prepare for trial because the delay resulted in an inability to locate a key defense witness for trial).

Sheikh does not allege any specific prejudice; rather, she refers generally to "the possibility of memories being dimmed and loss of witnesses and evidence."  CR 145 pg. 12.  This possibility is not enough to establish actual prejudice.  Finally, the government has acted in good faith in defending against the various pretrial motions filed, while still attempting to facilitate a trial when that was what the defendant wanted.  *Lewis*, 611 F.3d at 1180.

The third statutory factor, the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, also weighs in favor of dismissal without prejudice.  This factor has been found to encompass three concerns: the defendant's right to a timely trial; the deterrent effect of a prejudicial dismissal on the government; and the public's interest in bringing the accused to trial.

*Mancia–Perez*, 331 F.3d at 469; *United States v. Medina*, 524 F.3d at 987.  When the charge is serious, as it is here, the third statutory factor weighs in favor of dismissal with prejudice only when there has been a correspondingly serious delay.  *Mancia–Perez*, 331 F.3d at 470.  Any delay in this case is not serious or severe and was caused by the defendant's filing pretrial motions and then changing direction while those motions were pending.  Dismissal without prejudice forces the government to obtain a new indictment if the government decides to reprosecute and it exposes the government to constraints under the statute of limitations.  *Taylor*, 487 U.S. at 342; *see also Zedner*, 126 S.Ct. at 1986–87 n. 5 (defendant may derive some benefit where an indictment is dismissed without prejudice for a Speedy Trial Act violation because, "[f]or example, the time and energy that the prosecution must expend in connection with obtaining a new indictment may be time and energy that the prosecution cannot devote to the preparation of its case"); *United States v. Blevins*, 142 F.3d 223, 226 (5th Cir.1998) (where government did not intentionally delay the proceedings, dismissal with prejudice for deterrent value would be inappropriate).  The public has a strong interest in bringing the accused to trial, especially given the

seriousness of the charges. After all, the Act "was designed with the public interest firmly in mind." *Zedner*, 126 S.Ct. at 1985–86.

For all of these reasons, any dismissal should be without prejudice.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that this Court deny the defendant's motion to dismiss the indictment.

Dated: September 23, 2020

McGREGOR SCOTT
United States Attorney

ERIC S. DREIBAND
Assistant Attorney General for Civil Rights

*s/ Audrey Hemesath & David Reese*
WILLIAM E. NOLAN
DAVID REESE
Trial Attorneys, Civil Rights Division
AUDREY HEMESATH
Assistant United States Attorney