Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
14742 Beach Blvd., Suite 410
La Mirada, California 90638
(213) 335-3935 | YMA@LawAlm.com

*Attorney for Defendant*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FIRDOS SHEIKH,<br><br>Defendant. | Case No. 2:18-CR-119-WBS-1<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATION**<br><br>Hearing Date: October 1, 2020<br>Hearing Time: 10:00 a.m.<br><br>Trial Date: TBD<br><br>Judge: Hon. William B. Shubb<br>Courtroom: Five (14th Floor) |

Defendant Firdos Sheikh, M.D. ("Defendant" or "Dr. Sheikh"), by and through her counsel of record Yasin M. Almadani, hereby files her reply in support of her motion to dismiss for speedy trial violation, which is based upon the attached memorandum of points and authorities, the files and records in this case, and further evidence and argument the Court may permit.

Dated: September 25, 2020

Respectfully submitted,

ALMADANI LAW

　　*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.
*Attorney for Defendant*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. THE EXPIRATION OF THE SPEEDY TRIAL CLOCK

In her motion, Dr. Sheikh demonstrated that the speedy trial clock expired because the government failed to obtain justifiable continuances for the time periods that no motions were pending. *United States v. Perez-Reveles*, 715 F.2d 1348, 1353 (9th Cir. 1983) (holding that the government failed to meet its responsibility for speedy trial enforcement). The government opposes the motion with a broad stroke is that no exclusion was required because there were motions pending. Speedy trial analysis is matter of technical specificity, however, and the government's broad-brush treatment is insufficient. The Ninth Circuit requires a meticulous analysis based on the record of when motions were actually pending and when they were not. Dr. Sheikh discusses the deficiencies in the government's opposition, beginning with a concise chart of the time periods in question.

| Period of Non-Excludable Time | Duration |
|---|---|
| Dec. 18, 2019 to Jan. 13, 2020 | 26 days |
| Mar. 2 to Mar. 10, 2020 | 8 days |
| Mar. 16 to Mar. 24, 2020 | 8 days |
| Jun. 3 to Jul. 8, 2020 | 35 days |
| Oct. 7 to Nov. 25, 2019 | 49 days |
| Total | 125 days |

### A. December 18, 2019 to January 13, 2020 (26 days)

This time period of 26 days is not excludable because no motion was before the Court during this period and there was no other basis for excludable time. At the December 18, 2019 hearing, the Defense demonstrated that a *Franks* hearing was merited, and the Court was inclined to grant the request based on what the Court had heard. The government, however, objected that the *Franks* issue was not properly before the Court and both parties agreed that the issue would require a separate motion, which Dr. Sheikh

1

Defendant's Reply re Motion to Dismiss for Speedy Trial Violation    Case No. 2:18-CR-119-WBS-1

agreed to file at a later date. (*See* R/T 12/18/2019 at 371.)[1] Hence, to the extent Dr. Sheikh had made an oral motion, she withdrew it by agreeing to file an entirely new motion. On January 13, 2020, Dr. Sheikh did just that—she filed a new motion, not a supplemental brief, properly bringing the issue before the Court on that date. (DE 84.)[2] No speedy trial time can be excluded for this period.

**B.     Dr. Sheikh's *Franks* Motion Filed on January 13, 2020 Was Formally Taken Off Calendar Due to the Government *Brady* Violation with Dr. Sheikh's Agreement**

On February 25, 2020, when the *Franks* hearing was scheduled, the Court learned that there had been a number of undisclosed *Brady* items bearing upon the *Franks* issue. The *Franks* motion was thus taken off calendar and the Court stated, "I hate to do this again, but I'll let you file <u>new</u> briefs on the *Franks* issue, and I'll ask that you put it all together in one place . . . We'll <u>start from scratch</u> on the *Franks* motion." (R/T 2/25/2020 at 26 (emphasis added).) Both the government and Dr. Sheikh agreed that this was the proper course of action.

The *Franks* motion was no longer before the Court because the discovery and *Brady* issues needed to be decided first. Indeed, by agreeing to <u>start from scratch</u>, Dr. Sheikh essentially agreed that her *Franks* motion would be withdrawn and filed at a later date, if necessary, after the resolution of discovery disputes and the issue of whether dismissal was appropriate under *Brady*. All parties understood that Dr. Sheikh would not need to file a *Franks* motion if the Court dismissed the case on the *Brady* violation. And, Dr. Sheikh filed new *Franks* motion only after the Court determined that the case would not be dismissed. (DE 110 filed after DE 104.) When Dr. Sheikh filed her new *Franks* motion, she did not file it as a supplemental brief. Rather, she filed it as an entirely new, stand-alone motion from scratch, as the Court had instructed. Even the government filed its opposition from scratch, not limiting its response to the new *Brady* material, but raising several new arguments that had not been previously raised. The Court allowed the government to do this because the Court had determined that the entire issue would be restarted from scratch. Finally, when the Court ruled on the *Franks* motion, it explicitly ruled on the new motion (identifying it by docket number as "DE 110") filed on July 8, 2020, and not referencing any previous motion, which was appropriate for the Court to do because all previous motions had been withdrawn and

---

[1] "R/T" denotes "record transcript" followed by the date of hearing and a page number.
[2] "DE" denotes "docket entry" followed by a docket control number.

taken off calendar. (DE 122 at 15.)

Based on the foregoing, there are only two time periods when a *Franks* motion was properly before the Court: (i) from January 13, 2020 (when Dr. Sheikh filed her very first brief on the issue) to February 25, 2020 (when the motion was taken off calendar with Dr. Sheikh's agreement to have it withdrawn and re-filed at a later date); and (ii) from July 8, 2020 (when Dr. Sheikh filed her new amended *Franks* motion) to on to August 21, 2020 (when the Court's ruled upon that particular motion). It would be contrary to law and very unfair to Defendant to exclude any other time on the basis of a *Franks* motion.

### C.    March 2 to March 10, 2020 (8 Days)

This time period of eight (8) days is not excludable because there was no discovery dispute for the Court to resolve during this period. No other motion was pending and thus there was no other basis for excludable time. On March 2, 2020, when the government responded to Dr. Sheikh's discovery motion by agreeing to produce the requested material, it *mooted* the discovery motion on the record, leaving nothing for the Court to decide, as the Court later confirmed. (DE 94 ("Upon conferring with counsel, the Court ORDERS defendant's Motion for Discovery MOOT.")). Under Ninth Circuit precedent, the speedy trial clock resumed on March 2, 2020, when the government's response mooted the discovery dispute, regardless of whether the discovery motion was technically pending awaiting the Court to formally deem it moot. *United States v. Hardeman*, 249 F.3d 826, 828 (9th Cir. 2000). The government incorrectly reads *Hardeman* in attempting to distinguish it, by stating that there was no identifiable motion pending in *Hardeman*. That is incorrect because the Ninth Circuit decided the case "assuming [that] the requests contained in the status memorandum constituted 'motions' for which time may be excluded under the Speedy Trial Act." *United States v. Hardeman*, 249 F.3d 826, 828 (9th Cir. 2000). After making this assumption, the Court rejected the same argument the government makes here and held that speedy trial time could *not* be excluded "if there remained nothing for the district court to decide." Similar to *Hardeman*, the government's response on March 2, 2020, in this case left nothing for the Court to decide. No speedy trial time can thus be excluded for this period.

### D.    March 16, 2020 to March 24, 2020 (8 Days)

This time period of eight (8) days is not excludable because no motion was before the Court during

3

*Defendant's Reply re Motion to Dismiss for Speedy Trial Violation      Case No. 2:18-CR-119-WBS-1*

this period and there was no other basis for excludable time. As way of background, the Defense had requested a *Brady*-based dismissal on March 10, 2020, as part of its discovery motion reply brief, but the request was not entertained by the Court. Rather, on March 16, 2020, the Court ordered a fresh briefing schedule for the parties to file new briefs on the *Brady* issue (DE 94). Dr. Sheikh agreed at the March 16, 2020 hearing that the *Brady* dismissal issue was not properly raised and that she would need to file a new motion to properly bring the issue before the Court; this was an outright acknowledgement that the issue would not be before the Court until Dr. Sheikh filed the motion as agreed; no formal withdrawal was thus necessary. Indeed, no party left the March 16, 2020 hearing under the belief that a *Brady* dismissal motion was before the Court at the time. Rather, all participants believed that Dr. Sheikh would file a new motion to raise the issue. Consistent with this understanding, Dr. Sheikh filed her *Brady* dismissal motion on March 24, 2020, as a new, stand-alone motion, not as a supplemental brief. (DE 95.) When the Court ruled on the motion, the Court specifically identified the motion by docket number as "DE 95," identifying no other filing. (DE 104 at 15.) No speedy trial time can be excluded for this period.

### E. June 3 to July 8, 2020 (35 Days)

This time period of 35 days is not excludable because no motion was before the Court during this period and there was no other basis for excludable time. When the Court issued its order on June 3, 2020, denying Dr. Sheikh's motion to dismiss for *Brady* violations, there was no motion pending before the Court. Pursuant to the Court's order on February 25, 2020, Dr. Sheikh was required to file a new *Franks* motion to bring the issue before the Court, as discussed in detail above. *Supra* section B. The government did not seek an ends-of-justice exclusion at this time. Therefore, the speedy trial clock resumed on June 3, 2020. The next action that stopped the clock was the filing of Dr. Sheikh's *Franks* motion on July 8, 2020. No speedy trial time can be excluded before this date.

Combining the four non-excludable periods results in 77 days of elapsed speedy trial time. The government is out of time and the case must be dismissed on this basis alone.

### F. October 7 to November 25, 2019 (49 Days)

This 49-day period is additionally excludable because it is inconsistent with the speedy trial guarantees under the Sixth Amendment and the Speedy Trial Act, as well as the Ninth Circuit's precedent

in *United States v. Lloyd*, 125 F.3d 1263, 1271 (9th Cir. 1997).

The record shows that this 49-day delay in the middle of the first suppression hearing was caused by the unavailability of one government lawyer, Mr. Nolan (whose presence, as it turned out, was not even required), who insisted on the lengthy delay even after the Court pointed out, "The Government is always available." The basis for the long delay was captured in two statements: (i) "this being a recusal case and coming from D.C., it's not as easy as asking an AUSA," and (ii) "*I* have cases indicted all over the country. So *my* schedule is a little bit difficult." (R/T 9/30/2019 at 99-100) (emphases added). There was no discussion about Mr. Reese's schedule, who was the other indicting prosecutor at the hearing with Mr. Nolan, or anyone else in his office or the U.S. Attorney's Office who could have handled the case.[3] Nothing in the record indicates that the Court, Dr. Sheikh, defense counsel, and Mr. Reese could not have been available to resume the hearing on October 7, 2019.

The general rule is that the time during the pendency of a motion is excludable, but this rule is not absolute in the Ninth Circuit. *See United States v. Medina*, 524 F.3d 974, 979 (9th Cir. 2008) (identifying two exceptions to the general rule). Because of the importance of the constitutional and statutory speedy trial protections, the Ninth Circuit frowns upon long delays for continuity of government counsel without appropriate findings. *Lloyd*, 125 F.3d ay 1271.

In its opposition, the government does not even begin to explain why the very lengthy delay of 49 days at Dr. Sheikh's expense was justified or consistent with *Lloyd*. The government does not dispute the hard fact that Mr. Nolan's presence was minimal and other well-qualified prosecutors were perfectly capable of handling the hearing. Rather, the government simply states that all time during the pendency of a motion is excludable, end of story. This position, however, is inconsistent with both the Constitution and the Speedy Trial Act because it gives the government the unfettered ability to delay a case without appropriate court supervision, which is a constitutionally inappropriate result that *Lloyd* rejects. Dr. Sheikh acknowledges that not all delays caused by government counsel's absence are inappropriate. Nevertheless, courts must balance the interests when the government requests an extended delay, whether it be for trial or in the middle of a motions hearing, in order to avoid running afoul of a significant

---

[3] As it turned out, Mr. Nolan was wrong about the recusal issue.

constitutional guarantee. After all, the defendant and public's interest in a speedy trial does not cease to exist during the pendency of a motion. There is nothing special about a government-created continuance during the pendency of a motion that precludes *Lloyd's* reasoning and application. Indeed, unfair, unforeseen consequences can result as they did here. Dr. Sheikh desperately wants to and is ready to go to trial but because of various government-caused delays, she now has to consider endangering the public due to the pandemic. Had the hearing resumed on October 7, 2019 (in the absence of this 49-day delay), it would have been over by October 8, 2019, and the *Franks* motion could have been brought in early November 2019 (or in April 2019 if the *Brady* violations had not occurred), leaving plenty of time to conduct the trial prior to the pandemic. Time and again, the government's delays have caused Dr. Sheikh to suffer enormous prejudice, forcing this case into the pandemic. These 49 days should also not be excluded. Adding these days to the elapsed time brings the total to 125 days. The case must be dismissed.

## II. THE GOVERNMENT'S FAILURE TO MEET ITS *BRADY* OBLIGATIONS ALSO VIOLATED DR. SHEIKH'S CONSTITUTIONAL SPEEDY TRIAL RIGHTS

The government is wrong in arguing that the Court already decided Dr. Sheikh's constitutional speedy trial argument and that the law of the case prevents consideration here. What the government misses is that Dr. Sheikh filed her motion in March 2020 when the pandemic was still new, and no one fully appreciated the consequences it would have on the courts and Dr. Sheikh's ability to go to trial. The pandemic puts a new lens on the speedy trial implications of the government's *Brady* violations concerning pre-trial motions, which indeed requires a fresh look. The Court was correct to allow Dr. Sheikh the opportunity to re-address the Sixth Amendment violation in view of the pandemic.

To determine whether a defendant's Sixth Amendment speedy trial right has been violated, courts balance the following four factors: (i) length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of her right, and (iv) prejudice to the defendant. *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).

***Length of Delay.*** The government concedes that this factor favors Dr. Sheikh. Moreover, because the delay in disclosing the *Brady* material was over a year (close to two years, here), the Ninth Circuit considers this delay <u>presumptively prejudicial</u>. *Mendoza*, 530 F.3d at 762 (holding that a delay of more than one year is generally presumptively prejudicial).

***Reason for Delay.*** The government argues that no dismissal is merited because the government's failure to disclose *Brady* material bearing upon pre-trial motions was not intentional. The government is wrong—reckless or intentional conduct is <u>not</u> required for dismissal. Rather, the Ninth Circuit holds a case must be dismissed if government **negligence** violates a defendant's speedy trial rights. *Mendoza*, 530 F.3d at 763 ("the delay between Mendoza's indictment and arrest was caused by the government's negligence, and this factor weighs in favor of Mendoza"). Here, even the government cannot deny that its conduct with respect to the *Brady* violations was at least negligent; Dr. Sheikh maintains it was reckless, as evidenced by the government's numerous misrepresentations and long delays. In either case, negligence or recklessness, *Mendoza* requires dismissal. This factor favors Dr. Sheikh.

***Prejudice.*** While prejudice is presumed given the length of delay, Dr. Sheikh's case presents immense prejudice, qualitatively much more significant than the arrest delay in *Mendoza*. The government's *Brady* obligation here was triggered at the time of indictment in June 2018, especially with respect to *Brady* material relating to pre-trial motions such as *Franks*, which Dr. Sheikh had a right to receive at the outset so that pre-trial motions could speedily be brought and the case could speedily move to trial. However, the government did not disclose significant *Brady* material bearing upon such motions for close to two years after indictment, which deprived defense counsel of the ability to identify and raise the *Franks* issue in April 2019 when counsel raised the other pre-trial motions.[4] Thus, the key questions are: (i) did the failure to timely disclose the *Brady* material hamper defense counsel's ability to identify the *Franks* issue in April 2019; and (ii) could the case have been brought to trial prior to the pandemic had the *Brady* disclosure been timely made. The answer to both of these questions is a resounding yes and is borne out by the record.

Defense counsel first raised the *Franks* issue on December 18, 2019, at the conclusion of the first suppression hearing, and when asked why it was not raised earlier, counsel stated, "Once the testimony started coming out and yesterday, I went home and started going through all the testimony and reports, [I] felt like there were lots of things in the warrant that I really did need to point out to the Court." (R/T

---

[4] The only other two pre-trial motions—the *Brady* discovery motion and the *Brady* dismissal motion—were directly caused by the *Brady* violation and could have been avoided altogether had the government timely complied with its constitutional obligation.

12/18/2019 at 371.) At this point, counsel did not have the *Brady* material, but the agent's testimony had triggered the issue in counsel's mind. Upon receiving some of the *Brady* material on the eve of the February 25, 2020 hearing, counsel was shocked to learn how much had been left undisclosed. Counsel informed the Court, "If we had these notes earlier, we could have potentially brought the *Franks* motion quite a bit earlier." (R/T 2/25/2020 at 22.) Indeed, the materials disclosed were so contradictory to the warrant affidavit that no competent defense attorney would have missed the *Franks* issue with the materials in hand. In other words, had the government timely made the *Brady* disclosures—which should have been at or near the inception of the case because the material bore heavily upon the *Franks* issue— defense counsel would have had a significantly more complete record impeaching the warrant affidavit and would surely have briefed the issue in April 2019 along with the other suppression issues that were briefed at the time. This is not speculation. The Court has seen the *Brady* material for itself and confirmed its relevance and materiality in its Order. (DE 104.) Therefore, had the *Franks* motion been brought with the other pre-trial suppression motions in April 2019, all pre-trial motions could have been resolved by December 18, 2019, or even earlier had the government not caused the unjustified 49-day delay discussed above. Undersigned counsel has been anxious to try this case given its significant weaknesses and would have requested a trial date right away, at least three months before the first COVID-19 order in the district. To say that Dr. Sheikh was not prejudiced by the late *Brady* disclosure is to ignore reality.

***Defendant's Assertion of Speedy Trial Right***. Dr. Sheikh has vigorously asserted her speedy trial rights, and any continuance previously agreed to was predicated upon the Defense's belief that the government had met its *Brady* obligations (which turned out to be untrue) and that the government was dealing with Dr. Sheikh in good faith (which also turned out to be untrue). Moreover, because the length of delay, reason for delay, and ensuing prejudice are so grave and significant, no speedy trial waiver can justify continuing this case. *See Mendoza*, 530 F.3d at 764 (case dismissed despite numerous requests for continuances by the defendant because the other factors were significant).

### III. THE ENDS OF JUSTICE ARE NOT SERVED BY GRANTING A CONTINUANCE

#### A. Issues Not Reasonably in Dispute

Both parties agree that the District's General Orders are insufficient for an ends-of-justice

8

exclusion, because the law requires that the exclusion be justified with reference to specific factual circumstances in the particular case as of the time the delay is ordered. *See, e.g., United States v. Ramirez-Cortez*, 213 F.3d 1149 (9th Cir. 2000).

The government makes no effort to dispute that the Dr. Sheikh's case is beyond the statutory reach of the Ninth Circuit's Judicial Emergency Declaration under 18 U.S.C. § 3174. (*See* Def. Mot. at 10-11.)

Both the government and Dr. Sheikh have made it clear that their respective counsel and witnesses can be ready for trial. Government counsel states that undersigned counsel is from out of town and would be coming to Sacramento only for trial. That is true, and so continuity of counsel is not an issue. Indeed, undersigned counsel informed this Court that, prior to requesting trial, counsel cleared his calendar, continued other matters, and discussed with his family that he would be away from home for a considerable period of time. Juries are being selected in other cases and other business is being conducted in the country. Trial in this case is *not* impossible. It does, however, present significant health risks, because the government was not able to suggest a sufficiently safe option. Being a physician, Dr. Sheikh is loath to put the public at risk. Seizing upon this, the government unfairly suggests that Dr. Sheikh has flip-flopped about wanting to go to trial. That is not true. Dr. Sheikh was reluctant to waive time after the *Franks* hearing. She did so only explore settlement in light of the Court's comments. But when the government refused to deal with Dr. Sheikh in good faith, she had no choice but to demand trial to put a end to the incredible prejudice she is continuing to suffer as the case lingers into perpetuity.

At the hearing that followed, the Court asked Dr. Sheikh to work with the government to figure out how to be brought to trial. Normally, no defendant bears the burden of figuring out how her trial would be arranged, but Dr. Sheikh faithfully executed the Court's order and honestly reported back what she and her counsel observed and believed—that she wants to go to trial, that trial is not impossible, but that it is dangerous. Dr. Sheikh is not trying to maneuver out of trial. She is honestly reporting the situation she finds herself in; and it cannot be lost that Dr. Sheikh finds herself in this perilous situation due to the number of delays the *government* caused in her case. Here, the Court need not decide the continuance issue because the constitutional and statutory violations compel dismissal. Nevertheless, if the Court were to decide the continuance issue, the Court must take the specific circumstances of Dr. Sheikh's case into

9

*Defendant's Reply re Motion to Dismiss for Speedy Trial Violation*   Case No. 2:18-CR-119-WBS-1

account and determine whether not granting the continuance would result in a miscarriage of justice. It would not

### B. The Continuance Should Not Be Granted Because a Dismissal in This Case Would Not Result in a Miscarriage of Justice

The continuance the government requests is in the best interest of neither Dr. Sheikh nor the public. Denying it would not result in a miscarriage of justice but granting it would. While the government refuses to recognize that this case does not merit any more federal resources, the Court must recognize it when assessing public harm, especially in light of the evidence the Court has seen to date. As for the best interest of Dr. Sheikh, that is an easy question: the reputational, societal, emotional, physical, and monetary harm to her and her family cannot be understated. (*See* Def. Mot. at 14.) It is easy for the government to say that Dr. Sheikh should continue to live under the specter of criminal charges for some unknown period of time because she is not detained, but the government lawyers are not the ones that have to deal with being called criminal and treated as social pariahs. They are not the ones suffering the emotional and health effects. They do not have to look their families in the eyes to explain when the case will be over. The Court cannot ignore that Dr. Sheikh is a high-achieving professional who is suffering from false allegations made by unscrupulous men looking for handouts and immigration benefits. That much is objectively observable, and the Court must take it into account if it decides to take up the continuance request.

## IV. THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE

***Seriousness of the Offense.*** The government argues that this is a serious case. It is hard to believe that the government actually believes that this is a serious in light of everything that has been presented. The Defense maintains that the government has no provable charge let alone a serious provable charge. (See Def. Mot. at 15.) This factor favors dismissal with prejudice.

***Circumstances That Led to Dismissal.*** The circumstances that have led to dismissal involve years of delay in producing significant *Brady* material that bore upon both pre-trial motions and trial, the government's numerous failure to keep track of the speedy trial clock, and a 49-day mid-hearing delay on the insistence of a government attorney whose presence was actually not necessary for the remainder of the hearing. This factor also favors dismissal with prejudice.

***Impact of Re-Prosecution on the Administration of Justice.*** Re-prosecution in this case would offend justice. It would continue to encumber scarce government and judicial resources while subjecting Dr. Sheikh to undeserved harm and prejudice. Dr. Sheikh, the public, *and* the government would all benefit from a dismissal with prejudice.

## V. CONCLUSION

Dr. Sheikh respectfully requests that the Court dismiss the case with prejudice for all the reasons discussed here and in her opening brief.

Dated: September 25, 2020

Respectfully submitted,

ALMADANI LAW

*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.
*Attorney for Defendant*