UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FIRDOS SHEIKH,<br><br>　　　　Defendant. | No. 2:18-cr-00119 WBS<br><br>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS AND MOTION<br>FOR EXCLUSION OF TIME |

----oo0oo----

　　　　Defendant has moved to dismiss the indictment against her under the Speedy Trial Act, 18 U.S.C. § 3161, and the Sixth Amendment (Docket No. 145), while the government has moved to exclude time from the calculation of the Act's 70-day speedy trial clock (Docket Nos. 130, 138, 143).

　　　　As of the hearing on September 10, 2020, both sides appeared to agree that the 70-day period for bringing this case to trial under the Speedy Trial Act would expire on October 16,

1

2021.  Now, in her subsequent briefing, defendant takes the position that the speedy trial clock has already run, pointing to several periods of time which she claims should not be excluded. It makes no difference which set of calculations the court adopts, because under either calculation the court cannot bring this case to trial within the time prescribed by the Speedy Trial Act without an exclusion of time.

I.   Present Unavailability of Trial

Because of the COVID-19 crisis, our courthouse has been closed to the public since March of this year.  See General Orders 611, 612, 618.  Consequently, there is presently no pool of prospective jurors on stand-by which the court could draw upon to empanel a jury.  Our jury clerk advises it would take a minimum of 45 days to send out the notices, receive the returns, screen the responses, and summons a venire from which the court could select a jury.  By that time, under any computation of the remaining time, the speedy trial clock will have long run.

Moreover, even if there were time remaining under the Speedy Trial Act, there are other compelling reasons why this court would not attempt to empanel a jury under the current circumstances.

California has a "blueprint" for reducing the spread of COVID-19, which places each county into one of four color-coded categories.  Activities in a given county are restricted more or less depending upon which category that county happens to fall in at any given time.  As of the time this Order is written eight of the 34 counties in this district are classified as purple, meaning that the risk from COVID-19 is "widespread".  Thus, for

2

example, in those counties all churches, theaters, higher education institutions, and family entertainment centers are closed for all indoor activities.

Until just a week ago, Sacramento County, where the courthouse in which this case would be tried is located, was also in the purple category. Now it has been placed in the red category, which means that the risk is "substantial", and family entertainment centers such as bowling alleys and arcades are still prohibited from operating indoors, but other types of facilities may operate indoors with limited capacity and other restrictions. This, of course, is always subject to change, and if the numbers change again Sacramento County could go back to purple upon short notice.

It is easy to say, at least theoretically, that this court could summons a jury to try this case notwithstanding these restrictions imposed by the State of California. Legally, of course, this court is not bound by the edicts of the Governor of the State of California. Cf. North Dakota v. United States, 495 U.S. 423, 435 (1990). But from a practical and moral perspective this court has an obligation to safeguard the health and safety of the citizens it orders by force of law to come to our courthouse, and not to subject those citizens to unnecessary risk of serious illness or death. If the State of California has determined it is unsafe to recreate in a bowling alley for a few hours, even with masks and social distancing, how can this court say it is any safer, to sit for several days or weeks in one of

our courtrooms?[1]

Even if this court were to satisfy itself that it was able to devise a set of safeguards (such as masks, social distancing, plexiglass separators, and the use of multiple courtrooms and other areas of the courthouse) to adequately ensure the safety of the participants in the trial, it would be another thing to persuade those participants that they are indeed safe.  After months of being told how dangerous it is to be in a room with strangers, particularly for an extended period of time, how likely are people to believe it has suddenly become safe just because a federal judge has told them so?

Our system of federal justice is the envy of the world.  And its success depends upon the willingness of our citizens to perform jury service when called upon by the court.  If any substantial number were to ignore our summonses or otherwise seek to evade jury service out of fear, our system would be in danger of collapse.

The court is aware that jury trials are being held in some of the county courthouses in California.  However, there are some fundamental differences between the state and federal courts in the statutory and constitutional requirements that must be met

---

[1]   Besides the concerns for the jury, the government represents that several of the government's essential witnesses are over the age of 60, others have high-risk medical conditions, and some will have to travel from out of state.  Defense counsel also represents that due to a high-risk family member, he would be required to travel to Sacramento only on the eve of trial and then remain here for the remainder of trial, and then self-quarantine afterwards, posing complications should there be an interruption in trial for any reason.

1    to protect the rights of the defendant in a criminal trial.  Just
2    as an example, each county court summonses jurors from only that
3    county, whereas our court brings in jurors from 34 counties, and
4    many of them have to make arrangements to stay overnight if they
5    are selected as jurors.  The prospect of staying in a hotel in
6    Sacramento raises a whole different set of concerns which need
7    not be discussed here.
8            The court is also aware that jury trials have been
9    conducted on a limited basis in some other federal districts.
10   Again, there are some significant political and social
11   differences between the circumstances in this district and those
12   in others outside of California.  More importantly, while this
13   court can look to the experience of other courts, it must make
14   its own independent determination of whether a jury trial can be
15   successfully held in this case under the current circumstances.
16           Finally, if the court were to forge ahead and attempt a
17   jury trial in this case at the present time, it is not at all
18   satisfied that the result would pass constitutional muster, let
19   alone satisfy the concerns of both the government and the
20   defense.  Anecdotally, the court is aware that in some other
21   districts where a jury trial has been conducted those jurors who
22   expressed concern over the coronavirus or who were in a high-risk
23   group were excused for cause.  This court has serious doubts that
24   allowing such excuses would produce a fairly constituted jury
25   representing a cross-section of the community.  Further, lawyers
26   have expressed concerns about the ability to effectively evaluate
27   prospective jurors, assess the credibility of witnesses, or
28   communicate with the jury if the participants are wearing masks.

The court shares those concerns.

For all of the foregoing reasons, the court concludes that without an ends of justice exclusion it cannot bring this case to trial within the time prescribed by the Speedy Trial Act.

II.  Ends of Justice Exclusion of Time

The court must accordingly now address the government's request to exclude time upon the ground that the ends of justice outweigh the right of the defendant and the public to a speedy trial, on the one hand, and defendant's motion to dismiss based upon the inability to bring the case to trial within the time specified in the Speedy Trial Act, on the other hand.

Under the Speedy Trial Act, the court may order a delay in a trial and exclude time on its own motion or at the request of either party.  18 U.S.C. § 3161(h)(7)(A).  The trial may be continued and time excluded if the court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Id.  An ends of justice exclusion must be specifically limited in time. United States v. Ramirez-Cortez, 213 F.3d 1149, 1154 (9th Cir. 2000).

Section 3161(h)(7)(B) lists a number of factors to be considered in deciding whether to continue a trial and exclude time pursuant to "the ends of justice".  That list is non-exhaustive.  18 U.S.C. § 3161(h)(7)(B) (listing "[t]he factors, among others, which a judge shall consider").  Another judge on this court recently read § 3161(h)(7)(B)'s instruction that judges should consider the enumerated factors, "among others," "as conferring broad discretion to consider factors [a court]

deems relevant based upon the specific facts of the case and surrounding circumstances." United States v. Smith, No. 2:19-cr-00213 JAM, 2020 WL 2541713, at *5 (E.D. Cal. May 19, 2020). However, a continuance under the ends of justice may not be granted due to "general congestion of the court's calendar." 18 U.S.C. § 3161(h)(7)(C).

The court is intimately familiar with the details of this case, having held numerous conferences with counsel and having heard several pretrial motions, two of which resulted in multi-day evidentiary hearings. At the same time, the court is well aware of the complications brought by the coronavirus pandemic, having discussed the complexities and risks of holding a jury trial with the judges of this district, counsel in this case, and counsel in cases in and outside this district. Accordingly, the court is well-positioned to assess the various § 3161(h)(7)(B) factors as applied to this case.

While the Speedy Trial Act does not directly address delay due to pandemics, many courts around the country have excluded time due to the coronavirus and the complications it has brought in specific cases, finding that the ends of justice were served by continuances and that such action outweighed the interest of the public and the defendant in a speedy trial. See, e.g., United States v. Young, No.19-cr-496-CMA, 2020 WL 3963715, (D. Colo. July 13, 2020); United States v. Merrick, No. 20-cr-09-JD, 2020 WL 3887779 (D.N.H. July 8, 2020); United States v. Kemprud, Case No. 2:19-cr-218 MCE, 2020 WL 2836784 (E.D. Cal. June 1, 2020); see also In re Approval of the Judicial Emergency in the Eastern District of California, 956 F.3d 1175 (9th Cir.

7

1  Judicial Council 2020) (suspending the time limits of 18 U.S.C. §
2  3161(c) based on the Council's finding of a judicial emergency
3  due in large part to COVID-19).

4  However, the coronavirus alone does not give the court
5  the liberty to simply exclude time.  Rather, the court must
6  conduct a "deliberate inquir[y] into whether an ends-of-justice
7  continuance is justified by the circumstances surrounding a
8  particular case."  Smith, 2020 WL 2541713, at *3.

9  The question here is not whether the trial must be
10 continued.  For the reasons discussed above, there can be no
11 question that if the case is to be tried at all it will have to
12 be continued.  Rather, the relevant inquiry is whether the court
13 can rationally select a future date for trial and whether the
14 ends of justice would be satisfied by excluding time under the
15 Speedy Trial Act to that date.

16 The government suggests that the court set this case
17 for trial to begin on April 27, 2021, and exclude time under §
18 3161(h)(7)(A) to that date.  Of course, the circumstances of the
19 pandemic cannot be expected to be the same six months from now
20 any more than they are the same today as they were six months
21 ago.  But it is unclear to this court what is expected to happen
22 between now and April to make it more possible than it is now to
23 try this case at that time.

24 We are told to wear facial masks and maintain social
25 distancing by staying at least six feet away from other persons
26 in order to reduce the rate of COVID-19 infections, but we have
27 been doing that for the last six months, and by many measures we
28 are told the situation has gotten worse, not better.  Gatherings

where participants have not followed these mandates have been blamed for the adverse numbers, but the there is no indication that the human nature giving rise to those exceptions will change anytime in the foreseeable future.  It was at one time suggested that vaccines were on the horizon which would greatly reduce or eliminate the risk of infection.  Now, the Director of the Centers for Disease Control and Prevention tells us not to expect a vaccine to be available for most Americans until the middle of 2021.  Even when the vaccine does become available, the Director suggests it will not be as effective as a face mask in protecting against COVID-19.

In all candor, this court believes that continuing the trial to April of 2021 would just amount to kicking the can down the road.  Because of the closure of our courthouses, no civil or criminal cases have been tried in this district for the last six months.  The cases that were on file before March of this year are still awaiting trial, and the United States Attorney continues to bring new indictments in the meantime.  If the experience in other districts in any indication, when jury trials are finally resumed in this district they will be tried one at a time using our large ceremonial courtroom.  When that time comes, some serious thought is going to have to be given, and some difficult decisions are going to have to be made, as to which of the cases in the mounting backlog will actually be tried and the order they will proceed to trial.  Given the nature of the charges here and the fact that, unlike many of the others awaiting trial, this defendant is not in custody, the court doubts that this case will rank high on the government's list of

1  cases to bring to trial.
2          Nevertheless, it certainly would be possible for the
3  court to set this case for trial in six months, as the government
4  suggests.  The court could then wait until that time to fully
5  evaluate whether to proceed to trial.  That may be the right
6  course of action in some cases.  For the following reasons,
7  however, the court does not believe it would satisfy the ends of
8  justice in this case.
9          Defendant was indicted more than two years ago for
10 conduct that occurred no later than 2013.  The chronology of
11 events and the course of the proceedings after the indictment
12 was filed is discussed in detail in the court's prior orders in
13 this action.  The government's late disclosure of material
14 required to be provided under Brady v. Maryland, 373 U.S. 83
15 (1963), caused a significant portion of the delay over the last
16 ten months.  The court finds credible defense counsel's assertion
17 that had the government properly disclosed all Brady material in
18 a timely manner, defendant would have filed her motion based upon
19 the alleged violation of Franks v. Delaware, 438 U.S. 154 (1978),
20 along with her other motions to suppress, such that the Franks
21 motion could have been heard and decided at the same time as the
22 original motions to suppress.
23         The court also finds credible defense counsel's
24 assertion that had the Franks motion been decided by December
25 2019, defendant would have promptly requested trial, as she did
26 after the court decided the Franks motion in August of this year.
27 The court was available to try this case in the beginning of this
28 year.  The court recognizes that it requires some degree of

10

speculation to predict exactly how this case would have proceeded, assuming the government had not delayed in producing the Brady materials at issue.  Nevertheless, the court has sufficient confidence that this case would have been tried prior to the court's shutdown in March 2020 if not for the government's belated production.

Had the case been tried at that time, defendant and her counsel believe she would have been exonerated.  It is not for the court to judge the reasonableness of that expectation in the context of these motions, but given the evidence presented in the previous motions, the court can well understand the basis for defendant's righteous frustration over not being able to have her case heard and decided when it could have.

Additionally, the court finds credible the defendant's claims of prejudice as a result of the delay in bringing this case to trial.  While some of the prejudice defendant has pointed to is faced by just about every criminal defendant, defendant represents that she has not just suffered anxiety and embarrassment, but also depression, stress-induced physical effects such as body rashes and hives, and progression of her diabetes from moderate to severe.  (Docket No. 145 at 14.)

Defendant, a practicing physician in the Sacramento community, also claims that (1) since the inception of the case she has regularly received phone calls from blocked numbers telling her that she is a criminal, (2) she is "constantly slandered on social media," (3) friends and colleagues have distanced themselves from her due to the charges in this case, (4) the case has drained her financially and she has been forced

to ask friends and family for money to pay her legal bills, and (5) the government has put lis pendens on her properties, preventing her from selling or refinancing the properties.  (Id.)

For all these reasons, the court concludes it would be a miscarriage of justice to require the defendant to continue to suffer through what she is experiencing for an additional six months, after she could have had her trial behind her six months ago if the government had simply complied with its Brady obligations in a timely manner, when it is far from certain whether she would even be able to have her case heard then.  The ends of justice require dismissal now.

III. Dismissal With or Without Prejudice

The court must now determine whether to dismiss the indictment with or without prejudice.  "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2).

There is no presumption in favor of dismissal with or without prejudice under the Act.  United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994).  As with the ends of justice determination in § 3161, the statute sets forth certain factors the court must consider "among others," suggesting that the court has broad discretion in considering any other relevant factors to the case.

Here, defendant has been charged with multiple offenses

carrying maximum sentences ranging from five to twenty years. See, e.g., United States v. Mancia-Perez, 331 F.3d 464, 468 (5th Cir. 2003) (the potential term of imprisonment is an indication of the serious of the offense, and a potential 20-year sentence indicates a serious offense).  The court does not necessarily agree with defendant's contention that the harboring and false statement and obstruction charges "are not all that serious," (Docket No. 145 at 15), but the court does agree that the evidence is questionable at least as to the charges of forced labor.  Nevertheless, the potential for 20-year sentences in this case, including for the obstruction count, weighs in favor of dismissal without prejudice.

Regarding the facts and circumstances of the case, the two primary factors which lead to dismissal are the government's late disclosure of Brady material and the coronavirus.  While the government is at fault for the late disclosure of Brady material, it is not at fault for the coronavirus.  At the same time, defendant's change of counsel and various motions also contributed to the total delay.  While the delay was substantial, a two-year period between the indictment and now is not especially abnormal, at least in this district. Moreover, defendant has been out of custody the last two years and has not already been tried, in contrast with some other defendants complaining of Speedy Trial Act violations.  See, e.g., Clymer, 25 F.3d at 832.  Thus, this factor also tends to weigh in favor of dismissal without prejudice.

The court next turns to the impact of a reprosecution on the administration of this chapter and on the administration

13

of justice.  The court does not find that the government intentionally delayed this case.  See United States v. Blevins, 142 F.3d 223, 226 (9th Cir. 1998) (dismissal with prejudice was inappropriate where the government did not intentionally delay the proceedings).  Nor does defendant does point out lost evidence or witnesses, though of course she will continue to suffer the prejudice having to continue defending charges against her should the government reindict her.  Accordingly, this factor also weights in favor of dismissal without prejudice.

Because the above factors militate against dismissal with prejudice, § 3162(a)(2) requires that the dismissal be without prejudice.  The court recognizes there is a distinct possibility that the government may reindict defendant on these charges.[2]  If she should be reindicted, of course, defendant will be free to assert any defenses as may be appropriate to the new indictment.

IT IS THEREFORE ORDERED that the government's motion to exclude time (Docket Nos. 130, 138, 143) be, and the same hereby is, DENIED; and

IT IS FURTHER ORDERED that defendant's motion to dismiss the Indictment in this action under the Speedy Trial Act (Docket No. 45) be, and the same hereby is, GRANTED.  The Indictment (Docket No. 1) is hereby DISMISSED WITHOUT PREJUDICE.[3]

///

---

[2]  Presumably, the government could also appeal from this Order.

[3]  Because the court dismisses the Indictment under the Speedy Trial Act, it need not address defendant's arguments for dismissal under the Sixth Amendment.

14

Dated: October 9, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE